## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| MEDICAL PROPERTIES TRUST, INC., | |
| Plaintiff, | Case No. 2:23-cv-00408-JHE |
| v. | |
| VICEROY RESEARCH LLC, *et al.,* | |
| Defendants. | |

## DEFENDANT VICEROY'S MOTION TO DISMISS UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM AND SUPPORTING MEMORANDUM

Defendant Viceroy Research LLC ("Viceroy") hereby moves to dismiss Plaintiff Medical Properties Trust, Inc.'s ("MPT") Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. MPT's Complaint is predicated entirely on alleged defamatory statements that Viceroy published about MPT. But even a cursory review of those publications, which are all attached to MPT's Complaint, reveal that they are—as stated in their prominent disclaimers—nothing more than statements of opinion based on disclosed and publicly available facts published by a group that has a financial interest in the decline of MPT's stock. Such statements are constitutionally protected and cannot support a defamation claim as a matter of

law. Further, MPT has failed to plausibly allege, as it must, that Viceroy published the statements with "actual malice"—meaning that Viceroy subjectively entertained serious doubts as to the veracity of its reports or was highly aware that the reports were probably false. For these and the reasons stated below, MPT's Complaint should be dismissed in its entirety with prejudice.

## I.    FACTS

This is a defamation action that Plaintiff MPT brings against Defendant Viceroy and its members. MPT is a REIT incorporated in Maryland with its principal place of business in Alabama. *See* Complaint ("Compl.") ¶ 10. MPT is a publicly traded company whose business is to acquire healthcare facilities like hospitals and lease them to operating companies under long-term net leases. *Id.* ¶ 20. Viceroy is a financial research firm organized in Delaware which, according to MPT, publishes negative content about public companies whose shares it has sold short. *Id* ¶ 11.

MPT's Complaint is predicated on 14 reports that Viceroy published about MPT beginning in late January 2023. *Id.* ¶ 6. The reports are attached to MPT's Complaint as Exhibit 1. Each of these reports contain upfront and robust disclosures under the headings "Important Disclaimer—Please read before

continuing." *See* Compl., Ex. 1, Part 1 (ECF No. 1-1) at 7, 40, 43, 48, 52; Compl.,

Ex. 1, Part 2 (ECF No. 1-2) at 4, 8, 14, 22, 27, 32, 46, 50, 57.[1]

Each disclaimer states that:

> This report has been prepared **for educational purposes only** and **expresses our opinions**. This report and any statements made in connection with it are the **authors' opinions**, which have been based upon publicly available facts, field research, information, and analysis through our due diligence process, **and are not statements of fact**. All expressions of opinion are subject to change without notice, and we do not undertake to update or supplement any reports or any of the information, analysis and opinion contained in them. We believe that the publication of our opinions about public companies that we research is in the public interest. **We are entitled to our opinions and to the right to express such opinions in a public forum**. You can access any information or evidence cited in this report or that we relied on to write this report from information in the public domain.

*Id.* (emphasis added).

The disclaimers further state Viceroy has "a good-faith belief in everything

[it] write[s]; however, all such information is presented 'as is,' without warranty of

any kind—whether express or implied." *Id.*

The disclaimers further disclose that Viceroy stands to gain financially if the

value of the subject company's stocks decline: "As of the publication date of this

report, you should assume that the authors have a direct or indirect interest/position

in all stocks (and/or options, swaps, and other derivative securities related to the

---

[1] All references to page numbers in Exhibit 1 are to the pdf page number in the ECF-stamped heading.

stock) and bonds covered herein, and ***therefore stand to realize monetary gains in the event that the price of either declines***." *Id.* (emphasis added). To put a finer point on it, the very first sentence of the very first report states that "Viceroy Research is short Medical Properties Trust (NASDAQ: MPW)…." Compl., Ex. 1, Part 1 (ECF No. 1-1) at 3.

These disclaimers are also built into Viceroy's website. Indeed, a visitor to Viceroy's website cannot view or download the reports without first being presented with the identical disclaimer described above and then clicking that the reader agrees to the terms therein.[2]

The reports opine, in summary, that Viceroy "believe[s] that MP[T] engaged in 4 major types of uncommercial transactions with its clients," and that it "believe[s] substantial portions of cash is round-tripped back to MP[T]." *Id.* The reports clarify that the "round-tripping" of funds is accomplished through these

---

[2] *See, e.g.,* https://viceroyresearch.org and https://viceroyresearch.org/publications/. Viceroy requests that the Court take judicial notice of this fact. A "district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment." *Horne v. Potter*, 392 Fed. Appx. 800, 802 (11th Cir. 2010). The Court may take judicial notice of facts that are "not subject to reasonable dispute" because they are "capable of accurate and ready determination by resort to sources whose accuracy could not be reasonably questioned." *Id.* (citing Fed. R. Evid. 201(b)). The Court may also consider documents attached to a motion to dismiss that are (1) central to the plaintiff's claim, and (2) undisputed. *Id.*

uncommercial transactions, consisting of unsound loans and equity investments, which allow financially distressed tenants to pay rent to MPT. *Id.* at 5.

