FILED
2023 May-05  PM 10:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA

---

MEDICAL PROPERTIES TRUST, INC.,

                      Plaintiff,

      -v.-

VICEROY RESEARCH LLC;
FRASER JOHN PERRING; GABRIEL
BERNARDE; and AIDAN LAU,

                    Defendants.

Civil Action No. 2:23-cv-00408-MHH

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT VICEROY RESEARCH LLC'S MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(B)(6)**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...............................................................................1

FACTUAL BACKGROUND ...................................................................................2

    A.    Medical Properties Trust, Inc. ................................................2

    B.    Viceroy Research LLC ..........................................................2

    C.    Viceroy's short-and-distort scheme aimed at MPT .............3

ARGUMENT .........................................................................................................5

I.    THE COMPLAINT PLAUSIBLY ALLEGES ACTIONABLE
FALSEHOODS.............................................................................................6

    A.    Viceroy's defamatory statements are provably false............8

    B.    Viceroy cannot hide behind the "opinion" label.................10

    C.    Viceroy's "disclosures" are riddled with factual
misrepresentations and material omissions. ......................14

    D.    Viceroy's statements are not protected "rhetorical hyperbole."........15

II.    VICEROY'S CLAIM OF PLEADING DEFICIENCY
CONCERNING ACTUAL MALICE FAILS.............................................19

    A.    Because MPT is not a public figure, actual malice is not an
element........................................................................19

    B.    The Complaint plausibly alleges actual malice. .................20

III.    MPT'S OTHER CLAIMS SHOULD NOT BE DISMISSED.....................25

CONCLUSION ....................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                          **<u>Page(s)</u>**

*Am. Benefit Life Ins. Co.* v. *McIntyre*,
    375 So. 2d 239 (Ala. 1979) ............................................................................. 19

*Amira Nature Foods, Ltd.* v. *Prescience Point, LLC*,
    No. 15-cv-9655 (VEC), ECF No. 66 at 7 (S.D.N.Y. Oct. 17, 2016) ........... 12, 23

*Ashcroft* v. *Iqbal*,
    556 U.S. 662 (2009) ....................................................................................... 5

*Bass* v. *United Dev. Funding, L.P.*,
    2019 WL 3940976 (Tex. App. Aug. 21, 2019) ........................................... 23, 24

*Bell Atl. Corp.* v. *Twombly*,
    550 U.S. 544 (2007) ....................................................................................... 5

*Bennett* v. *Hendrix*,
    325 F. App'x 727 (11th Cir. 2009) ...........................................................*passim*

*Borislow* v. *Canaccord Genuity Group, Inc.*,
    2014 WL 12580259 (S.D. Fla. June 27, 2014) ................................................ 13

*Butler* v. *Town of Argo*,
    871 So. 2d 1 (Ala. 2003) ........................................................................... 21, 24

*Celle* v. *Filipino Reporter Enters. Inc.*,
    209 F.3d 163 (2d Cir. 2000) ........................................................................... 11

*Comput. Aid, Inc.* v. *Hewlett-Packard Co.*,
    56 F. Supp. 2d 526 (E.D. Pa. 1999) ................................................................ 19

*Coral Ridge Ministries Media, Inc.* v. *Amazon.com, Inc.*,
    406 F. Supp. 3d 1258 (M.D. Ala. 2019) ........................................................... 9

*Coral Ridge Ministries Media, Inc.* v. *Amazon.com, Inc.*,
    6 F.4th 1247 (11th Cir. 2021)............................................................ 6 n.1, 9, 11

*Deeb* v. *Saati*,
    778 F. App'x 683 (11th Cir. 2019) ...........................................................*passim*

*Deer Consumer Prods., Inc.* v. *Little Grp.*,
   2012 WL 5983641 (N.Y. Sup. Ct. Nov. 29, 2012) ............................................11

*Delta Health Grp., Inc.* v. *Stafford*,
   887 So. 2d 887 (Ala. 2004) ..................................................................................6

*Farmland Partners Inc.* v. *Rota Fortunae*,
   2020 WL 12574993 (D. Colo. May 15, 2020)............................................*passim*

*Flickinger* v. *King*,
   2023 WL 3029709 (Ala. Apr. 21, 2023).............................................................25

*Gertz* v. *Robert Welch, Inc.*,
   418 U.S. 323 (1974) ...........................................................................................19

*Greenbelt Co-op. Pub. Ass'n* v. *Bresler*,
   398 U.S. 6 (1970) ...............................................................................................16

*Harte-Hanks Commc'ns, Inc.* v. *Connaughton*,
   491 U.S. 657 (1989) ...........................................................................................20

*Holloway* v. *Am. Media, Inc.*,
   947 F. Supp. 2d 1252 (N.D. Ala. 2013) .............................................................25

*Horsley* v. *Feldt*,
   304 F.3d 1125 (11th Cir. 2002).........................................................................16

*Horsley* v. *Rivera*,
   292 F.3d 695 (11th Cir. 2002)..............................................................15, 17, 18

*Hustler Magazine, Inc.* v. *Falwell*,
   485 U.S. 46 (1988) .............................................................................................16

*Jackson* v. *United Steel, Paper & Forestry, Rubber, Mfg., Energy,*
   *Allied Indus. & Serv. Workers Int'l Union, AFL-CIO-CLC*,
   2009 WL 10704261 (N.D. Ala. Feb. 23, 2009) .............................................9-10

*Jefferson County School District No. R-1* v. *Moody's Investor's*
   *Services, Inc.*,
   988 F. Supp. 1341 (D. Colo. 1997) ...................................................................13

*Kelly* v. *Arrington*,
   624 So. 2d 546 (Ala. 1993) .................................................................................7

*King* v. *S. Poverty L. Ctr., Inc.*,
    2023 WL 3061825 (M.D. Ala. Apr. 24, 2023) ..............................6 & n.1, 17, 20

