FILED

2023 May-05  PM 10:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA

---

MEDICAL PROPERTIES TRUST,
INC.,

                       Plaintiff,

        -v.-

VICEROY RESEARCH LLC;
FRASER JOHN PERRING; GABRIEL
BERNARDE; and AIDAN LAU,

                   Defendants.

Civil Action No. 2:23-cv-00408-MHH

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT VICEROY RESEARCH LLC'S MOTION TO DISMISS
<u>PURSUANT TO FED. R. CIV. P. 12(B)(2)</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................................ 1

FACTUAL BACKGROUND ............................................................................... 3

    A.    Medical Properties Trust, Inc. ................................................... 3

    B.    Viceroy Research LLC .............................................................. 3

    C.    Viceroy's short-and-distort scheme targeting MPT in Alabama .......... 3

    D.    Damage to MPT ......................................................................... 4

ARGUMENT ...................................................................................................... 5

I.    THE COURT HAS PERSONAL JURISDICTION OVER VICEROY. ......... 5

    A.    Viceroy purposefully availed itself of Alabama's laws by directing its conduct at Alabama to produce foreseeable harm in Alabama. ...................................................................... 6

            1.    Viceroy aimed its conduct at Alabama. ..................... 7

            2.    Viceroy foreseeably caused harm in Alabama. ......... 10

            3.    Viceroy's authorities are inapposite. ......................... 11

    B.    MPT's claims arise out of and relate to Viceroy's Alabama contacts. ................................................................................. 13

    C.    The Court's exercise of personal jurisdiction does not offend notions of fair play and substantial justice. ....................... 16

II.    IN THE ALTERNATIVE, THE COURT SHOULD GRANT PLAINTIFF'S MOTION FOR JURISDICTIONAL DISCOVERY. ........... 17

CONCLUSION ................................................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                    <u>Page(s)</u>

*AFC Franchising, LLC* v. *Prac. Velocity, LLC*,
    2016 WL 6024438 (N.D. Ala. Oct. 14, 2016)....................................................10

*Army Times Pub. Co.* v. *Watts*,
    730 F.2d 1398 (11th Cir. 1984)..........................................................................10

*Bond* v. *Ivy Tech State Coll.*,
    167 F. App'x 103 (11th Cir. 2006) ....................................................................14

*Bond* v. *Ivy Tech State Coll.*,
    Case No. 3:04-cv-309-J-32MMH (M.D. Fla. Dec. 2, 2004).............................14

*Burger King Corp.* v. *Rudzewicz*,
    471 U.S. 462 (1985) .............................................................................6, 8, 16

*Calder* v. *Jones*,
    465 U.S. 783 (1984) ..........................................................................................10

*Del Valle* v. *Trivago GMBH*,
    56 F.4th 1265 (11th Cir. 2022).................................................................*passim*

*Delta Health Grp., Inc.* v. *Stafford*,
    887 So. 2d 887 (Ala. 2004) ...............................................................15, 15 n.4

*Diamond Crystal Brands, Inc.* v. *Food Movers Int'l, Inc.*,
    593 F.3d 1249 (11th Cir. 2010)..........................................................................16

*Ex parte Maintenance Group Inc.*,
    261 So. 3d 337 (Ala. 2017) .........................................................................15 n.5

*Ex parte McInnis*,
    820 So. 2d 795 (Ala. 2001) ..............................................................................15

*Ex parte United Ins. Cos., Inc.*,
    936 So. 2d 1049 (Ala. 2006) ............................................................................16

*Ford Motor Co.* v. *Mont. Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021) ......................................................................................13

*J & M Assocs., Inc.* v. *Romero*,
    488 F. App'x 373 (11th Cir. 2012) ...................................................15

*Licciardello* v. *Lovelady*,
    544 F.3d 1280 (11th Cir. 2008).................................................8, 10

*Louis Vuitton Malletier, S.A.* v. *Mosseri*,
    736 F.3d 1339 (11th Cir. 2013).................................................17

