IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MEDICAL PROPERTIES TRUST, INC., <br><br> Plaintiff, <br><br> v. <br><br> VICEROY RESEARCH LLC, *et al.,* <br><br> Defendants. | Case No. 2:23-cv-00408-RDP |

**DEFENDANT VICEROY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM**

**A.     MPT Has Failed to Plausibly Allege Actual Malice.**

   **1.     MPT Is a Public Figure as a Matter of Law.**

Despite being a billion-plus dollar publicly traded company suing for statements critical of MPT's publicly disclosed financial statements, financial reports, and share price, MPT claims it is not a public figure for the purposes of this case. This is clearly incorrect.

  Determining "whether an individual is a public figure—and thus subject to the actual malice standard—is a question of law for the court to decide." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (2016) (affirming the district court's finding that plaintiff was a public figure as a matter of law at the pleadings stage).

Courts have consistently held that where, as here, a publicly traded company sues publishers of negative reports about that company's financial outlook, the company is a public figure and the actual malice standards applies.

In *Reliance Insurance Company v. Barron's,* 442 F. Supp. 1341 (S.D.N.Y. 1977), for example, a publicly traded company sued Barron's, a prominent financial magazine, after Barron's published a negative article about the plaintiff's public offering, accusing the company of "creative accounting," engaging in certain improprieties, exercising bad business judgment, and breaching fiduciary duties. *Id.* at 1344-45. The court held the company was a public figure and applied the actual malice standard:

> We find that Plaintiff is indeed a public figure. It is a large corporation with more than a billion in assets…. In addition, [the defendant] was, at the time of the deal, offering to sell its stock to the public, thereby voluntarily thrusting itself into the public arena, at least as to all issues affecting the proposed stock sale.

*Id.*

Likewise, in *MiMedx Group, Inc. v. Sparrow Fund Mgmt. LP*, 2018 WL 4735714, (S.D.N.Y. 2018), a publicly traded corporation sued a publisher of a research report expressing negative views about the financial outlook of the company. *Id.* at *1. Relying on *Reliance Insurance*, the court held that the publicly traded corporation was a public figure for the purposes of the dispute and was required to plausibly allege actual malice. *Id.* at *8 n.5

Similarly, in *Farmland Partners, Inc. v. Rota Fortunae*, 2020 WL 12574993 (D. Colo. 2022), a case cited by MPT, a publicly traded REIT sued the defendant for publishing an article containing negative statements about the company in an alleged "short and distort" scheme. *Id.* at 1-2. Relying on *Reliance* and *MiMedx,* the court held that the plaintiff REIT was a public figure, and thus subject to the actual malice standard, "because [the plaintiff's] stock is publicly traded on the stock exchange." *Id.*

This law is in accord with federal and state courts in Alabama, which have held that even non-publicly traded corporations are public figures where they voluntarily submit themselves to public regulation. *American Benefit Life Ins. Co. v. McIntyre,* 375 So. 2d 239, 242 (Ala. 1979) (holding that an insurance company is a public figure as a matter of law because it "cannot be successfully argued that a corporation whose dealings are subject to close regulation by our state government, and, indeed, whose very existence as an entity is owing to that government, does not invite attention and comment from the news media"); *Green Group Holdings, LLC v. Schaeffer*, 2016 WL 6023841, at *16-17 (S.D. Ala. 2016) (relying on *McIntyre* and holding that a landfill company was a public figure because "landfills and other waste disposal sites are subject to heavy government regulation and have long attracted public controversy").

Applying this law, MPT is a public figure. As MPT boasts in its Complaint: "With investments in 444 facilities—427 of which are leased to 55 tenants—and revenues exceeding $1.5 billion in 2022, MPT is one of the largest REITs in the healthcare sector, and among the largest publicly traded companies in Alabama, where the majority of its employees are based." Compl. ¶ 27. As a publicly traded company, MPT is heavily regulated by multiple government bodies, including the SEC, which require MPT to make multiple financial disclosures, including disclosures of its audited financial statements. *Id.* ¶¶ 28, 56.

By publishing its financial reports, MPT has necessarily invited public scrutiny and commentary about those reports and the facts underlying them, including whether its tenants are creditworthy, whether its accounting practices are sound, and whether it is taking efforts to financially bolster or stabilize tenants on the brink of financial ruin to create a false or misleading appearance of strong rent income streams. These are, of course, the very subjects of Defendant Viceroy's reports, and, thus, MPT is, for the purposes of its defamation claims, a public figure.

The two cases MPT cites in its favor on this issue—*Computer Aid, Inc.* v. *Hewlett-Packard Co.*, 56 F. Supp. 2d 526, 535 (E.D. Pa. 1999) and *NOVAGOLD Res., Inc.* v. *J Cap. Rsch. USA LLC*, 2022 WL 900604, at *7-8 (E.D.N.Y. 2022)—are inapposite because none of those cases dealt with alleged defamatory

4

statements that criticized the accuracy of a publicly traded company's financial statements.

