IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MEDICAL PROPERTIES TRUST, INC., <br><br> Plaintiff, <br><br> v. <br><br> VICEROY RESEARCH LLC, *et al.,* <br><br> Defendants. | Case No. 2:23-cv-00408-RDP |

**DEFENDANTS BERNARDE'S AND LAU'S MOTION TO DISMISS UNDER RULES 12(b)(2) AND 12(b)(6) AND SUPPORTING MEMORANDUM**

Defendants Gabriel Bernarde and Aidan Lau hereby move to dismiss Plaintiff Medical Properties Trust, Inc.'s ("MPT") Complaint under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

**Motion to Dismiss Under Rule 12(b)(2)**

In support of the motion to dismiss under Rule 12(b)(2), Bernarde and Lau hereby incorporate in full all arguments presented in Defendant Viceroy Research LLC's 12(b)(2) motion and briefing (Doc. ## 16 and 40). The arguments and authority cited therein apply equally to Bernarde and Lau.

As set forth in the attached declarations, Bernarde is a citizen and domiciliary of Australia, and Lau is a citizen of Australia and a citizen and resident of France. Ex. A, Bernarde Decl. ¶ 1; Ex. B, Lau Decl. ¶1. They do not own or lease any property in Alabama and have no assets in Alabama. Ex. A, ¶¶ 3-4; Ex. B, ¶¶ 3-4. To the best of their knowledge, they have never been to Alabama, and have never been to Alabama in relation to any of the work they do for

Viceroy. Ex. A, ¶ 5; Ex B, ¶ 5. They did not make any phone calls, send any letters, or send any emails or other electronic communications to anyone in Alabama related to Viceroy's investigation of MPT or Viceroy's publications about MPT. Ex. A, ¶6; Ex. B, ¶ 6. None of the alleged defamatory statements that MPT complains about were published by Viceroy, Bernarde, Lau, or anyone else in Alabama. Ex. A, ¶ 7; Ex. B, ¶ 7. Rather, all the alleged defamatory statements were published on the internet, addressing a global audience. *Id.*

Like Viceroy, Bernarde and Lau lack any contacts with Alabama, and for the reasons stated in Viceroy's motion to dismiss for lack of personal jurisdiction and supporting briefing (Doc. ## 16 and 40), this Court lacks personal jurisdiction over them, as well.

Defendants recognize that the Court denied Viceroy's motion, but respectfully request that the Court reconsider its ruling. In denying the motion, the Court overlooked not only substantial circuit authority, but its own precedent rejecting the sweeping application of the "effects test" outlined in *Calder v. Jones,* 465 U.S. 783, 789-90 (1984) that it applied here.

This Court recently found no jurisdiction in a case strikingly similar to this one. *See Southwestern Athletic Conference v. Urban Edge Network, LLC*, 2022 WL 17721584 (N.D. Ala. 2022) (hereinafter referred to as "*SWAC*"). In *SWAC,* an intercollegiate athletic conference, which was *headquartered* in Alabama, sued the defendants for, among other things, *defamation* and *tortious interreference*, alleging that the defendants falsely told third parties that they had the rights to broadcast conference games and sell media rights to those games. *Id.* at *1.

The Court found that it lacked jurisdiction because there were no allegations that the defendants specifically targeted an Alabama audience with respect to the alleged false statements. *Id.* at *4. The Court held that the plaintiff's reliance on the *Calder* test was "misplaced":

2

> Plaintiff argues that Defendants' conduct was in fact aimed directly at Alabama because they knew that the member institutions they contacted were members of the SWAC, which is headquartered in Alabama…. But Plaintiff has not explained why this constitutes tortious conduct directly aimed at Alabama. Unlike in *Calder,* Alabama cannot be said to be the "focal point" of Defendants' conduct. Defendants are not residents of Alabama. Plaintiff does not allege that any of the referenced third parties contacted by Defendants are located in Alabama. Nor does Plaintiff suggest that the allegedly improper communications took place when any relevant party to those communications was in Alabama.

*Id.* at 5.

