UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **MEDICAL PROPERTIES TRUST, INC.,** | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | Case No.: 2:23-cv-00408-RDP |
| | } | |
| **VICEROY RESEARCH, et al.,** | } | |
| | } | |
| Defendants. | } | |

**STIPULATED ORDER FOR DISCOVERY AND PRODUCTION OF
ELECTRONICALLY STORED INFORMATION ("ESI") AND OTHER DOCUMENTS**

IT IS HEREBY STIPULATED AND AGREED, by and among the parties hereto (the "Parties"), through their undersigned counsel, that the following provisions of this Stipulated Order for Discovery and Production of Electronically Stored Information ("ESI") and Other Documents (the "ESI Order") shall govern discovery in the above-referenced action (the "Action").

**1. COOPERATION**

The Parties are familiar with Federal Rules of Civil Procedure governing discovery, and they are aware of the corresponding importance the Court places on cooperation. The Parties commit to cooperate in good faith throughout the matter consistent with the Federal Rules of Civil Procedure and any other applicable orders and rules. To the extent a Party is unable to reasonably comply with any technical requirements contained in this ESI Order with respect to specific documents or ESI, the Parties will meet and confer in good faith to attempt to agree on an acceptable format for production pursuant to Fed. R. Civ. P. 34(b)(2)(E).

## 2. PRESERVATION

The Parties agree to preserve ESI and other documents in accordance with the duties imposed by applicable law.

## 3. COLLECTION, SEARCH, AND REVIEW

The Parties agree to meet and confer concerning the scope of collection, including custodians and appropriate date ranges, and search methodologies, including without limitation, the use of keyword search terms and/or the use of technology assisted review ("TAR"). The Parties expect to employ one or more search methodologies in order to reduce discovery burdens, including possibly, but without limitation, the use of search terms, predictive coding, statistical-based sampling, and other advanced search and retrieval technologies to identify potentially relevant ESI, including email. All meet and confer sessions regarding search methodologies will give appropriate consideration to proportionality and the producing Party's ability to best evaluate and determine appropriate procedures, methodologies, and technologies for preserving, collecting, and producing ESI and other documents. The Parties agree that search terms, custodians, data sources and/or date ranges may need to be adjusted or supplemented as discovery proceeds. The Parties will meet and confer in a timely fashion regarding any additional search terms, custodians, data sources and/or date ranges.

## 4. PROCESSING

<u>De-duplication.</u> The Parties may perform de-duplication of ESI within and across custodians according to MD5 or SHA-1 hash values and produce only a single copy of identical ESI. De-duplication shall not break up document families. The producing entity shall not withhold an attachment as duplicative if the full family is not duplicative of another full family. All custodians of a de-duplicated document must be identified in the CUSTODIANS metadata field

listed in paragraph 5.  If the Parties de-duplicate ESI, they shall provide custodian associations in a semi-colon delimited field that includes duplicate custodian name information for the duplicate custodians.  No later than the substantial completion of document production, the Parties will provide an overlay data file if needed to account for updated duplicate custodian information in the CUSTODIANS field.

Email Thread Identification.  Parties may employ commercially available thread identification software to identify and suppress non-inclusive emails within the review population.

Inclusive emails are (a) emails for which no other emails within the email population contain the entirety of the text, or (b) emails which have a value in the BCC field (whether or not the text of that email is fully included in another email in the email population), or (c) emails which have attachments and no other email within the email population has both the entirety of the text and the attachment.

Non-inclusive emails are (a) emails whose text is fully included in another email within the email population, or (b) emails with attachments whose text is fully included in another email within the email population and that other email also has the identical attachment.

Email thread group is a numerical value defined and assigned by the email thread identification software where each related email (whether inclusive or non-inclusive) is assigned the same value in this field.

Should a Party employ email thread identification to suppress emails from review and production in this matter, that Party will disclose its intent to the receiving Party, and the Parties will meet and confer prior to the commencement of such Party's review.

Time Zone.  When processing ESI, the Parties agree to use Coordinated Universal Time (UTC) as the time zone.

<u>Family Relationships</u>. Parent-Child Relationships (*i.e.*, the association between an attachment and the document to which it is attached) that have been maintained in the ordinary course of business shall be preserved at processing and production, such that the attachments appear in order behind the conveying document. A non-responsive attachment within an otherwise produced family shall be represented in the production by a single page slipsheet indicating the attachment is non-responsive and appearing in order behind the conveying email. The Parties will provide a Beginning Family Bates Number and Ending Family Bates Number for each produced document in the data load file.

<u>Paper Document Unitization</u>. In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be merged into multiple records (*i.e.*, paper documents should be logically unitized). The Parties will use reasonable efforts to have their vendors unitize documents correctly and will commit to address situations where there are improperly unitized documents.

## 5. **PRODUCTION FORMAT FOR ESI**

The Parties agree to produce electronic documents in accordance with this ESI Order and in the following format(s) and manner:

Responsive documents shall generally be produced in image format, with searchable text load files that are compatible with standard litigation support software, including Relativity, Concordance, and IPRO. The images shall be black and white, single-page, 300 DPI, Group IV .tiff images. Each .tiff image should be assigned a Bates number that is unique and maintains a constant length across the entire document production *(i.e.*, padded to the same number of characters). Color copies of images may be provided upon request as .jpg files where relevant to

understanding the document; the fulfillment of such requests for specific documents will not be unreasonably withheld.