One of the uncommercial transactions described are "sale-leasebacks," where MPT purchases properties from financially distressed entities, substantially overpaying for the properties. *Id.* at 3. These overpayments, in turn, allow the sellers (who have now become MPT's tenant) to meet their rent obligations to MPT in the short term, masking their credit risk. *Id.* at 3.

Another uncommercial type of transaction described in the reports are bailouts, where MPT issues loans to its tenants to mask uncollectable rents. *Id.* at 4. The reports also describe transactions where MPT "appear[ed] to collude with tenants to establish 'fake' projects," citing a news report of a purported $169 million project that had remained a vacant lot and was put on hold despite MPT's own capital investment of $58 million into the project. *Id.*

The reports further criticize MPT's adopting a straight-line revenue model, stating that "Viceroy do[es] not believe straight-line rent is collectible." *Id.* at 5. They also question why MPT has made extensive capital expenditures in certain of its properties even though the properties are leased to tenant-operators under triple net leases, where all such expenditures are normally the tenant's responsibility. *Id.*

The reports further acknowledge that it "is difficult to assign valuation to MP[T] as [the authors] believe investors are working with misleading and

incomplete information." *Id.* at 6. The reports, however, provide an *opinion* on MPT's value per share based on estimated discounts that attempt to account for the impact of the straight-line rent model and the uncommercial transactions. *Id.* at 6.

Importantly, and as will be discussed below, the reports back all their opinions with meticulous citations to publicly available evidence, the salient parts of which are incorporated directly into the reports. *See generally*, Compl., Ex. 1. It is thus clear that the reports are, by their very disclaimers and substance, nothing more than a statement of Viceroy's opinions, loaded with hyperbolic language, based on disclosed and publicly available facts.

MPT's Complaint asserts five claims for relief—all of which are predicated on the alleged defamatory publications described above: (1) defamation; (2) civil conspiracy; (3) tortious interference with contractual/business relations; (4) private nuisance; and (5) unjust enrichment. As argued immediately below, none of these counts state a claim upon which relief can be granted.

## II.  **ARUGMENT**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must plead enough facts to state a claim to relief that is plausible on its face." *Michel v. NYP Holdings, Inc.,* 816 F.3d 686, 694 (11th Cir. 2016) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept the well pled allegations in the complaint as true, a court need not accept as true "conclusory

allegations, unwarranted deductions of facts or legal conclusions masquerading as facts." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

The "application of the plausibility standard makes particular sense when examining public figure defamation suits" such as this one, given that "there is a powerful interest in ensuring free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation*." Michel,* 816 F.3d at 702. Where a challenged statement cannot plausibly have a defamatory effect, a "court is justified in dismissing the complaint for failure to state a cause of action." *Rubin v. U.S. News & World Report, Inc.*, 271 F.3d 1305, 1306 (11th Cir. 2001). Thus, "[c]ourts in [the Eleventh Circuit] and elsewhere routinely dismiss defamation claims on motions to dismiss." *Borislow v. Canaccord Genuity Group, Inc.*, 2014 WL 12580259, at *1 (S.D. Fla. 2014) (citing multiple cases).

## A.     MPT Has Failed to Plausibly Allege a Defamation Claim.

The elements of defamation are rooted in both state law and the First Amendment of the United States Constitution. To recover on a claim of defamation under Alabama law,[3] a plaintiff must prove: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication of that statement to a

---

[3] Viceroy does not concede Alabama law applies to this action.  However, the principles of defamation law raised by this motion are the same under the law of any state that arguably has a connection to this this dispute. Therefore, because there is no conflict of laws, Viceroy will cite to Alabama defamation law.

third party; (3) fault amounting at least to negligence on the part of the defendant; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication or statement. *Jones v. BuzzFeed, Inc.*, 591 F. Supp. 3d 1127, 1141 (N.D. Ala. 2022) (citing *McCaig v. Talladega Pub. Co., Inc.*, 544 So.2d 875, 877 (Ala. 1989)).