*LifeMD, Inc.* v. *Lamarco*,
    607 F. Supp. 3d 576 (W.D. Pa. 2022) ....................................12, 14, 20

*Martinson* v. *Southern Health Partners, Inc.*,
    608 F. Supp. 3d 1107 (N.D. Ala. 2022) ..............................................5

*Michel* v. *NYP Holdings, Inc.*,
    816 F.3d 686 (11th Cir. 2016)........................................... 11, 20-21, 24

*Milkovich* v. *Lorain Journal Co.*,
    497 U.S. 1 (1990) ....................................................................*passim*

*MiMedx Grp., Inc.* v. *Sparrow Fund Mgmt. LP*,
    2018 WL 847014 (S.D.N.Y. Jan. 12, 2018)................................. 10, 23

*N.Y. Times Co.* v. *Sullivan*,
    376 U.S. 254 (1964)...................................................................20

*NOVAGOLD Res., Inc.* v. *J Cap. Rsch. USA LLC*,
    2022 WL 900604 (E.D.N.Y. Mar. 28, 2022) .....................................19

*Old Dominion Branch No. 496* v. *Austin*,
    418 U.S. 264 (1974)...................................................................16

*Ollman* v. *Evans*,
    750 F.2d 970 (D.C. Cir. 1984) ..................................................9, 17

*Presley* v. *Graham*,
    936 F. Supp. 2d 1316 (M.D. Ala. 2013) ...........................................16

*Reed* v. *Women's Army Corps Veterans' Ass'n*,
    2008 WL 11422484 (N.D. Ala. Feb. 7, 2008) ...................................12

*Resnick* v. *AvMed, Inc.*,
    693 F.3d 1317 (11th Cir. 2012).......................................................5

*Sanders* v. *Smitherman*,
    776 So. 2d 68 (Ala. 2000) ...........................................................16

*Silvercorp Metals, Inc.* v. *Anthion Mgmt. LLC*,
  2012 WL 3569952 (N.Y. Sup. Ct. Aug. 16, 2012) ...................................... 10-11

*U.S. Steel, LLC* v. *Tieco, Inc.*,
  261 F.3d 1275 (11th Cir. 2001)................................................................18 & n.2

**Statutes and Rules**

Fed. R. Civ. P. 8(a)(2) ......................................................................................5

Fed. R. Civ. P. 12(b)(6).................................................................................25

**Other Authorities**

*Publications*, Viceroy Research,
  https://viceroyresearch.org/publications/ (last visited May 5, 2023) .................17

*Viceroy Research*, Viceroy Research, https://viceroyresearch.org
  /research/ (last visited May 5, 2023) ................................................................17

## PRELIMINARY STATEMENT

This case is about a short-seller's scheme to defame and injure a company for profit. At the heart of this scheme is Defendant Viceroy Research LLC ("Viceroy"), a self-styled "investigative financial research group" that purports to "sift fact from fiction." Doc. 1, ¶ 75. In reality, Viceroy's business is to "short and distort"—to bet against a company's stock through a short sale, publish false and defamatory information about the company, and profit from the ensuing stock price decline.

Plaintiff Medical Properties Trust, Inc. ("MPT") is Viceroy's latest target. In a campaign launched January 26, 2023 and sustained for months, Viceroy and its members (together, "Defendants") published more than a dozen "reports" and hundreds of tweets claiming that MPT engaged in all manner of malfeasance. The effect was as intended: MPT's stock price plummeted, leaving Viceroy, with its admitted short position, in the money.

MPT brought this suit to recover damages caused by Defendants' actions and to enjoin further defamatory statements. Rather than answer MPT's allegations, Viceroy has moved to dismiss for failure to state a claim. Viceroy does not dispute that the Complaint plausibly alleges Defendants' publication of defamatory statements, or that the falsity of those statements is adequately pleaded. Instead, it asks the Court to grant it refuge because the identified statements purportedly are mere "opinions" and "hyperbole" that enjoy absolute protection. Viceroy further

contends that MPT's claims cannot survive absent proof of knowing or reckless disregard of falsity—*i.e.*, "actual malice"—and that the Complaint fails to allege such facts. None of Viceroy's arguments has merit, and its motion should be denied.

## FACTUAL BACKGROUND

### A.    Medical Properties Trust, Inc.

MPT is one of Alabama's largest publicly traded companies and its largest real estate investment trust. Doc. 1, ¶¶ 1, 10. For 20 years, MPT has acquired, developed, and invested in community healthcare facilities, which it then leases to operating companies. *Id.* ¶¶ 18, 20. MPT underwrites its real estate investments to identify medical facilities that meet true community needs and thus will generate long-term returns even if an individual operator encounters financial or other difficulty. *Id.* ¶ 24.

### B.    Viceroy Research LLC

Viceroy, a Delaware limited liability company co-founded by Defendants Fraser Perring, Gabe Bernarde, and Aidan Lau, is a purported "financial research" firm that publishes negative content about public companies whose shares it has sold short. *Id.* ¶ 11. To sell a stock short is to bet that its price will fall by borrowing the stock from a broker, selling it, and retaining the proceeds—all with a plan to buy replacement shares back later at a lower price. *Id.* ¶ 30. If the bet turns out right, and the stock price declines, the short-seller profits. *See id.*

Perring—a self-proclaimed "Grand Poobah" of short-sellers—entered the short-and-distort game after British regulators revoked his social work license upon finding that he lied and fabricated evidence. *Id.* ¶ 4. In 2021, five years after Viceroy's founding, a South African regulator fined its members millions of dollars for spreading false claims about a bank on behalf of a hedge fund bent on driving down the bank's stock price. *Id.* ¶¶ 4, 35, 38-39. Defendants escaped justice, however, when a tribunal vacated the penalty for a jurisdictional defect. *Id.* ¶¶ 4, 40.