*McPherson* v. *Gene Vandenham Worldwide, Inc.*,
    2018 WL 11450495 (N.D. Ala. June 4, 2018) ....................................7

*MiMedx Grp., Inc.* v. *Perring*,
    2018 WL 8582446 (M.D. Fla. June 4, 2018) ...................................17

*Perring* v. *MiMedx Grp., Inc.*,
    No. CACE-19-012805 (Fla. Cir. Ct. 2019) ......................................17

*Revell* v. *Lidov*,
    317 F.3d 467 (5th Cir. 2002).................................................11, 12

*Roche Diagnostics Corp.* v. *Priority Healthcare Corp.*,
    407 F. Supp. 3d 1216 (N.D. Ala. 2019) ..........................................11

*SkyHop Techs., Inc.* v. *Narra*,
    58 F.4th 1211 (11th Cir. 2023) .....................................................6

*Walden* v. *Fiore*,
    571 U.S. 277 (2014) ...................................................................7

*Young* v. *New Haven Advocate*,
    315 F.3d 256 (4th Cir. 2002)......................................................12

**Statutes and Rules**

Ala. R. Civ. P. 4.2(b).....................................................................5

Fed. R. Civ. P. 12(b)(2)...............................................................17

**Other Authorities**

Fraser Perring (@AIMhonesty), Twitter (Mar. 4, 2023, 2:22 AM),
    https://twitter.com/AIMhonesty/status/1631917927183138816...................9 n.2

## PRELIMINARY STATEMENT

This action arises from a coordinated campaign to defame, injure, and drive down the stock price of Medical Properties Trust, Inc. ("MPT"), one of Alabama's largest public companies.  Defendant Viceroy Research LLC ("Viceroy") and its members, Defendants Fraser John Perring, Gabriel Bernarde, and Aidan Lau, are in the business of mounting serial short-and-distort attacks against public companies for profit.  MPT is their latest target.

The playbook for these attacks is straightforward: Take a short position in a stock or partner with someone who already has one, publish false "research" critical of the target company, amplify those false claims online (including via social media), and then reap a profit—either directly, from the resulting stock price drop that the short-seller bet on and then caused, or indirectly, by collecting payments from other market players who profited on the drop.

Viceroy has employed that playbook of deceit to devastating effect against MPT.  Since January 2023, Viceroy and its members, acting in concert with their co-conspirators, have published a barrage of false and defamatory "reports" and posts concerning Alabama-based MPT, its Alabama-centered operations, and its Alabama-based employees, falsely accusing MPT of accounting fraud and promising that MPT's CEO, who lives in Alabama, would soon wind up in jail.  As part of these attacks, Viceroy intentionally targeted Alabama residents, including by

directing a defamatory letter to a partner in the Birmingham office of MPT's auditor, PricewaterhouseCoopers LLP ("PwC").

As the Complaint demonstrates, Viceroy's accusations are pure fiction. But they have had their intended and foreseeable effects: MPT's stock price dropped over 35 percent from the date of Viceroy's first report to the filing of the Complaint, MPT's credit rating has been downgraded, it has had to divert substantial resources to address unprecedented negativity from bondholders, and it has had to incur costs to retain employees and increase physical security at its Birmingham headquarters.

Despite its months-long campaign to injure an Alabama corporation for profit, Viceroy now claims it cannot be held to account in this action because Alabama courts lack personal jurisdiction. Viceroy is wrong. The sole focus of Viceroy's defamatory publications was an Alabama-based corporation and its Alabama-based operations and employees. And the sole purpose of Viceroy's short-and-distort scheme was to injure MPT, which it foreseeably did in Alabama. Viceroy's actions were more than enough to provide it with "fair warning that it may be subject to suit" in Alabama. *Del Valle* v. *Trivago GMBH*, 56 F.4th 1265, 1275 (11th Cir. 2022). Viceroy's motion to dismiss for lack of jurisdiction should be denied.