And it is obvious why public figure status must be conferred on publicly traded companies in the context of commentary about their financial statements, financial outlooks, and share prices. As already discussed in our opening brief, the very purpose of the actual malice standard is to give the publishers the "breathing space" necessary to ensure robust reporting on matters of public concern. *Michel*, 816 F.3d at 702. The public relies heavily on a publicly traded company's financial disclosures in making its decisions about whether to purchase or sell the stock, and the media provides a strong check against unscrupulous companies publishing falsehoods that benefit their insiders at the expense of the shareholders. This is the very reason the protection of the actual malice standard exists.

For these reasons, MPT is a public figure and must plausibly allege actual malice.

### 2. MPT Has Not Plausibly Alleged Actual Malice.

Notably absent from MPT's brief is any discussion regarding the Eleventh Circuit's high bar required to plausibly allege the standard of actual malice, which is that Viceroy "actually entertained serious doubts as to the veracity of the published accounts or was highly aware that the account was probably false." *Id.* at 703.

Instead, it relies on allegations that the Eleventh Circuit has expressly rejected as a sufficient basis for actual malice. For example, it claims that Viceroy's profit motive in taking short positions on MPT's stock is sufficient to show actual malice. But the Eleventh Circuit has held otherwise: "[I]ll-will, improper motive, or personal animosity play no role in determining whether a defendant acted with actual malice." *Dunn v. Air Line Pilots Assoc.*, 193 F.3d 1185, 1198 (11th Cir. 1999).

And what MPT fails to address is the fact that Viceroy ***disclosed its financial interest in the decline of MPT's stock upfront in every single report it published***. *See* Def.'s Op. Br. (ECF No. 17), pp. 3-4. Thus, Viceroy made every single statement that MPT complains about with full disclosure of its financial interests, and with a warning that the statements were only Viceroy's opinions. This supports a finding of good faith, not actual malice. None of the out-of-circuit cases to which MPT cites involved facts in which the defendant disclosed its financial interests upfront and candidly as Viceroy did here.

MPT further grasps for facts supporting actual malice through what it calls irresponsible reporting by Viceroy, claiming, for example, that Viceroy ignored facts in MPT's financial disclosures, and arguing that "[a]ny analyst interested in publishing the truth would consult such disclosures before" publishing what Viceroy published. Pl.'s Br. (ECF No. 33), at pp. 21-23. But, again, the Eleventh

6

Circuit has rejected these allegations as insufficient to support a claim of actual malice. *Michel*, 816 F.3d at 703 (holding that actual malice "requires more than a departure from reasonable journalistic standards," and that a "failure to investigate, standing on its own, does not indicate the presence of actual malice").

Further, all evidence that MPT claims Viceroy failed to consider can be readily found in MPT's public disclosures. And, as discussed in our opening brief, the Viceroy reports cite to these very public disclosures in support of its opinions, and encourages its readers to review them for themselves. Again, this is evidence of good faith, not actual malice.

Finally, having no other evidence, MPT—in an act of desperation—cites to an unrelated regulatory action taken by a certain regulatory authority in South Africa against Viceroy involving different publications related to a totally separate company. Aside from being unrelated and irrelevant to any of the reports issued here, while the South African regulator found those Viceroy reports contained certain false and misleading statements, the regulator did not find they were ***knowingly*** false. Compl. ¶¶ 37-40. And, in any event, MPT admits that this action was overturned for lack of jurisdiction, and thus it is of no legal significance. Compl. ¶ 40.

The South African regulatory action, which Viceroy prevailed in, is a distraction, and the fact that MPT's *army* of New York City lawyers felt compelled to rely on it, exposes how *weak* MPT's case for actual malice is.

**B.     MPT Has Failed to Show Viceroy's Statements Are Anything Other Than Non-Actionable Statements of Opinion.**

MPT has cited to no relevant authority finding actionable statements of fact where, as here, a defendant: (1) fully disclosed its financial interest in its publication; (2) fully and prominently informed its readers that it was expressing opinions only; and (3) supported all its statements with detailed citations to publicly available documents, which it encouraged its readers to independently review for themselves. None exists.

Instead, it makes misleading statements, arguing that cases like *MiMedx Grp., Inc.* v. *Sparrow Fund Mgmt. LP*, 2018 WL 847014 (S.D.N.Y. 2018)—which fully supports Viceroy's case for dismissal—applied New York law, when, in fact, they applied authority interpreting the First Amendment of the United States Constitution. Viceroy stands on its opening brief and the authority cited therein, which compels the conclusion that Vicreoy's alleged defamatory statements are non-actionable statements of opinion.

Respectfully submitted this 12th day of May, 2023.
Respectfully submitted this 12th day of May, 2023.

/s/ *Richard M. Elias*

ELIAS LLC
Richard M. Elias (pro hac vice)
231 S. Bemiston, Suite 800
St. Louis, MO 63105
314-391-6824
relias@eliasllc.com
tfriedman@eliasllc.com

/s/ *J. Ken Thompson*
J. KEN THOMPSON (ASB-1422-P67J)
Attorney for Defendant, Viceroy Research, LLC

J. Ken Thompson
Attorney at Law
P.O. Box 43116
Birmingham, Alabama 35243
205-601-5624
kent@jkenthompsonlaw.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that I electronically filed I hereby certify that I electronically filed a true and correct copy of the foregoing, using the Court's CM/ECF system, which will automatically send email notification of said filing to all counsel of record.

                                  */s/ Richard M. Elias*
                                  Richard M. Elias