In so holding, the Court correctly refused to adopt the expansive interpretation of *Calder* that MPT advocates here because such an interpretation would swallow the constitutional protections that the Due Process Clause affords:

> Plaintiff suggests that because it is a resident of Alabama, Alabama is a suitable venue to remedy any action taken that harms it, regardless of whether a defendant has otherwise established minimum contacts. ***This is an untenable framework that would, in practice, license plaintiffs to hail any defendant into any courthouse of the plaintiff's choosing***. The Court in *Calder* established a test based on a defendant's contacts. The court rejects Plaintiff's attempts to reframe the test as one based on a plaintiff's contacts. Because Defendants did not directly aim their allegedly tortious conduct at Alabama, minimum contacts with the forum state cannot be used using the *Calder* effects test and personal jurisdiction cannot be exercised over them.

*Id.* (emphasis added).

*SWAC* is, of course, completely consistent with the significant circuit authority discussed in our prior briefing, which found no jurisdiction in defamation suits, even where the defendant **knew** that the plaintiff resided in the forum state, where the defendant did not specifically target an audience in the forum. *See Revell v. Lidov,* 317 F.3d 467, 473-76 (5th Cir. 2002); *Remick v. Manfredy*, 238 F.3d 248, 257-59 (3rd Cir. 2001); *Young v. New Haven Advocate*, 315 F.3d 256, 258 (4th Cir. 2002).[1]

---

[1] It is also consistent with the primary case the Court relied on in denying Viceroy's 12(b)(2) motion, *Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008). *Licciardello* was not a defamation case where a defendant targeted a global audience in a publication that made statements about plaintiff who lived in Alabama. Rather, it was a case where a

3

Applying *SWAC* and the other authority cited above, there is no jurisdiction here. As in *SWAC*, there is no evidence that the Viceroy publications were directed to Alabama or targeted an Alabama audience. To the contrary, the publications targeted a worldwide audience exclusively through the worldwide web.

And, as already discussed, the alleged harm suffered is not even exclusive or specific to Alabama. Sure, MPT is headquartered in Alabama. But the harm complained of is to MPT's stock, traded on the *New York* Stock Exchange, affecting shareholders across the world. Further, the publications are focused on MPT's operations in other states and countries, including Texas, Utah, and Malta—not Alabama. Thus, "Alabama cannot be said to be the 'focal point' of Defendants' conduct." *SWAC*, 2022 WL 17721584, at *4.

Further, the single letter that Viceroy sent to one of MPT's independent auditors, who—fortuitously—happened to be in Alabama, does not change the analysis. MPT does not allege in its Complaint that it was damaged by the sending of this letter vis-à-vis its auditor. To the contrary, MPT specifically alleges *two and only two* sources of publication through which the alleged defamatory statements were made: (1) Viceroyresearch.org, and (2) Twitter. *See* Compl. ¶ 94 ("Defendants published the Libelous Statements to third parties. *Such publication occurred on Twitter and Viceroy's website, viceroyresearch.org*.") (emphasis added). Thus, Viceroy's act of sending this single letter to Alabama (as opposed to the act of publishing it on Twitter and Viceroyresearch.org) is not a relevant contact in the jurisdictional analysis, and certainly does not establish Alabama as the "focal point" of Defendants' conduct.

---

defendant intentionally misappropriated and capitalized on a trademarked name and photograph of a person who resided in the forum state.

Finally, Defendants respectfully request that the Court reconsider its holding that jurisdiction is appropriate under the conspiracy theory of jurisdiction. MPT has failed to plausibly allege a conspiracy. It does not identify who the co-conspirators are, when and how the conspiracy was formed, or the object of the conspiracy. MPT's conspiracy allegations are very type of "naked assertion[s]" that courts are required to disregard. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007).

For these reasons, the Court lacks personal jurisdiction over the Defendants.

## Motion to Dismiss Under Rule 12(b)(6)

In support of their motion to dismiss under Rule 12(b)(6), Defendants Bernarde and Lau also incorporate by reference Viceroy's briefing in support of its 12(b)(6) motion (Doc. ## 17 and 39). Those arguments and cited authority apply equally to MPT's claims against Aidan and Lau, and for the reasons stated in Viceroy's briefing, the Complaint should be dismissed against them as well. While Defendants recognize that the Court denied the motion, Defendants again request that that the Court reconsider its rulings, as the Court did not address key facts and controlling law.