Images for documents created with office or personal productivity software (*e.g.*, wordprocessing documents, spreadsheets, presentations, databases, charts, and graphs) shall include tracked changes, comments, hidden rows, columns or worksheets, speakers notes, and any other similar content that can be made visible within the application ("Hidden Data"). Upon request by the receiving Party, the producing Party must produce a native copy of any non-privileged document containing Hidden Data.

The load file shall include, for each document, the metadata fields section listed in paragraph 5 with a header row describing each field. For any documents that have been globally de-duplicated, the CUSTODIANS field shall reflect all custodians who had a copy of the document during processing and before de-duplication. For each individual document based on an electronic file, the load file shall, unless such document contains redactions, contain the path to the corresponding text that is extracted from the electronic file. Documents produced in redacted form shall contain text generated by optical character recognition (OCR) of the redacted image(s).

The Parties agree that ESI shall be produced as TIFFs with accompanying load file except that certain documents will be produced in native format, specifically:

- Spreadsheet formatted document files (*e.g.*, Microsoft Excel files)
- Presentation formatted document files (*e.g.*, PowerPoint files)
- Multimedia audio or visual files such as voice and video recordings (*e.g.*, .wav and .mpeg)

For each produced native file, the producing Party will provide a static image slipsheet indicating that the document was produced in native format and providing the unique Bates

number and confidentiality designation for the corresponding native file. Any confidentiality designation will also be provided in the corresponding load file. If a document that otherwise would be produced in native format requires redaction, and if it is not practicable for the producing Party to redact a native format version of the document (with redactions clearly noted), such document may be produced in TIFF format in accordance with this ESI Order. The right to demand production of any other responsive documents in their native format (including all metadata) is expressly reserved.

Production of Databases and Other Structured Data. Generally, relevant ESI stored in databases should be produced in a mutually agreeable data exchange format.

The Parties will meet and confer to address the production and production format of any responsive data contained in a database or other structured data source. If ESI in commercial or proprietary database format can be produced in an already existing and reasonably available report form, the Parties will produce the information in such a report form, in the reasonably usable TIFF-image format. If an existing report form is not reasonably available, the Parties will meet and confer to attempt to identify a mutually agreeable form of production.

Nothing herein shall obligate a producing entity to custom reporting. The Parties shall meet and confer to discuss the associated cost and proportionality of any custom reporting.

Metadata Fields. Parties will include the following metadata fields or their substantial equivalent:

- PRODBEG
- PRODEND
- PRODBEGATTACH
- PRODENDATTACH

- EMAILSENT_DATE/TIME (MM/DD/YYYY HH:MM)
- EMAILRECEIVED_DATE/TIME (MM/DD/YYYY HH:MM)
- FROM
- TO
- CC
- BCC
- SUBJECT
- CUSTODIANS
- MD5 HASH
- AUTHOR
- FILE_NAME
- FILE_PATH (path to any native files being produced)
- FILE_FOLDER
- TITLE
- REDACTED
- CONFIDENTIALITY DESIGNATION
- TEXT_PRECEDENCE (path to text of file being produced)

However, the Parties are not obligated to produce metadata from a document if metadata does not exist or if the metadata is not machine extractable, except that the Parties will produce custodian metadata for hard-copy documents to the extent that a custodian is reasonably known or can be assigned.

Non-document Sources. The Parties will meet and confer before processing non-document sources to agree on the form of production and other related issues. Such non-document sources include mobile devices, collaboration software, and social media.

Transmittal and Receipt of Productions. The Parties agree that documents shall be produced preferably through a secure File Transfer Protocol ("FTP") transmitted via email, which will be the default manner of production absent exceptional circumstances that prevent an efficient production through FTP. In the event of such exceptional circumstances, the parties shall produce documents on encrypted physical media ("Physical Media") sent by a method no slower than overnight delivery via USPS, UPS, or FedEx. Acceptable Physical Media includes external hard drives or other electronic media agreed to by the Parties. The production media should be labeled with: (i) the producing Party's name; (ii) the case name and number; (iii) the production volume; and (iv) the Bates number range. Each receiving Party will take reasonable steps to safeguard received productions. Each Party will maintain the received productions with the same level of care, caution, and security as is used to maintain the Party's own materials.

**6. MISCELLANEOUS**

Review for Responsiveness and/or Privilege. Irrespective of any search protocols agreed upon by the Parties, the producing Party, at its election, may review ESI and other documents for responsiveness, privilege, and confidentiality prior to producing documents to another Party.

Confidentiality. Confidentiality of documents produced will be designated in accordance with the Protective Order entered in the above-captioned case.

Dated: August 24, 2023

OF COUNSEL:

William Savitt
Sarah K. Eddy
Nathaniel Cullerton
Adabelle U. Ekechukwu
Sijin Choi
Charles M. Melman
WACHTELL, LIPTON,
ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Tel.: (212) 403-1000

Corey Worcester
Jomaire A. Crawford
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel.: (212) 849-7000

LIGHTFOOT, FRANKLIN & WHITE LLC

/s/ *Wesley B. Gilchrist*
Michael L. Bell
Wesley B. Gilchrist
Meghan S. Cole
The Clark Building
400 20th Street North
Birmingham, AL 35203
Tel.: (205) 581-0700

*Attorneys for Plaintiff*

Dated: August 24, 2023

OF COUNSEL:

J. Ken Thompson
Attorney at Law
P.O. Box 43116
Birmingham, AL 35243
Tel.: (205) 601-5624

ELIAS LLC

/s/ *Richard M. Elias*
Richard M. Elias
231 S. Bemiston, Suite 800
St. Louis, MO 63105
Tel.: (314) 391-6824

*Attorneys for Defendants*

**DONE** and **ORDERED** this August 30, 2023.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

9