Where, as here, the defendant is a public figure (which MPT, a publicly traded corporation, unquestionably is), the "First Amendment imposes additional limitations" on a defamation claim. *Coral v. Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1252 (11th Cir. 2021). First, "the alleged defamatory statement must be sufficiently factual to be susceptible of being proved true or false." *Id.* (citations and internal quotations omitted). Second, "the statement must be actually false." *Id.* And third, "the public-figure plaintiff must prove that the defendant made the alleged defamatory statement with 'actual malice'—'with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)).

Here MPT's claims fail as a matter of law because: (1) the challenged statements are non-actionable opinions commenting on disclosed and publicly available evidence; and (2) MPT has failed to plausibly allege actual malice.

## 1. The Challenged Statements Are Protected Statements of Opinion.

True "statements, statements that are not readily capable of being proven false, and statements of pure opinion are protected from defamation actions by the First Amendment." *Turner v. Wells,* 879 F.3d 1254, 1262 (11th Cir. 2018). Whether a statement is one of fact or opinion and whether a statement of fact is susceptible to defamatory interpretation are questions of law for the court. *Id.* at 1262-63.

A "statement is not actionable for defamation if it is merely an expression of opinion based upon disclosed, nondefamatory facts." *Reed v. Women's Army Corps Veterans' Assoc.*, 2008 WL 11422484, at *4 (N.D. Ala. 2008) (citing *Sanders v. Smitherman,* 776 So. 2d 68, 74 (Ala. 2000)) (internal quotations omitted). That is, "one cannot recover in a defamation action because of another's statement of opinion—regardless of how derogatory the statement may be—so long as nondefamatory facts upon which the opinion is based are either disclosed or assumed." *Id.* This "is so because the recipient of the information is free to accept or reject the opinion, based on his or her independent evaluation of the disclosed, nondefamatory facts." *Id.* Thus, "commentary or opinion based on accurate facts set forth in an article are not the stuff of libel." *Turner*, 879 F.3d at 1265.

Applying these principles, the alleged defamatory statements are not actionable for several reasons, each of which will be addressed below.

<u>Viceroy's Disclaimers Establish that the Reports Are Opinions.</u>

The *robust* and *upfront* disclosures in all the Viceroy reports stating that the reports are merely expressing opinions, with no guaranteed accuracy, published by a group who has a financial interest in the decline of MPT's share values, render the publications non-actionable opinions as a matter law.

Courts routinely find that such disclosures render alleged defamatory statements in an article or report unactionable. *See Id.* 1264-65 (statements in report unactionable where the report repeatedly stated that it contained only the opinions of the authors based on their investigation); *Borislow,* 2014 WL 12580259, at *2-3 (holding that similar disclaimers in a negative analytical report of company and CEO were nonactionable, citing multiple other courts reaching the same conclusion based on similar disclosures); *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs. ,Inc.*, 988 F. Supp. 1341, 1345 (D. Colo. 1997) (dismissing defamation claim where statements in investment article were accompanied by a disclosure that "explicitly state[d] that the accuracy and completeness of the information contained therein is not guaranteed," and that the ratings it provided were opinions).

Here, all 14 of the Viceroy reports attached to MPT's complaint have a full-page disclosure in the introductory sections of the reports, stating, among other things, that: (1) the reader should assume Viceroy has a short position in MPT's stock and will benefit financially if the share price drops; (2) the report is "for educational purposes only and expresses [Viceroy's] opinions" and the statements therein "are not statements of fact;" (3) "all information is presented 'as is,' without warranty of any kind—whether express or implied"; and (4) that readers should "think critically about [Viceroy's] opinions and do their own research." *See* Compl., Ex. 1, Part 1 (ECF No. 1-1) at 7, 40, 43, 48, 52; Compl., Ex. 1, Part 2 (ECF No. 1-2) at 4, 8, 14, 22, 27, 32, 46, 50, 57. And, as established above, these disclosures do not only appear in the reports themselves. Anyone attempting to access a report on Viceroy's webpage must first assent to the terms of these disclaimers prior to being able to access the report. These robust disclosures, in themselves, render the statements in the report nonactionable opinions.

The Reports State Opinions Based on Publicly Disclosed and Publicly Available Evidence.