## C.    Viceroy's short-and-distort scheme aimed at MPT

On January 26, 2023, Viceroy published the first of a series of defamatory "reports" concerning MPT. *Id.* ¶ 41. The same day, Viceroy, Perring, and Bernarde all used their Twitter accounts to promote the report and launch a vitriolic social media campaign against MPT. *Id.* ¶ 42. To drive home the defamatory accusations, Perring tagged his posts "#fraud." *Id.* Over the ensuing weeks and months, Viceroy published 13 more reports, at regular intervals, all promoted through the same concerted campaign. *Id.*; *see* Doc. 1-1 & Doc. 1-2. And on February 2, 2023, Viceroy sent a letter to the Birmingham office of MPT's independent auditor, PricewaterhouseCoopers LLP ("PwC"), doubling down on its false claims and encouraging PwC to investigate. Doc. 1-3.

As detailed in MPT's Complaint, the reports, letter, and accompanying social media posts contain a barrage of false and defamatory statements concerning MPT,

the impact of which has been amplified by Defendants' concerted actions with others who have an interest in tanking MPT's stock.  Doc. 1, ¶¶ 77-79.  The most blatant and inflammatory of these statements fall into four categories:

1.      False accusations of revenue "round tripping," an accounting scheme where a party engages in an uneconomic transaction as a way to provide funds to a counterparty, who later sends those same funds back in a second transaction to be recorded as revenue by the original party.  *Id.* ¶ 46; *see also id.* ¶ 47 (noting false claims that "[r]ent is round-tripped via 'fake' purchases of massively inflated assets" and that MPT "has engaged in billions of dollars of uncommercial transactions with its tenants" to "mask a pervasive revenue round-robin scheme and/or theft").

2.      False accusations that MPT's executive compensation structure "encourage[s] an aggressive, acquire-at-any-cost policy which ultimately aligns with a revenue round-tripping model."  *Id.* ¶ 55.

3.      False accusations of fraudulent dealings with operator-tenant Steward Health Care System LLC ("Steward"), including that MPT purportedly "paid $205m for 3 hospitals worth $27m in Malta formerly operated by a group of businessmen under investigation for corruption."  *Id.* ¶ 63.

4.      False accusations of criminal wrongdoing asserting that MPT is a "[s]cam," "ponzi scheme," and "fraud," and that "$MPW[] [is] where money goes to die & employees will go to prison."  *Id.* ¶¶ 71-72.

Readily available information establishes that Viceroy's allegations are false. *Id.* ¶¶ 46-73. Indeed, every year from 2008 to the present, PwC has issued an unqualified opinion that MPT's financial statements "present fairly, in all material respects, [its] financial position" and "the results of its operations and its cash flows" in conformity with generally accepted accounting principles. *Id.* ¶ 29.

## ARGUMENT

"A Rule 12(b)(6) motion tests the sufficiency of a complaint against the liberal pleading standards set forth by Rule 8(a)(2)," which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Martinson* v. *Southern Health Partners, Inc.*, 608 F. Supp. 3d 1107, 1109 (N.D. Ala. 2022) (cleaned up). A complaint need only "state a claim to relief that is plausible on its face"—meaning that it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 556, 570 (2007)). At this stage, the facts alleged in the Complaint are taken as true and construed in the light most favorable to MPT. *See Resnick* v. *AvMed, Inc.*, 693 F.3d 1317, 1321-22 (11th Cir. 2012).

Application of these standards to MPT's detailed, 45-page Complaint compels denial of Viceroy's motion to dismiss.

## I.     THE COMPLAINT PLAUSIBLY ALLEGES ACTIONABLE FALSEHOODS.

Count One of the Complaint alleges defamation for acts taken in targeting an Alabama company, with an intended impact in Alabama.  As Viceroy does not dispute for this motion, Alabama law governs the claim.  Doc. 17, p. 7 n.3.

To state a claim for defamation under Alabama law, a plaintiff must plausibly allege: "[1] that the defendant was at least negligent, [2] in publishing [3] a false and defamatory statement to another [4] concerning the plaintiff, [5] which is either actionable without having to prove special harm (actionable per se) or actionable upon allegations and proof of special harm (actionable per quod)."  *Delta Health Grp., Inc.* v. *Stafford*, 887 So. 2d 887, 895 (Ala. 2004).  If the plaintiff is a "public figure," it must plausibly allege not only that the identified statement was provably false when made, but also that "the defendant made the alleged defamatory statement with actual malice."  *King* v. *S. Poverty L. Ctr., Inc.*, 2023 WL 3061825, at *13 (M.D. Ala. Apr. 24, 2023) (cleaned up).[1]

Viceroy does not dispute that MPT has plausibly alleged the publication of defamatory statements that qualify as defamation *per se*.  Among the statements

---

[1]     Courts often treat the requirements that a statement be "susceptible of being proved true or false" and that it be "actually false"—when collapsed, the requirement of provable falsity—as limitations imposed by federal First Amendment law rather than elements of state law.  *See, e.g.*, *King*, 2023 WL 3061825, at *13 (citing *Coral Ridge Ministries Media, Inc.* v. *Amazon.com, Inc.*, 6 F.4th 1247, 1252 (11th Cir. 2021)).  Whatever the source of the requirement, and whether expressed as one element or two, the parties here agree that provable falsity must be pleaded.

identified in the Complaint are that MPT is engaged in a "pervasive revenue round-robin scheme and / or theft" to the tune of "over $2b," Doc. 1, ¶¶ 47, 49; deliberately overpays for properties to support that scheme, *id.* ¶¶ 51, 54; corruptly overpaid for assets in Malta, *id.* ¶¶ 63, 67-68; and is "a fraud," a "#Scam & rotten to the core," "a #ponzi scheme," and "part of an international corruption investigation," *id.* ¶ 71.  By any reasonable measure, these statements "impute dishonesty or corruption" to MPT and its executives and "directly tend to prejudice" MPT in its "trade[] or business," *Kelly* v. *Arrington*, 624 So. 2d 546, 549 (Ala. 1993).  Indeed, MPT's stock price declined over 35 percent in the period between Viceroy's initiation of its short attack and the filing of the Complaint, and sophisticated Wall Street analysts have parroted Viceroy's false accusations against MPT and its leadership.  *See* Doc. 1, ¶ 8.