## FACTUAL BACKGROUND

### A.    Medical Properties Trust, Inc.

Plaintiff MPT is one of Alabama's largest publicly traded companies and its largest real estate investment trust.  Doc. 1, ¶ 1.  MPT is incorporated in Maryland but maintains its headquarters and principal place of business in Birmingham, Alabama, where its executives and employees primarily live and work.  *Id.* ¶¶ 10, 81.

### B.    Viceroy Research LLC

Defendant Viceroy, a Delaware limited liability company co-founded by Defendants Fraser Perring, Gabe Bernarde, and Aidan Lau, is a purported "financial research" firm that publishes negative content about public companies whose shares it has sold short.  *Id.* ¶ 11.  Perring—a self-proclaimed "Grand Poobah" of short-sellers—entered the short-and-distort game after British regulators revoked his social work license upon finding that he lied and fabricated evidence.  *Id.* ¶¶ 4, 33.

### C.    Viceroy's short-and-distort scheme targeting MPT in Alabama

On January 26, 2023, Viceroy published the first of its defamatory "reports" concerning MPT.  *Id.* ¶ 41.  The same day, Viceroy, Perring, and Bernarde used their respective Twitter accounts to promote the report and launch a vitriolic social media campaign against MPT.  *Id.* ¶ 42.  To drive home the defamatory accusations, Perring tagged his posts "#fraud," *id.*, which means that any user who searches this hashtag on Twitter will see these defamatory statements grouped together with other tweets bearing the same hashtag.  Over the ensuing weeks and months, Viceroy published

13 more defamatory reports, at regular intervals, all promoted through the same concerted campaign.  *Id.*

All along, Viceroy knew that MPT was headquartered in Alabama.  *Id.* ¶ 82. MPT discloses its principal place of business in public securities filings, including its annual Form 10-K, which Viceroy has repeatedly cited.  *Id.*  And Viceroy has admitted it knows where MPT is headquartered.  *Id.*

On February 2, 2023, Viceroy directed a letter to the Birmingham office of MPT's independent auditor, PwC, doubling down on its false claims (including allegations of round-tripping and improper executive compensation incentives) and encouraging PwC to investigate.  *Id.* ¶¶ 49, 55, 83; Doc. 1-3.  Viceroy's defamatory letter to PwC, which it posted on Twitter, was addressed to an employee of that firm who resides and works in Alabama.  Doc. 1, ¶ 83.  Further, on February 13 and 14, 2023, a co-conspirator of Viceroy traveled to Alabama for an in-person "diligence" trip concerning MPT.  *Id*.

### D.    Damage to MPT

While smearing MPT for financial gain, Defendants have, at various points, accused MPT of lying to investors, orchestrating international corporate kickback schemes, and generally running a sham business.  *Id*. ¶ 84.  Defendants have loudly and repeatedly proclaimed that MPT's executives, whom Defendants name, should be sent to prison for these purported misdeeds.  *Id.*

As alleged in the Complaint, this has caused tangible and ongoing harm to MPT.  From the date of Viceroy's first report, MPT's stock price was down over 35 percent at the time the Complaint was filed.  *Id*. ¶ 8.  Defendants' defamation campaign has interfered with MPT's business relationships: MPT's credit rating has been downgraded, it has had to divert substantial resources to address unprecedented negativity from bondholders, and a potential counterparty pulled away from a deal with MPT and its tenant, citing one of Viceroy's reports and stating publicly that "our mission and values are not aligned with Medical Properties Trust."  *Id*. ¶¶ 8, 85, 87.  Given the stressful workplace environment created by Defendants' defamation, and the online harassment of MPT's employees that began after Defendants initiated their short-and-distort campaign, MPT has also had to incur costs to retain employees and increase physical security at its Birmingham headquarters.  *Id*. ¶ 89.  The nexus of each of these harms was, and is, Alabama.