*First*, the Court did not address the substantial Eleventh Circuit and Alabama authority holding that a published report that states conclusions based on disclosed facts "is not the stuff of libel." *Turner v. Wells*, 879 F.3d 1254, 1264-65 (11th Cir. 2018). As this Court has held:

> Alabama… recognize[s] the principle that a statement is not actionable for defamation if it is merely an expression of an opinion based upon disclosed, nondefamatory facts…. That is, one cannot recover in a defamation action because another's statement of opinion—regardless of how derogatory the statement may be—so long as nondefamatory facts upon which the opinion is based are either disclosed or assumed…. This is so because the recipient of the information is free to accept or reject the opinion, based on his or her independent evaluation of the disclosed nondefamatory facts.

5

*Reed v. Women's Army Corps Veterans Assoc.*, 2008 WL 11422484, at *4 (N.D. Ala. 2008) (citing, among other authorities, *Sanders v. Smitherman*, 776 So. 2d 68, 74 (Ala. 2000)) (internal quotations omitted).

This is especially the case where, as here, the published report expressly states that the conclusions therein are the opinions of the authors. *Turner*, 879 F.3d at 1264-65 (no defamation where report stated that the conclusions therein were the opinions of the authors); *see also Borislow v. Canaccord Genuity Group, Inc., 2014* WL 12580259, at *2-3 (S.D. Fla. 2014) (holding that similar disclaimers in a negative analytical report of q company and CEO were nonactionable, citing multiple other courts reaching the same conclusion based on similar disclosures); *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs. ,Inc.*, 988 F. Supp. 1341, 1345 (D. Colo. 1997) (dismissing defamation claim where statements in investment article were accompanied by a disclosure that "explicitly state[d] that the accuracy and completeness of the information contained therein is not guaranteed," and that the ratings it provided were opinions).

The reports in this case, as already briefed, express opinions based on disclosed, publicly available facts that are cited throughout the reports, with robust disclaimers clarifying that the conclusions are nothing more than the authors' opinions, and that the reader should do his or her own research before forming any conclusions. MPT does not allege or argue that the supporting evidence cited is fabricated or inaccurate—because it is not. Thus, the reports "are not the stuff of libel." *Turner*, 879 F.3d at 1265.

In denying Viceroy's motion to dismiss, the Court asked the binary question of whether the statements of which MPT complains are capable of being proven true or false. Defendants respectfully submit that the analysis is not that simple. As the Eleventh Circuit has admonished:

6

"Whether the statement is one of fact or opinion and whether a statement of fact is susceptible to defamatory interpretation are questions of law for the court…. ***When making this assessment, a court should construe the statements in their totality, with attention given to any cautionary terms used by the publisher in qualifying the statement***." *Turner,* 879 F.3d at 1263 (emphasis added).

Thus, it is not enough simply to ask the question whether the challenged statement can be proven as true or false. The Court must consider the totality of the circumstances in which these statements were made, which includes the totality of the reports. Each of the reports contains robust cautionary disclaimers that the conclusions therein were opinions only. The reports further provide detailed citations to publicly available documents supporting their conclusions so that the readers can do their own research and make up their own minds, as the reports encourage them to do. Under established Eleventh Circuit and Alabama precedent, these are unactionable statements of opinion as a matter of law.[2]

*Second*, Defendants respectfully request that the Court determine whether the actual malice standard applies now, as the Court has all the information it needs to decide this critical issue. Determining "whether an individual is a public figure—and thus subject to the actual malice analysis—is a question of law for the court do decide." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 695 (11th Cir. 2016). The actual malice standard is governed by *federal* constitutional law, not state law. *Id.* (citing *N.Y. Times v. Sullivan* 376 U.S. 254, 280 (1964)).

---

[2] And, respectfully, the alleged defamatory statements are not susceptible to the binary true or false test either. For example, while the reports accuse MPT of "round tripping," they clarify MPT accomplished this round tripping through "uncommercial" transactions consisting of unsound loans and equity investments in its financially distressed tenants, which allowed them to pay rent to MPT. *See* Compl., Ex. 1, Part 1 (Doc. # 1-1) at p. 5. MPT does not dispute that it makes loans to its tenants. Whether this transaction is "commercial" or "uncommercial" is a matter of opinion, and not capable of being proved true or false.