As stated above, opinions or commentary based on disclosed facts are not actionable. *Reed.*, 2008 WL 11422484, at *4; *Sanders* 776 So. 2d at 74. Applying this law, courts routinely dismiss analytical reports that contain opinions based on disclosed facts. *See Turner,* 879 F.3d at 1265 (affirming dismissal of report consisting of commentary based on facts set forth in the article because such

statements "are not the stuff of libel"); *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 183 (4th Cir. 1998) ("When the bases for the conclusion are fully disclosed, no reasonable reader would consider them anything but the opinion of the author from the circumstances related."); *Borislow,* 2014 WL 12580259, at *3 (same).

Here, the Viceroy reports support its commentaries with specific reference to publicly disclosed documents. For example, the first report contains 11 "annexures" that detail the evidentiary support for the MPT transactions that Viceroy claims were "uncommercial." *See generally*, Compl., Ex. 1, Part 1 (ECF No. 1-1) at 18-35. The evidence consists entirely of publicly available documents, including MPT's own financial reports and those of its business partners, independent news reports, and more. *Id.* The source documents are cited and the relevant excerpts from the documents are copied and pasted into the report itself. *Id*. Viceroy continues this practice of documenting its supporting evidence in all the subsequent reports. The reports are thus nothing more than Viceroy's commentary on publicly disclosed evidence, which are not actionable as matter of law.

MPT's Complaint devotes many paragraphs to arguing why it believes that Viceroy's interpretation of the evidence is wrong. For example, MPT argues that it disagrees with Viceroy's conclusions that the MPT transactions complained of were "uncommercial" and were, in effect, a means of "round-tripping" money to

MPT's tenants by, among other things, overpaying for assets. *See* Compl. at ¶¶ 46-54. Further, while MPT does not deny that its executives are, in fact, bonused based on acquisitions, it denies that its executives were improperly incentivized by such bonuses. *Id.* at ¶¶ 55-57. And, while MPT concedes that it has entered complicated and interconnected business ventures with its largest tenant—Steward—and its managers, whereby MPT formed a joint venture with Steward's CEO and then simultaneously paid Steward $205 million for Steward's international operations, MPT claims that all the dealings were above board. *Id.* at ¶¶ 58-69.

But these allegations miss the mark. They amount to nothing more than a counterattack on Viceroy's commentary, arguing that Viceroy misinterpreted the evidence and failed to appreciate the economics and valuations of various commercial transactions. The issue here, however, is not who is right and who is wrong in this debate; rather, it is whether Viceroy's commentary, which it supports with meticulous citations to publicly available evidence, contains actionable defamatory statements. As the above authority makes clear, it does not.

The Challenged Statements Are Replete with Qualifying and Hyperbolic Language.

The "Constitution provides protection for 'rhetoric hyperbole' that cannot reasonably be interpreted as stating actual facts." *Horsely v. Rivera*, 292 F.3d 695, 701 (11th Cir. 2002) (citations and internal quotations omitted). This "provides

assurance that public debate will not suffer for lack of imaginative expression or the rhetorical hyperbole which has traditionally added much to the discourse of our Nation." *Id.* This "protection reflects the reality that exaggeration and non-literal commentary have become an integral part of public disclosure." *Id.*

Viceroy's commentary is dominated by colorful, hyperbolic language. This is evident on the face of MPT's Complaint, which complains of statements of opinion such as: "[w]hen #MP[T]'s mgmt mouths' are moving the odds are they're lying"; "$MP[T], if they tell you the day check your calendar"; "#ItsComing—Class Action Lawyers smell the blood. People are going to prison…"; "$MP[T] is where money goes to die & employees will go to prison." Compl. ¶¶ 71-72. The reports themselves are also loaded with hyperbolic statements and headings like: "[t]he fat lady is about to sing. Please take your seats"; "Medical Properties (dis)Trust"; "MP[T] & SHCI – A Den of Thieves." Compl. Ex. 1, Part 1, (ECF No. 1-1) at 3, 16; Compl., Ex. 2, Part 2 (ECF No. 1-2) at 34.

Additionally, Viceroy's commentary is replete with qualifying language indicating that the statements are merely expressions of its opinions. Indeed, page one of the first report contains statements such as: "*[w]e believe* the true value of MP[T]'s LTV is ~85%, creating enormous credit risk"; "*[w]e believe* MP[T] will have no choice but to significantly cut dividends"; "[s]ubstantially all of MP[T]'s major tenants *appear* distressed"; "*we believe* MPW engaged in 4 major types of

uncommercial transactions with its clients"; and "*[w]e believe* substantial portions of cash is round-tripped back to MP[T]." Compl., Ex. 1, Part 1 (ECF No. 1-1) at 3 (emphasis added).