But Viceroy contends that: (1) the statements identified as defamatory purportedly are protected "statements of opinion based on disclosed and publicly available facts," Doc. 17, p. 1; and (2) MPT purportedly has failed to "plausibly allege . . . that Viceroy subjectively entertained serious doubts as to the veracity of its reports or was highly aware that the reports were probably false," *id.* at 2.

The first of these contentions fails because the identified statements are provably false and thus actionable even if characterized—or couched—as "opinion." The second argument fails because MPT is not a "public figure" required to plead

and prove actual malice, and because in any event the facts alleged amply establish

knowledge or at least recklessness as to the statements' falsity.

### A.     Viceroy's defamatory statements are provably false.

The Complaint focuses on four discrete categories of demonstrably and

provably false statements in Defendants' "reports" and social media posts

concerning: (1) purported revenue "round-tripping"; (2) executive compensation;

(3) MPT's dealings with operator-tenant Steward, including that MPT and Steward

together purportedly "paid $205m for 3 hospitals worth $27m in Malta formerly

operated by a group of businessmen under investigation for corruption"; and

(4) alleged fraud and other crimes. *See* Doc. 1, ¶¶ 46-73.  A "reasonable factfinder

could conclude" that these statements are "'sufficiently factual to be susceptible of

being proved true or false.'"  *Bennett* v. *Hendrix*, 325 F. App'x 727, 739 (11th Cir.

2009) (quoting *Milkovich* v. *Lorain Journal Co.*, 497 U.S. 1, 21 (1990)).

Indeed, the Complaint explains *how* each category of statement is provably

false.  MPT either engages in revenue "round-tripping" or it does not.  *Farmland*

*Partners Inc.* v. *Rota Fortunae*, 2020 WL 12574993, at *15-16 (D. Colo. May 15,

2020) (revenue round-tripping claims are provable).  Paragraphs 50, 52, 53, and 54

of the Complaint explain why the "round-tripping" charge is false: Among other

things, operator-tenants "are not even the recipients of the acquisition or

development funds" for most of the transactions at issue.  Doc. 1, ¶ 50.  Likewise,

paragraphs 56 and 57 explain why the premise of Viceroy's charge regarding MPT's executive compensation structure—that every transaction "will qualify executives for bonuses," *id.* ¶ 55—is wrong: "[n]ot all of MPT's transactions" do so, *id.* ¶ 56. Paragraphs 60-62, 64, and 69 disprove Viceroy's charges that MPT "paid $205m for 3 hospitals worth $27m in Malta" (it did not) and owns the properties through a joint venture (it does not). *See id.* ¶¶ 63, 67. All of this puts the lie to assertions that MPT is engaged in a Ponzi scheme and other fraud. *See id.* ¶ 71. It is not.

These are not "'loosely definable, variously interpretable statement[s],'" like ideological labels or the term "hate group." *Cf. Coral Ridge Ministries Media, Inc.* v. *Amazon.com, Inc.*, 406 F. Supp. 3d 1258, 1277 (M.D. Ala. 2019) (quoting *Ollman* v. *Evans*, 750 F.2d 970, 987 (D.C. Cir. 1984) (en banc)), *aff'd*, 6 F.4th 1247 (11th Cir. 2021). They are concrete assertions about what MPT has done. Viceroy's accusations of criminal behavior are likewise clearly factual: "[A]n accusation of a crime" is "[a] classic example of a statement with a well-defined meaning." *Ollman*, 750 F.2d at 980; *accord Deeb* v. *Saati*, 778 F. App'x 683, 688 (11th Cir. 2019) (per curiam) ("statements that [plaintiff] and his brother are 'alleged money launderers' and . . . 'will be handcuffed and en route to the American prisons'" were "susceptible to being proved true or false"); *Bennett*, 325 F. App'x at 742 (implied allegation of criminal conviction was actionable); *Jackson* v. *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO-CLC*,

2009 WL 10704261, at *40 (N.D. Ala. Feb. 23, 2009) (allegation that plaintiff stole funds from union was actionable).  And all of these assertions are disproved by the "core of objective evidence" in the Complaint.  *Milkovich*, 497 U.S. at 21.

### B.   Viceroy cannot hide behind the "opinion" label.

Viceroy's efforts to dodge provable falsity by saying its statements are mere "opinions" fail—both because even a cursory review of the statements reveals their presentment as fact and conclusion rather than as "opinion" or "belief," and because opinions are not immune from defamation liability.  While "statements that cannot 'reasonably be interpreted as stating actual facts'" are not actionable as defamation, a statement may be actionable even if it is framed as an opinion.  *See id.* at 20. "That's because expressions of opinion may often imply an assertion of objective fact."  *Deeb*, 778 F. App'x at 687.  The example supplied by the Supreme Court and oft repeated in this Circuit is: "In my opinion John Jones is a liar."  *Milkovich*, 497 U.S. at 18; *see also, e.g.*, *Deeb*, 778 F. App'x at 687.  That is actionable because it "implies a knowledge of facts which lead to the conclusion that Jones told an untruth."  *Milkovich*, 497 U.S. at 18.

Tellingly, in asserting that "opinions" are not actionable in defamation, Viceroy relies heavily on cases applying New York law.  *See* Doc. 17, p. 15 (citing *MiMedx Grp., Inc.* v. *Sparrow Fund Mgmt. LP*, 2018 WL 847014 (S.D.N.Y. Jan. 12, 2018); *Silvercorp Metals, Inc.* v. *Anthion Mgmt. LLC*, 2012 WL 3569952 (N.Y. Sup.