## ARGUMENT

## I.   THE COURT HAS PERSONAL JURISDICTION OVER VICEROY.

In this federal diversity case, Alabama's long-arm statute governs personal jurisdiction.  As Viceroy acknowledges, that statute—Alabama Rule of Civil Procedure 4.2(b)—extends Alabama's personal jurisdiction over out-of-state defendants to the limit of the federal constitution's Due Process Clause.  Doc. 16, pp. 3-4.  The analytical question, therefore, is "whether [Viceroy] purposefully

established 'minimum contacts' in" Alabama, *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 474 (1985) (citation omitted), such that it had "fair warning that it may be subject to suit" in Alabama. *Del Valle*, 56 F.4th at 1275.

That inquiry consists of three parts. First, a "nonresident defendant" must have "purposefully availed itself of the benefit of" the forum state's laws. *SkyHop Techs., Inc.* v. *Narra*, 58 F.4th 1211, 1228, 1230 (11th Cir. 2023). Second, "the plaintiff's claims [must] 'arise out of or relate to' one of the defendant's contacts with the forum state." *Del Valle*, 56 F.4th at 1275 (citation omitted). And finally, "the exercise of personal jurisdiction" must accord with traditional notions of "fair play and substantial justice." *Id.* (citation omitted). Despite Viceroy's attempts to trivialize defamation with a clear Alabama focal point, its conduct satisfies all three elements.

## A.  Viceroy purposefully availed itself of Alabama's laws by directing its conduct at Alabama to produce foreseeable harm in Alabama.

As the Eleventh Circuit has repeatedly held, "[a] nonresident defendant's single tortious act in the forum state" can establish purposeful availment "even if the defendant lacks any other contacts with the forum state." *SkyHop Techs.*, 58 F.4th at 1230; *see also Del Valle*, 56 F.4th at 1276. Personal jurisdiction is appropriate under this standard so long as the tort was "intentional, aimed at the forum state, and caused harm that the defendant should have anticipated would be suffered in the

forum state." *Del Valle*, 56 F.4th at 1276.[1]  Viceroy's conceded conduct here readily qualifies.

### 1.    Viceroy aimed its conduct at Alabama.

Viceroy tries to minimize its months-long defamatory campaign against an Alabama corporation by claiming that it merely posted its statements to the Internet for a "global audience."  Doc. 16, p. 1.  But as Viceroy admits, in support of its campaign, it specifically directed to an Alabama-based employee of MPT's audit firm, PwC, a letter containing multiple defamatory statements (including false allegations of round-tripping and improper executive compensation incentives) calculated to further harm MPT.  *See id.* at 5; Doc. 1, ¶¶ 49, 55, 83.  The letter was addressed to the PwC employee's Birmingham business address, and later emailed by Viceroy to that same employee.  Doc. 16, p. 5.  Viceroy thus directly "reach[ed] into Alabama" by directing its defamatory communications to a "known Alabama resident."  *McPherson* v. *Gene Vandenham Worldwide, Inc.*, 2018 WL 11450495, at *3 (N.D. Ala. June 4, 2018); *cf. Walden* v. *Fiore*, 571 U.S. 277, 289 (2014) (no personal jurisdiction in Nevada where "Petitioner never . . . contacted anyone in, or sent anything or anyone to Nevada").

---

[1]     Viceroy does not dispute that MPT's Complaint alleges intentional torts.  *See* Doc. 16, p. 6 ("*In intentional tort cases* there are two tests for determining whether purposeful availment occurred.") (emphasis added)).  Viceroy intentionally published the false and defamatory statements at the heart of this suit, and as detailed in the Complaint, did so with knowledge or reckless disregard of their falsity.