And, as the Eleventh Circuit has held, it is a matter that needs to be addressed at the *threshold* of the case, lest the constitutional protections that the actual malice standard was designed to protect be effectively lost:

> Forcing publishers to defend inappropriate suits through expensive discovery proceedings in all cases would constrict [the constitutional] breathing space in exactly the manner the actual malice standard was intended to prevent. The costs and efforts required to defend a lawsuit through that stage of litigation could chill free speech nearly as effectively as the absence of the actual malice standard altogether.

*Id.* at 702.

As already discussed, MPT is, at a minimum, a limited purpose public figure for the purposes of this dispute. MPT is large publicly traded corporation, governed by the SEC, that makes regular financial disclosures so that its shareholders and potential shareholders can make decisions about whether and how to invest in MPT's stock. MPT's financial strength is regularly reported on by the media, including media giants like the Wall Street Journal.[3] Clearly, the accuracy of MPT's financial disclosures is a matter of public concern. And the challenged statements here are statements that challenge the accuracy of the MPT's financial disclosures. Thus, for the purposes of this dispute, MPT is, at a minimum, a limited purpose public figure, and the actual malice standard applies.

To hold otherwise would be a dark day for the journalistic protections afforded by the First Amendment. It would mean that every time the Wall Street Journal, Barron's, Bloomberg, Fox News, CNN, MSNBC, or any other media outlet writes negative articles on a publicly traded

---

[3] *See, e.g., "*Big Hospital Property Owner Expects Earnings Hit" dated April 7, 2023, available at https://www.wsj.com/articles/big-hospital-property-owner-expects-earnings-hit-651a6817?page=1; "Hospital Tenants of Medical Properties Trust Hire Advisers for Refinancings," dated May 12, 2023, available at https://www.wsj.com/articles/hospital-tenants-of-medical-properties-trust-hire-advisers-for-refinancings-177657d5?page=1.

8

company's financial outlook—*which they do every single day*—they can be hailed into court and forced to defend a defamation lawsuit on a mere negligence standard. This is untenable and precisely what the actual malice standards protects against.

Therefore, the time to rule on whether the actual malice standard applies is now. There is nothing in discovery that is going to change the fact that MPT is a publicly traded corporation and that the statements at issue challenge the accuracy of MPT's financial disclosures. The actual malice standard clearly applies to MPT for the purposes of this dispute.

As already briefed, MPT has not and cannot plausibly allege that Defendants acted with actual malice. They have not and cannot plausibly allege that Defendants subjectively believed that their statements were false when made. As already briefed, allegations about financial motives or failures in journalistic diligence are insufficient to plausibly allege actual malice. And, as already briefed, the robust disclosures of Defendants' financial motives, the sources of their information, and the fact that they were only offering opinions, defeat any claim of actual malice as a matter of law. Thus, the Complaint must be dismissed in its entirety.

## Conclusion

For these reasons, Defendants Bernarde and Lau respectfully request that the Court dismiss MPT's Complaint in its entirety and tax costs to MPT in this action.

Respectfully submitted this 12th day of July, 2023.

| | |
|---|---|
| /s/ Richard M. Elias: | */s/ J. Ken Thompson* |
| | J. KEN THOMPSON (ASB-1422-P67J) |
| ELIAS LLC | Attorney for Defendant, Viceroy Research, LLC |
| Richard M. Elias (pro hac vice) | |
| 231 S. Bemiston, Suite 800 | |
| St. Louis, MO 63105 | J. Ken Thompson |
| 314-391-6824 | Attorney at Law |
| relias@eliasllc.com | P.O. Box 43116 |
| tfriedman@eliasllc.com | Birmingham, Alabama 35243 |
| | 205-601-5624 |
| | kent@jkenthompsonlaw.com |

## **CERTIFICATE OF SERVICE**

      I hereby certify that I electronically filed a true and correct copy of the foregoing, using the Court's CM/ECF system, which will automatically send email notification to all counsel of record.

                                        */s/ Richard M. Elias*
                                          Richard M. Elias