Courts have routinely held that analytical reports about public companies containing such hyperbolic and qualifying language are non-actionable statements of opinion. *See MiMedx Group, Inc. v. Sparrow Fund Mgmt. LP,* 2018 WL 847014, at *7 (S.D.N.Y. 2018) (holding that statements including "this is definitely a revenue fraud situation," this "could be a jailable offense for the CEO," and that "the situation will end up with some [] employees being dragged away in handcuffs" were "exactly the type of loose, figurative or hyperbolic statements, that, even if deprecating the plaintiff, are not actionable") (internal quotations omitted); *Silvercorp Metals, Inc v. Anthion Mgmt. LLC,* 2012 WL 3569952, at *1 (N.Y. Sup. Ct. 2012) (allegedly defamatory statements made as part of scheme to drive down stock price and profit from short positions were deemed to be nonactionable expressions of opinion); *Deer Consumer Prods, Inc. v. Little Grp*, 2012 WL 5983641, at *1 (N.Y. Sup. Ct. 2012) (same).

For these reasons, the challenged statements are non-actionable opinions, and MPT has failed to make a cognizable claim for defamation.

### 2. MPT Has Failed to Plausibly Allege Actual Malice.

Because MPT is a publicly traded company and the alleged defamatory statements in this case relate to a matter of public concern—i.e., allegations of misconduct by a public corporation—MPT must plead and prove that Viceroy acted with actual malice. *See MiMedx,* 2018 WL 847014, at *8 (holding that publicly traded corporation is subject to the actual malice standard); *Borislow*, 2014 WL 12580259, at *2 (applying actual malice standard to a CEO bringing a defamation suit against publisher of a negative analyst report on a public corporation).

The plausibility standard of pleading applies to actual malice. *Michel*, 816 F.3d at 702. This is because "the actual malice standard was designed to allow publishers the 'breathing space' needed to ensure robust reporting on public figures and events." *Id.* Forcing "publishers to defend inappropriate suits through expensive discovery proceedings in all cases would constrict the breathing space in exactly the manner the actual malice standard was intended to prevent." *Id.* The "costs and efforts required to defend a lawsuit through that stage of litigation could chill free speech nearly as effectively as the absence of the actual malice standard altogether." *Id.*

To plausibly plead actual malice, MPT "must allege facts sufficient to give rise to a reasonable inference that the false statement was made with knowledge

that it was false or with reckless disregard of whether it was false or not." *Id.* The

"test is not an objective one, and the beliefs or actions of a reasonable person are

irrelevant." *Id.* at 702-03. Rather, a court must "ask whether the defendant, instead

of acting in good faith, actually entertained serious doubts as to the veracity of the

published account, or was highly aware that the account was probably false." *Id.* at

703. Importantly, "ill-will, improper motive, or personal animosity play no role in

determining whether a defendant acted with actual malice." *Dunn v. Air Line*

*Pilots Assoc.*, 193 F.3d 1185, 1198 (11th Cir. 1999).

Actual malice "requires more than a departure from reasonable journalistic

standards." *Michel*, 816 F.3d at 703. Thus, "a failure to investigate, standing on its

own, does not indicate the presence of actual malice." *Id.* Rather, "there must be

some showing that the defendant purposefully avoided further investigation with

intent to avoid the truth." In assessing plausibility, a court is to disregard

conclusory statements of knowledge of falsity or recklessness. *Id.* at 703-04.

Applying this standard, courts routinely dismiss defamation complaints

against public figures for failing to plausibly allege actual malice. *See id.* at 705-06

(allegations that a plaintiff published an article without doing sufficient due

diligence were insufficient to plausibly allege actual malice); *Turner,* 879 F.3d at

1273-74 (disregarding conclusory statements and holding that allegations that a

defendant failed to properly analyze information did not rise to actual malice);

*MiMedx,* 2018 WL 847014, at *8 (dismissing allegations that the defendant defamed a publicly held corporation, noting that allegations of bias or hostility towards the company failed to establish actual malice).

Here, MPT has not plausibly alleged actual malice. There are no factual allegations suggesting that Viceroy "actually entertained serious doubts" about the truth of its commentary or was "highly aware that it was probably false." *Michel*, 816 F.3d at 703. To the contrary, Viceroy supported its commentary with meticulous citations to publicly available documents, allowing the readers to make their own decision as to whether its commentary was credible or not. And it did so with the upfront and prominent disclaimer that the reports were opinions, urging readers to "think critically about [Viceroy's] opinions and do their own research." *See, e.g.,* Compl., Ex. 1, Part 1 (ECF No. 1-1) at 7. Viceroy's actions of providing such supporting evidence and disclaimers so that readers can make up their own minds are the antitheses of a finding of actual malice.