Ct. Aug. 16, 2012); and *Deer Consumer Prods., Inc.* v. *Little Grp.*, 2012 WL 5983641 (N.Y. Sup. Ct. Nov. 29, 2012)).  As the Eleventh Circuit has observed, however, New York law "is broader and more protective of speech than the requirements found in the Federal Constitution." *Michel* v. *NYP Holdings, Inc.*, 816 F.3d 686, 695 (11th Cir. 2016).  Indeed, "'[u]nlike the Federal Constitution, the New York Constitution provides for absolute protection of opinions.'" *Id.* (quoting *Celle* v. *Filipino Reporter Enters. Inc.*, 209 F.3d 163, 178 (2d Cir. 2000)).  That shield is not available under Alabama law, which tracks the First Amendment.  *E.g.*, *Coral Ridge Ministries*, 6 F.4th at 1252.  Accordingly, even to the extent Viceroy's defamatory statements can be characterized as "opinion," that characterization is no defense.

More broadly, Viceroy cannot escape liability based on disclaimers in its reports.  First, no disclaimers accompany the many tweets identified in the Complaint.  For example, no Twitter user who read the lies that "Steward International is an $MP[T] subsidiary," Doc. 1, ¶ 66, or that MPT has been "involve[d] in #Corruption while scamming investors with #RoundTripping," *id.* ¶ 71, would have seen any disclaimer regarding the status of those statements as opinions.  Viceroy does not even argue that its disclaimer saves its tweets; it directs its argument only to "the statements in the report[s]."  Doc. 17, p. 11.

As to those statements, here again there is no "wholesale defamation exemption for anything that might be labeled 'opinion.'" *Milkovich*, 497 U.S. at 18. Courts have rejected similar efforts to invoke blanket disclaimers and generic opinion qualifiers as a shield to liability.  For example, in *Amira Nature Foods, Ltd.* v. *Prescience Point, LLC*—a case applying New York's less plaintiff-friendly rule—the court rejected a short-seller's attempt to "avoid liability simply by including a legal disclaimer or sprinkling their reports with words that they believe connote opinion."  No. 15-cv-9655 (VEC), ECF No. 66 at 7, 59 (S.D.N.Y. Oct. 17, 2016). Similarly, in *Farmland Partners*, the court rejected a short-seller's efforts to hide behind "express disclaimers that [its] [a]rticle represents opinions" and the article's "conditional phrasing and speculative language."  2020 WL 12574993, at *12-13. As the court in yet another short-and-distort case recently observed, "courts have consistently held that prefatory disclaimers and exculpatory words cannot save" otherwise actionable defamatory statements. *LifeMD, Inc.* v. *Lamarco*, 607 F. Supp. 3d 576, 593-94 (W.D. Pa. 2022).

The cases that Viceroy cites do not help it.  *See* Doc. 17, pp. 10-11.  They establish only that an opinion is protected "pure opinion" if accompanied by a complete and accurate disclosure of the "nondefamatory facts" upon which the opinion is based.  *See Reed* v. *Women's Army Corps Veterans' Ass'n*, 2008 WL 11422484, at *1-5 (N.D. Ala. Feb. 7, 2008) (cleaned up) (letter's statements

describing plaintiff as "argumentative" and "very disrespectful" not actionable because based on accurate facts recited in same letter). *Borislow* v. *Canaccord Genuity Grp., Inc.* held that a "prediction that [plaintiff's] departure from [his company] should enable new management to achieve a stock price increase" was not actionable because surrounding disclaimers made clear it was "an opinion *supported by facts disclosed in the Report.*" 2014 WL 12580259, at *3 (S.D. Fla. June 27, 2014) (emphasis added). *Jefferson County School District No. R-1* v. *Moody's Investor's Services, Inc.* similarly held that a rating agency's statement of "negative" outlook, couched by a disclaimer and based on no provably false facts, was non-actionable pure opinion. 988 F. Supp. 1341, 1345 (D. Colo. 1997).

There is no "pure opinion" escape here, where the identified statements themselves contain provably false assertions—*i.e.*, that MPT engages in round-tripping with its tenants, rewards its executives for doing so, bought Malta hospitals in a corrupt joint venture with Steward, and committed crimes. Couching as "opinion" statements like these, which Viceroy does not seriously dispute "a reasonable factfinder could conclude . . . imply an assertion that is sufficiently factual to be susceptible of being true or false," has no mitigating effect. *Bennett*, 325 F. App'x at 738, 741-42 (cleaned up); *see Deeb*, 778 F. App'x at 687.

**C.    Viceroy's "disclosures" are riddled with factual misrepresentations and material omissions.**

Even if the statements at issue could be characterized as "opinion," the "annexures" Viceroy points to as supplying the "source documents" that "disclose[]" the facts underlying the "opinions" could not cure the defamation.  *See* Doc. 17, pp. 11-12.  That is because "[e]ven if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still" be actionable.  *Milkovich*, 497 U.S. at 18-19; *see also Deeb*, 778 F. App'x at 687-88; *LifeMD, Inc.*, 607 F. Supp. 3d at 594 ("pure opinion" safe harbor inapplicable where assertions of fraud and cover-up were not supported by non-defamatory facts).

Viceroy's "annexures" and other supposed support are not just incorrect but rife with the same factual misstatements identified in the Complaint as defamatory. For example, Defendants' false statements concerning Malta also appear in the annexures to Viceroy's January 26, 2023 report.  *See* Doc. 1, ¶ 63 & Doc. 1-1, p. 23. And Viceroy's false characterizations of "major transactions" as round-tripping are in those same annexures.  *See* Doc. 1, ¶ 54 & Doc. 1-1, pp. 17-19, 27-28.