Viceroy cannot shrug off its direct outreach into the State by claiming that the letter's recipient simply "happened to be in Alabama." Doc. 16, p. 5. As Viceroy clearly knew, the intended recipient was based in Alabama providing services to MPT, an Alabama corporation. Sending a *per se* defamatory letter to an Alabama recipient was "intentional conduct . . . calculated to cause injury" to the Alabama-based subject of the letter. *Licciardello* v. *Lovelady*, 544 F.3d 1280, 1288 (11th Cir. 2008). That alone suffices to justify this Court's exercise of personal jurisdiction over Viceroy. *See Burger King*, 471 U.S. at 475 n.18 ("So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction." (citation omitted)).

Moreover, the content of Viceroy's statements—in the letter and otherwise—provides an independent basis for jurisdiction. Viceroy claims that its statements merely concerned "MPT's operations globally." Doc. 16, p. 8. But as detailed in the Complaint, Viceroy and its agents have published false and defamatory statements about supposed corporate misfeasance that purportedly occurred in Alabama, and have addressed by name the Company's Alabama-based CEO who, it asserts, is primarily responsible:

- **Executive compensation.** Viceroy falsely claims that the design of MPT's executive compensation structure "has fostered and encouraged management's trigger-happy acquisition spree" and has caused management to "consistently

scrape[] the bottom of the barrel in its search for new properties and new tenants." Doc. 1, ¶ 55.  As Viceroy knew, *see id.* ¶ 82, MPT is headquartered in Alabama— so the purported conduct of MPT's management in response to the alleged compensation incentives would have occurred in Alabama.

- **Revenue round-tripping.**  Viceroy falsely accuses MPT of manipulating revenue by engaging in "uncommercial" transactions and "overpay[ing] for fire sale assets."  *Id.* ¶ 47.  Again, the people supposedly orchestrating this scheme— MPT's executives—are primarily located in Alabama, where MPT is headquartered, *id.* ¶ 81, and would have made relevant decisions there.

- **Personal attacks on Alabama-based management.**  Viceroy agent Perring has associated the so-called "fraud" described above, and other allegations, with MPT's Alabama management.  For example, on February 28, 2023, he tweeted that "[w]hen #MPW's mgmt mouths' are moving the odds are they're lying. #Fraud."  *Id.* ¶ 71.  Perring has also addressed MPT CEO and Alabama resident Edward Aldag personally.  For example, on March 4, 2023, he tweeted that "$MPW execs won't sleep well going forward. The #CEO & #CFO of #MPW . . . need to call a press conference & resign."[2]  By that point, Perring had called Aldag out by name multiple times.  On February 13, 2023, for example, Perring

---

[2]      Fraser Perring (@AIMhonesty), Twitter (Mar. 4, 2023, 2:22 AM), https://twitter.com/AIMhonesty/status/1631917927183138816.

baselessly claimed that "#Fraud & #RoundTripping are" Aldag's "soup du jour." *Id.* ¶ 89.

These statements, and the others that underlie MPT's claims, "concern[] the [Alabama] activities of a[n] [Alabama]" company and its Alabama-based management. *Calder* v. *Jones*, 465 U.S. 783, 788 (1984); *see also Army Times Pub. Co.* v. *Watts*, 730 F.2d 1398, 1400 (11th Cir. 1984) (allegedly defamatory article focused on the Alabama activities of "the plaintiffs, all of whom are Alabama citizens"). Thus, Alabama is the "focal point" of Viceroy's defamation. *Lovelady*, 544 F.3d at 1285. Viceroy "cannot now claim surprise" at the fact that it is being held to account in an Alabama court. *Id.* at 1288.

### 2. Viceroy foreseeably caused harm in Alabama.

That Alabama is, in fact, the locus of the harm MPT has suffered further supports the Court's exercise of personal jurisdiction. Viceroy dismisses Alabama as "nothing more than the physical location for MPT's corporate offices." Doc. 16, p. 8. But a plaintiff's "state of residence" is a critical fact—particularly in a defamation suit. *See Watts*, 730 F.2d at 1400; *AFC Franchising, LLC* v. *Prac. Velocity, LLC*, 2016 WL 6024438, at *2 (N.D. Ala. Oct. 14, 2016) ("Because [plaintiff] is operating under the laws of the State of Alabama and has its principal place of business in Birmingham, Alabama, Defendants did or reasonably should have anticipated the harm [from their defamatory statements] would be felt by

[plaintiff] in Alabama."); *see also Roche Diagnostics Corp.* v. *Priority Healthcare Corp.*, 407 F. Supp. 3d 1216, 1235 (N.D. Ala. 2019) ("The effects were suffered" where plaintiff was "incorporated and has its principal place of business . . . .").