**B.**     **MPT's Other Claims Must Also Be Dismissed.**

Because Viceroy's alleged defamatory statements are constitutionally protected opinions and MPT has not plausibly alleged actual malice, its claims for conspiracy, tortious interference with contractual/business relations, private nuisance, and unjust enrichment must also fail.

Courts have unanimously held that a plaintiff cannot evade First Amendment restrictions on defamation claims by pleading a different cause of action based on the same protected statements. *See Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 51-56 (1988) (applying First Amendment defamation limitations to a claim for intentional infliction of emotional distress); *Farah v. Esquire Magazine,* 736 F.3d 528, 540 (D.C. Cir. 2013) (dismissing tortious interference and other tort claims when defamation claim failed because a "plaintiff may not use related causes of action to avoid the constitutional requisites of a defamation claim"); *Beverly Hills Foodland, Inc. v. United Food and Commercial Workers Union, Local 655*, 39 F.3d 191, 196 (8th Cir. 1994) (holding that the actual malice standard must "equally be met for a tortious interference claim" because "a plaintiff may not avoid the protection afforded by the Constitution… merely by the use of creative pleading"); *Jefferson Cnty. Sch. Dist. v. Moddy's Investor's Services, Inc.*, 175 F.3d 848, 856-58 (10th Cir. 1999) (rejecting tortious interference claims because those claims were based on speech protected by the First Amendment); *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1057-58 (9th Cir. 1999) (holding that the plaintiff's tort claims for product disparagement, trade libel and tortious interference with business relationships were "subject to the same [F]irst [A]mendment requirements that govern actions for defamation). Courts have applied these same restrictions to non-tort claims, including breach of contract

claims. *See Compuware Corp. v. Moody's Investor Services, Inc.*, 499 F.3d 520, 530-33 (6th Cir. 2007).

Here, MPT's claims for civil conspiracy, tortious interference with contractual/business relations, private nuisance, and unjust enrichment are predicated *entirely* on the same constitutionally protected statements upon which it bases its defamation claim. Therefore, these claims must also be dismissed.

### III.    CONCLUSION

For these reasons, Viceroy respectfully prays and requests that the Court dismiss MPT's Complaint in its entirety with prejudice and tax costs and Viceroy's attorneys' fees to MPT in this action.

Respectfully submitted this 21st day of April, 2023.

OF COUNSEL:

ELIAS LLC
Richard M. Elias
Todd Friedman
231 S. Bemiston, Suite 800
St. Louis, MO 63105
314-391-6824
relias@eliasllc.com
tfriedman@eliasllc.com

*/s/ J. Ken Thompson*
J. KEN THOMPSON (ASB-1422-P67J)
Attorney for Defendant, Viceroy
Research, LLC


J. Ken Thompson
Attorney at Law
P.O. Box 43116
Birmingham, Alabama 35243
205-601-5624
kent@jkenthompsonlaw.com

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed I hereby certify that I electronically filed a true and correct copy of the foregoing, using the Court's CM/ECF system, which will automatically send email notification of said filing to:

Michael L. Bell
Wesley B. Gilchrist
LIGHTFOOT, FRANKLIN &
WHITE LLC
The Clark Building
400 20th Street North
Birmingham, Alabama 35203
Tel.: (205) 581-0700

*Attorneys for Plaintiff*

William Savitt (*pro hac vice* to be filed)
Sarah K. Eddy (*pro hac vice* to be filed)
Nathaniel Cullerton (*pro hac vice* to be filed)
Adabelle U. Ekechukwu (*pro hac vice* to be filed)
Sijin Choi (*pro hac vice* to be filed)
Charles M. Melman (*pro hac vice* to be filed)
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Tel.: (212) 403-1000

Corey Worcester (*pro hac vice* to be filed)
Jomaire A. Crawford (*pro hac vice* to be filed)
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel.: (212) 849-7000

Anthony Bongiorno (*pro hac vice* to be filed)
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
111 Huntington Ave, Suite 520
Boston, MA 02199
Tel.: (617) 712-7100

*Attorneys for Plaintiff*

*/s/ J. Ken Thompson*
J. KEN THOMPSON