The Complaint details the many ways in which Viceroy's citations are incorrect or incomplete.  For example, paragraph 54 explains why Viceroy's claims with respect to MPT's Massachusetts portfolio rely on incomplete facts: a third-party's valuation belies Viceroy's "overpayment" argument.  Doc. 1, ¶¶ 25, 54.  As

for Viceroy's claims about executive compensation, paragraphs 56 and 57 explain that a complete set of facts—available to Viceroy but not provided in the reports— would have shown the opposite of Viceroy's claims. *Id.* ¶¶ 56-57. Paragraphs 64 and 69 do the same for Viceroy's false claim that MPT owns hospitals in Malta. *Id.* ¶¶ 64, 69. And paragraphs 60, 61, and 62 explain why Viceroy's presentation of its evidence on the Malta claim is erroneous. *Id.* ¶¶ 60-62.

Finally, Viceroy's argument about its "annexures" and disclosures, even if accepted, would apply only to the statements contained in its reports and not to the scores of tweets containing the same allegations. No disclosures accompany Defendants' tweets asserting, for example, that MPT has a "crooked subsidiary" in "Steward International," *id.* ¶ 66, "is a massive #RoundTripping #Scam," "a #ponzi scheme reliant on #RoundTripping," and is guilty of "#Misstatements, #Fraud, #Roundtripping & #Corruption," *id.* ¶ 71. Those tweets and others in the Complaint cite no sources for their contentions, and therefore cannot be shielded from defamation liability. *See Deeb*, 778 F. App'x at 687-89.

**D. Viceroy's statements are not protected "rhetorical hyperbole."**

Nor can Viceroy escape liability by calling its reports and tweets "hyperbole." Doc. 17, p. 14 (quoting *Horsley* v. *Rivera*, 292 F.3d 695, 701 (11th Cir. 2002)). Tellingly, three of the six statements Viceroy points to as supposed examples of non- actionable hyperbole are not even in the Complaint, and most of the statements that

are alleged in the Complaint are not addressed in Viceroy's brief.  *See id.*  But in all events, to qualify as "rhetorical hyperbole," it must be true that Viceroy's statements "cannot 'reasonably [be] interpreted as stating actual facts.'"  *Milkovich*, 497 U.S. at 20 (citation omitted).  That is far from the case here.

First, the circumstances in which the statements were expressed do not support a finding of "rhetorical hyperbole."   Hyperbole cases tend to involve political debates, criticism of government officials, social commentary, or entertainment. *See Greenbelt Co-op. Pub. Ass'n* v. *Bresler*, 398 U.S. 6, 13-14 (1970) (commentary on city council debate); *Old Dominion Branch No. 496* v. *Austin*, 418 U.S. 264, 286 (1974) (labor dispute, in which "exaggerated rhetoric was commonplace"); *Hustler Magazine, Inc.* v. *Falwell*, 485 U.S. 46, 52-53 (1988) (parody); *Sanders* v. *Smitherman*, 776 So. 2d 68, 74 (Ala. 2000) ("political speech"). Where, by contrast, the context is more sober and less heated, statements are generally not considered "hyperbole" or excused as such.  *See Bennett*, 325 F. App'x at 742 (statement "not styled as a cartoon, parody, or editorial"); *Horsley* v. *Feldt*, 304 F.3d 1125, 1131, 1137 (11th Cir. 2002) (statement in CNN broadcast); *Presley* v. *Graham*, 936 F. Supp. 2d 1316, 1325 (M.D. Ala. 2013) (statement to news reporter that plaintiff was a "supervisor's nightmare" did not constitute "rhetorical hyperbole incapable of a demonstration of falsity").

Viceroy is not a "political, social or philosophical" commentator, *Ollman*, 750 F.2d at 987 (citation omitted), and was not "engaged in an emotional debate concerning emotionally-charged issues," *Rivera*, 292 F.3d at 702.  Instead, it holds itself out as "an investigative financial research group." Doc. 1-1, p. 7.  It published numerous statements at issue in long-form research reports and in a formal letter to MPT's auditor.  *See King*, 2023 WL 3061825, at *15 (that defendant with self-proclaimed domain expertise published statements in formal online reports "after deliberation and investigation" weighed against finding hyperbole).  Indeed, Viceroy's website characterizes the firm's work product as "[r]eports" containing "[r]esearch."  *Viceroy Research*, Viceroy Research, https://viceroyresearch.org/research/ (last visited May 5, 2023); *Publications*, Viceroy Research, https://viceroyresearch.org/publications/ (last visited May 5, 2023).  Viceroy and its agents maintain Twitter accounts on which they discuss publicly traded securities, including with other investment analysts.  In these circumstances, a reasonable reader of the statements in the Complaint could conclude from their context that Viceroy and its agents were offering the factual results of their "investigative financial research"—precisely as advertised.  Doc. 1-1, p. 7.

The statements themselves, and the "general tenor" of Viceroy's reports, reinforce that conclusion.  *Milkovich*, 497 U.S. at 21.  Falsifiable statements about the business practices and corporate governance of a publicly traded company are

distinct from the "imaginative expression[s]" that constitute hyperbole under the First Amendment. *Compare id.* at 20, *and U.S. Steel, LLC* v. *Tieco, Inc.*, 261 F.3d 1275, 1284 (11th Cir. 2001) ("What they're doing is the equivalent of Jeffrey Dahmer complaining his victims got blood on the carpet . . . ."),[2] *with* Doc. 1, ¶ 49 ("We have evidenced over $2b, net, of uncommercial cash outflows capitalized in MP[T]'s balance sheet and round tripped to MP[T] by counterparties: its tenants."), *and id.* ¶ 66 ("Steward International is an $MP[T] subsidiary.").