Indeed, Viceroy admits that the "harm complained of *does* concern an Alabama-based company." Doc. 16, p. 8 (emphasis added). Citing nothing, it nevertheless claims that the harms were not "concentrated in Alabama" because they "impacted the global shareholders of a global publicly traded company." *Id.* at 8-9. But Viceroy simply ignores the Complaint. As alleged, Viceroy inflicted extensive harm "concentrated" in Alabama, including by increasing MPT's cost of borrowing money, Doc. 1, ¶ 87, diverting management "resources that would otherwise have been used to advance its business," *id.*, increasing the cost of securing MPT's Birmingham headquarters, *id.* ¶ 89, and forcing MPT to pay to retain employees who work there, *id.* Viceroy addresses none of these Alabama harms, all of which support personal jurisdiction in this Court.[3]

### 3.    Viceroy's authorities are inapposite.

None of the out-of-circuit cases Viceroy cites support its attempt to avoid the obvious connections between its conduct and the State of Alabama. In *Revell* v. *Lidov*, for example, the Fifth Circuit held that out-of-state residents could not be

---

[3]    Viceroy also does not cite any authority for the proposition that the locus of a corporation's harm is wherever the corporation's shareholders are located. On that view, a public company could never situate financial injury in any particular place, since its shareholders would be dispersed throughout the United States and around the world.

sued in Texas for alleged defamation because Texas "was not the focal point" of the alleged defamatory article, which was posted to a website maintained in New York, "contain[ed] no reference to Texas," and did not "refer to the Texas activities of [the plaintiff]." 317 F.3d 467, 473 (5th Cir. 2002) (discussed at Doc. 16, pp. 7-8). Indeed, the author of the article was "unaware" that the plaintiff even "resided in Texas" at the time of publication. *Id.* at 469. None of these issue-dispositive facts support Viceroy's position here.

Likewise, in *Young* v. *New Haven Advocate* (discussed at Doc 16, p. 8), the Fourth Circuit held that a Connecticut newspaper could not be sued in Virginia because the alleged defamatory article targeted a Connecticut-specific audience with a Connecticut-specific focus on a "Connecticut prisoner transfer policy and its impact . . . back home in Connecticut." 315 F.3d 256, 263-64 (4th Cir. 2002). The Virginia-based plaintiff was a bit player in broader coverage focused on out-of-state concerns.

Here, by contrast, MPT was the *exclusive* focus of 14 defamatory Viceroy "reports," a letter to PwC, and countless follow-on posts to Twitter, that directly targeted MPT's Alabama operations and leadership team, directly targeted Alabama recipients, and directly caused harm in Alabama. Yet Viceroy claims immunity from suit in Alabama simply because it published its defamatory content on the Internet. That position has things backwards—Viceroy's authorities stand for the

unremarkable proposition that a defendant does not subject itself to suit in a particular forum merely by posting an article to a website that can be accessed in that forum.  None of those authorities support the far broader, and untenable, position that a defendant who specifically targets a particular forum gets jurisdictional immunity by virtue of Internet publication.