Finally, the Complaint plausibly alleges that third parties have understood Viceroy to be stating facts rather than "non-literal statements consisting of the sort of loose, figurative language that no reasonable person would believe presented facts." *Deeb*, 778 F. App'x at 687 (cleaned up). In March, for example, the market research firm Green Street noted "that Viceroy 'had contributed to the sell-off in MPT's share price.'" Doc. 1, ¶ 88 (alterations omitted). In the same report, Green Street, a sophisticated party with real estate and investing expertise, repeated some of Viceroy's false claims as if they were true. *See id.* This belies the notion that "no reasonable person would believe" Viceroy's statements to have "presented facts." *Rivera*, 292 F.3d at 702.

---

[2]     The *U.S. Steel* court, applying Alabama law, noted even this statement might have been actionable if offered as a "metaphor" for the plaintiff's "fraud"—rather than (as the plaintiff contended) a literal comparison to a "mass murderer." 261 F.3d at 1293-94.

## II.     VICEROY'S CLAIM OF PLEADING DEFICIENCY CONCERNING ACTUAL MALICE FAILS.

The Court should reject Viceroy's contention that the Complaint fails to adequately allege actual malice, for two independent reasons: (1) actual malice is not required, and (2) it is in any event amply alleged here.

### A.     Because MPT is not a public figure, actual malice is not an element.

First, MPT need not allege or prove actual malice to support its defamation claim.  Only "public officials" and "public figures" are required to establish actual malice, and MPT, though one of Alabama's largest publicly traded companies, is not a "public figure."  It has neither (1) "achiev[ed] such pervasive fame or notoriety that" it has become "a public figure for all purposes and in all contexts[,]" nor (2) "voluntarily inject[ed]" itself or been "drawn into a particular public controversy and thereby become[] a public figure for a limited range of issues." *Gertz* v. *Robert Welch, Inc.*, 418 U.S. 323, 351 (1974); *Comput. Aid, Inc.* v. *Hewlett-Packard Co.*, 56 F. Supp. 2d 526, 535 (E.D. Pa. 1999) (Hewlett-Packard was neither a general nor a limited-purpose public figure); *NOVAGOLD Res., Inc.* v. *J Cap. Rsch. USA LLC*, 2022 WL 900604, at *7-8 (E.D.N.Y. Mar. 28, 2022) (absent allegations that it "thrust itself into public controversy," public company not a public figure); *cf. Am. Benefit Life Ins. Co.* v. *McIntyre*, 375 So. 2d 239, 250 (Ala. 1979) (on summary judgment, public company was limited-purpose public figure where it was already "focal

point" of regulatory investigation and controversy that gave rise to alleged defamation).  At a minimum, the fact-laden question of whether MPT is a public figure and the accompanying question of actual malice are not susceptible to resolution on the pleadings.  *See LifeMD*, 607 F. Supp. 3d at 591 (whether public company was limited-purpose public figure was "difficult and fact-specific" question; actual malice issue deferred for "later stage of the litigation" (cleaned up)).

**B.      The Complaint plausibly alleges actual malice.**

Even were actual malice required, it is adequately pleaded here.  "To satisfy the actual malice standard, a public figure must establish that a defamatory statement was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'"  *King*, 2023 WL 3061825, at *15 (quoting *N.Y. Times Co.* v. *Sullivan*, 376 U.S. 254, 280 (1964)).  The question is "whether the defendant, instead of acting in good faith, actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false." *Michel*, 816 F.3d at 703.  Facts that courts have found plausibly allege actual malice include: (1) turning a blind eye to falsifying facts that could have been discovered, *see, e.g.*, *King*, 2023 WL 3061825, at *18; (2) "evidence concerning motive or care," including profit motive, *see Harte-Hanks Commc'ns, Inc.* v. *Connaughton*, 491 U.S. 657, 668 (1989); *King*, 2023 WL 3061825, at *18; *Farmland Partners*, 2020 WL 12574993, at *22; (3) "extreme statements" indicative of bad faith, *id.*; *see Michel*,

816 F.3d at 703; and (4) "former libels or slander," *Butler* v. *Town of Argo*, 871 So. 2d 1, 27 (Ala. 2003) (citation omitted).  Here, all four of these are amply alleged.

First, the Complaint plausibly alleges that Viceroy's outlandish claims are disproven by readily available evidence, including MPT's public securities filings and, in one case, Viceroy's own source:

- **Revenue round-tripping.**   Viceroy's repeated allegation of revenue round-tripping hinges on the false notion that MPT (1) overpaid for hospital properties, and (2) the overpayments flowed to tenants, who then could round-trip excess money back to MPT.  But for the transactions used to substantiate this claim, one or both premises are easily proven false.  For example, one of the sources Viceroy cites to show purported round-tripping at a Texas facility shows that MPT's payment did not flow to its tenant.  Doc. 1, ¶ 52.  For another transaction, Viceroy ignores public evidence—a third-party valuation—that MPT did not overpay for a suite of hospital properties.  *Id.* ¶ 54.  The easy accessibility of these facts (particularly for a self-styled financial research firm like Viceroy) grounds a plausible inference that Viceroy's failure to investigate or cite them—and to level a round-tripping allegation as a result—was willful.

- **Executive compensation.**  Viceroy supports its allegations of fraud and round-tripping by claiming that MPT's executive compensation program rewards executives for every acquisition MPT makes, no matter the quality of the

acquired asset.  *Id.* ¶¶ 55-57.  But in multiple public proxy statements, MPT has provided descriptions of its compensation structure that directly undercut Viceroy's claims.  *Id.* ¶ 56-57.  Viceroy's ignoring of these disclosures in making its assertions was either willful or reckless.

- **Allegations concerning Steward.**  MPT's quarterly and annual securities filings discuss MPT's loans and acquisitions.  Since the third quarter of 2020, those disclosures have included a $205 million loan to a joint venture with Steward management to purchase "the rights and existing assets related to *all* present and future international opportunities previously owned by Steward."  *Id.* ¶ 60-61 (emphasis added).  Any analyst interested in publishing the truth would consult such disclosures before claiming that MPT actually "paid $205m for 3 hospitals worth $27m in Malta," *id.* ¶ 63, and is therefore embroiled in an international corruption investigation, *id.* ¶ 65.  A truth-seeking analyst would also have consulted and addressed a public statement that MPT does not own the Malta hospitals—particularly when that statement is from the very entity claimed to be an MPT subsidiary.  *See id.* ¶ 69.  Viceroy either did none of these things or did them and proceeded with the falsehoods anyway.