### B. MPT's claims arise out of and relate to Viceroy's Alabama contacts.

Personal jurisdiction over a nonresident defendant also depends on whether the plaintiff's claims "'arise out of or relate to the defendant's contacts' with the forum." *Ford Motor Co.* v. *Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) (citation omitted).  MPT's claims do; the Alabama contacts detailed above are inextricably intertwined with the alleged defamatory statements that form the bases for the claims.  While Viceroy contends that its "mere maintenance of a passive website with global reach is insufficient to confer jurisdiction," Doc. 16, pp. 4-5, "this is not a case of a nonresident defendant merely operating an interactive website that is accessible in [Alabama]." *Del Valle*, 56 F.4th at 1276.  Instead, as the Complaint sets out in detail, Viceroy intentionally targeted an Alabama corporation with a months-long defamatory campaign designed to line its own pockets at MPT's expense by affirmatively publishing numerous false and defamatory statements into Alabama about MPT's Alabama conduct.

Viceroy's reliance on *Bond* v. *Ivy Tech State Coll.*, an unpublished decision, is misplaced. *See* Doc. 16, p. 5 (citing *Bond* v. *Ivy Tech State Coll.*, 167 F. App'x 103 (11th Cir. 2006)). That case involved a dispute between an Indiana employer and its Indiana employee over an alleged breach of an agreement signed in Indiana to settle an Indiana employment litigation. *Bond*, 167 F. App'x at 104; Order at 1-3, *Bond* v. *Ivy Tech State Coll.*, Case No. 3:04-cv-309-J-32MMH (M.D. Fla. Dec. 2, 2004). The plaintiff later relocated to Florida and filed a lawsuit there. *Bond*, 167 F. App'x at 104. The bulk of the court's unpublished decision affirming dismissal for lack of personal jurisdiction held that the defendant's Florida contacts did not satisfy Florida's long-arm statute—including because the defendant's mere "mailing a limited number of student admissions packets" and "maintaining a website" were insufficient under Florida law to establish that the defendant "actually procure[d] business in Florida or solicit[ed] business through continued or sustained efforts." *Id.* at 106. None of this has any bearing on MPT's tort claims in this suit.

Viceroy also contends that "the act of writing and sending th[e] letter to PwC has no relevance to MPT's defamation claims." Doc. 16, p. 5. Not so: A claim for defamation arose when Viceroy published the false and *per se* defamatory

statements in the letter to its Alabama recipient.  *See Delta Health Grp., Inc.* v. *Stafford*, 887 So. 2d 887, 896-97 (Ala. 2004).[4]

Finally, Viceroy's co-conspirators' conduct, while by no means necessary to establish jurisdiction over Viceroy, fortifies the conclusion that jurisdiction is proper.  *See Ex parte McInnis*, 820 So. 2d 795, 806-07 (Ala. 2001) (well-pleaded conspiracy count can establish jurisdiction over defendant who did not himself take overt acts in or aimed at the forum).  Viceroy's claim that co-conspirator conduct cannot ground personal jurisdiction because "the constitutionality of the conspiracy theory of jurisdiction has been called into question" in Alabama, Doc. 16, p. 6, is just wrong.  "Alabama courts *have* adopted the conspiracy theory of personal jurisdiction."[5]  *J & M Assocs., Inc.* v. *Romero*, 488 F. App'x 373, 375 (11th Cir. 2012) (emphasis added).  Under that theory, "the plaintiff must plead with particularity 'the conspiracy as well as the overt acts within the forum taken in

---

[4]     Viceroy argues that "the source of MPT's claimed harm" from the letter is the letter's publication on Twitter.  Doc. 16, p. 5.  Under Alabama law, that additional publication constituted a separate instance of defamation and caused additional harm.  *See Delta Health*, 887 So. 2d at 895.  But the Complaint nowhere alleges that is the only harm of which MPT complains.

[5]     The case on which Viceroy relies, *Ex parte Maintenance Group Inc.*, 261 So. 3d 337 (Ala. 2017), does not hold that jurisdiction based on co-conspirators' conduct may be unconstitutional.  Rather, it states in dictum that "courts and commentators have questioned the constitutional *limits* of conspiracy jurisdiction," and declines to address those limits.  *Id.* at 348 n.2 (emphasis added).

furtherance of the conspiracy.'"  *Ex parte United Ins. Cos., Inc.*, 936 So. 2d 1049,

1055 (Ala. 2006) (citation omitted).