These detailed allegations of deliberate indifference to truth support a strong inference of actual malice.  *See Farmland Partners*, 2020 WL 12574993, at *22 (deliberate indifference to potential truthful facts, as demonstrated by failure to give

company time to respond to inquiries, was evidence of actual malice); *cf. MiMedx*, 2018 WL 847014, at *8 ("[T]hat [the short-seller] talked to MiMedx management before making his comments shows precisely the opposite of malice—that he considered its position before stating his views . . . .").

A second fact demonstrating actual malice is that Viceroy has a strong incentive to drive down MPT's stock price through allegations of malfeasance. The "goal of [its] short-and-distort attack" is to spread defamatory information about MPT and "profit from" the resulting "sell-off of [MPT's] stock due to [its] short position." *Farmland Partners*, 2020 WL 12574993, at *22. Particularly at the motion to dismiss stage, before discovery has begun, Viceroy's plain profit motive "provide[s] some support for a finding that [it] may not have acted in good faith and acted in reckless disregard for the truth or falsity of [its] statements." *Id.*; *see Bass* v. *United Dev. Funding, L.P.*, 2019 WL 3940976, at *21 (Tex. App. Aug. 21, 2019) ("While profit motive, alone, is not sufficient to establish actual malice, it is a relevant factor to be considered together with other factors in a determination of actual malice."); *cf. Amira Nature*, ECF No. 66 at 60 (actual malice plausibly alleged where defendant "strategically timed the publication to maximize plaintiff's injury").

Next, Viceroy's claims are incredibly severe: Viceroy charges that MPT has engaged in pervasive accounting fraud, lied to investors, "orchestrat[ed]

international corporate kickback schemes, and generally run[] a sham business." Doc. 1, ¶ 84. Given the annual independent financial audits and public-market scrutiny to which MPT is subject, such accusations "are so inherently improbable that only a reckless man would have put them in circulation." *Michel*, 816 F.3d at 703 (citation omitted) (noting actual malice is inferable at pleading stage in such circumstances); *Butler*, 871 So. 2d at 27 ("Actual malice can be shown by . . . the violence of the defendant's language.") (cleaned up); *see Bass*, 2019 WL 3940976, at *21 (actual malice sufficiently alleged where defendant "employed sensationalized, attention-grabbing headlines raising the specter of a billion dollar Ponzi scheme that was about to implode").

Finally, evidence of Viceroy's past libels against another public company demonstrates its reckless disregard for the truth in this case. As summarized in the Complaint, a South African regulator ruled that Viceroy's members spread false and misleading claims about a bank pursuant to a profit-sharing agreement with a hedge fund that shorted the bank's stock. Doc. 1, ¶¶ 37-39. That Viceroy published the defamatory statements at issue here against this backdrop, likewise for profit, indicates malice. *See Butler*, 871 So. 2d at 27.

Taken together, the constellation of facts indicating that Viceroy acted not in good faith but with knowledge or reckless disregard of the falsity of its statements is powerful. MPT knows of no case—and Viceroy cites none—in which all of these

factors were pleaded and a court nonetheless dismissed a defamation claim for failure to adequately plead actual malice.

### III.   MPT'S OTHER CLAIMS SHOULD NOT BE DISMISSED.

Viceroy's only argument for dismissing Counts Two through Five—for civil conspiracy, tortious interference with contractual or business relations, private nuisance, and unjust enrichment, respectively—is that they purportedly rise and fall with the defamation claim.  Doc. 17, p. 20.  Even were that true, the actionability of the statements alleged defeats Viceroy's argument.

Moreover, Viceroy's premise is wrong.  MPT's tortious interference claim survives even if the statements constituting the interference are not actionable defamation, *see Flickinger* v. *King*, 2023 WL 3029709, at *10 (Ala. Apr. 21, 2023), as does the private nuisance claim, which likewise "is rooted" in an injury distinct from reputational harm, *see Holloway* v. *Am. Media, Inc.*, 947 F. Supp. 2d 1252, 1264 (N.D. Ala. 2013) (addressing tort of intentional infliction of emotional distress).  Finally, because the unjust enrichment claim is predicated on these torts as well as defamation, it too must stand.

### CONCLUSION

For the foregoing reasons, Viceroy's motion to dismiss under Rule 12(b)(6) should be denied.

Dated: May 5, 2023

LIGHTFOOT, FRANKLIN & WHITE LLC

OF COUNSEL:

William Savitt

Sarah K. Eddy

Nathaniel Cullerton

Adabelle U. Ekechukwu

Sijin Choi

Charles M. Melman

Kelsey A. Borenzweig

WACHTELL, LIPTON,

ROSEN & KATZ

51 West 52nd Street

New York, NY 10019

Tel.: (212) 403-1000

Corey Worcester

Jomaire A. Crawford

QUINN EMANUEL

URQUHART & SULLIVAN, LLP

51 Madison Avenue, 22nd Floor

New York, NY  10010

Tel.: (212) 849-7000

Anthony Bongiorno (*pro hac vice* to be filed)

QUINN EMANUEL

URQUHART & SULLIVAN, LLP

111 Huntington Ave, Suite 520

Boston, MA 02199

Tel.: (617) 712-7100

*/s/ Michael L. Bell*

Michael L. Bell

Wesley B. Gilchrist

Meghan S. Cole

The Clark Building

400 20th Street North

Birmingham, Alabama 35203

Tel.: (205) 581-0700

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 5, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will give notice of such filing to all counsel of record.

*/s/ Michael L. Bell*
Of Counsel