MPT has done both here.  The Complaint alleges that a specific firm and

agents of that firm "have parroted one another's language," amplified "each other's

messages with accompanying words of support," and have claimed that MPT

engaged in the same kinds of misconduct.  Doc. 1, ¶ 79.  The Complaint further

specifies the dates on which an individual co-conspirator affiliated with the same

firm traveled to Alabama to conduct "diligence" on MPT.  *Id.* ¶ 83.  The co-

conspirator's trip coincided with the period in which he, his firm, and Viceroy

published reinforcing defamatory falsehoods about MPT.  On this basis, too, the

Court's personal jurisdiction over Viceroy is proper.

### C.     The Court's exercise of personal jurisdiction does not offend notions of fair play and substantial justice.

It is Viceroy's burden to "make a 'compelling case'" that litigating in

Alabama would offend notions of fair play and substantial justice.  *Diamond Crystal*

*Brands, Inc.* v. *Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)

(quoting *Burger King*, 471 U.S. at 477).  It has barely even tried.

Viceroy has failed to "explain why litigating in [Alabama] would be

especially onerous, much less how any such inconvenience achieves a

'constitutional magnitude.'"  *Id.* at 1274 (quoting *Burger King*, 471 U.S. at 484).

Viceroy states only that it "has no operations in Alabama and its members are foreign

nationals." Doc. 16, p. 9. But it "has not offered any evidence of [its] finances or any other limitations on [it] to show that [it] would be burdened by having to litigate the case in [Alabama]." *Louis Vuitton Malletier, S.A.* v. *Mosseri*, 736 F.3d 1339, 1358 (11th Cir. 2013). To the contrary, Viceroy's three members have litigated multiple cases—as plaintiffs and defendants—in the state and federal courts of Florida, where Viceroy also has no operations and in which its members are equally foreign. *See MiMedx Grp., Inc.* v. *Perring*, 2018 WL 8582446 (M.D. Fla. June 4, 2018); *Perring* v. *MiMedx Grp., Inc.*, No. CACE-19-012805 (Fla. Cir. Ct. 2019).

## II. IN THE ALTERNATIVE, THE COURT SHOULD GRANT PLAINTIFF'S MOTION FOR JURISDICTIONAL DISCOVERY.

While the pleaded facts in MPT's Complaint are sufficient to make out a *prima facie* case of personal jurisdiction and defeat Viceroy's motion to dismiss, if the Court determines that it cannot resolve this jurisdictional dispute on the present record, it should allow MPT to conduct limited jurisdictional discovery, as requested in MPT's Alternative Motion for Jurisdictional Discovery filed concurrently with this opposition.

## CONCLUSION

For the foregoing reasons, Viceroy's motion to dismiss under Rule 12(b)(2) should be denied.

-17-

Dated: May 5, 2023

LIGHTFOOT, FRANKLIN & WHITE LLC

OF COUNSEL:
William Savitt
Sarah K. Eddy
Nathaniel Cullerton
Adabelle U. Ekechukwu
Sijin Choi
Charles M. Melman
Kelsey A. Borenzweig
WACHTELL, LIPTON,
ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Tel.: (212) 403-1000

Corey Worcester
Jomaire A. Crawford
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
Tel.: (212) 849-7000

Anthony Bongiorno (*pro hac vice* to be filed)
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
111 Huntington Ave, Suite 520
Boston, MA 02199
Tel.: (617) 712-7100

*/s/ Michael L. Bell*
Michael L. Bell
Wesley B. Gilchrist
Meghan S. Cole
The Clark Building
400 20th Street North
Birmingham, Alabama 35203
Tel.: (205) 581-0700

*Attorneys for Plaintiff*

-18-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 5, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will give notice of such filing to all counsel of record.

*/s/ Michael L. Bell*
Of Counsel