# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| MEDICAL PROPERTIES TRUST, INC.,<br><br>                              Plaintiff,<br><br>- v. -<br><br>VICEROY RESEARCH LLC; FRASER JOHN PERRING; GABRIEL BERNARDE; and AIDAN LAU,<br><br>                             Defendants. | Civil Action No. 2:23-cv-00408-RDP |

### PLAINTIFF'S BRIEF CONCERNING DISCOVERY DISPUTES
### TO BE ARGUED AT DECEMBER 7, 2023 DISCOVERY CONFERENCE

Plaintiff Medical Properties Trust, Inc. ("MPT") respectfully submits this brief in advance of the December 7, 2023 discovery conference to address disputes that the parties have been unable to resolve through the meet and confer process. MPT seeks an order compelling the production from Defendants of (1) documents and communications relating to regulatory or litigation matters involving Defendants' past false or misleading statements; and (2) communications between Defendants and the Securities and Exchange Commission ("SEC") regarding MPT. On Monday, December 4, 2023, Defendants also indicated that they intended to seek an order compelling production of documents relating to certain transactions between MPT and two of its tenants, Steward and Prospect. That request should be denied for the reasons discussed below.

**ARGUMENT**

I. **Defendants should be compelled to produce documents concerning their past false or misleading statements**

In 2021, a South African regulator, the Financial Sector Conduct Authority ("FSCA"), fined Viceroy's members millions of dollars for spreading false and misleading claims about a South African bank on behalf of a hedge fund that was trying to drive down the bank's stock price. (Doc. 1, ¶¶ 4, 38). In its Penalty Order, the FSCA found that Defendants "made a concerted effort" to publish "false, misleading and deceptive [statements] regarding material facts."[1] The FSCA also noted that the "seriousness of [Defendants'] conduct" was "compounded" by the fact that Defendants demonstrated "no interest in setting the record straight" even after being "presented with clear explanations for why [their] statements had been false" and instead continued to air false and misleading statements for another six months. *Id.* ¶ 4.4.6. It also came to light that Defendants had published their false statements about the bank pursuant to a retainer and profit-sharing agreement with the hedge fund. (Doc. 1, ¶ 39). Defendants earned an estimated $744,000 from the attack. *Id.*

In light of Defendants' documented history of publishing false statements about public companies for financial gain, on June 30, 2023, MPT served RFPs on Defendants Viceroy and Fraser Perring seeking documents relating to any past regulatory or litigation matters involving Defendants. *See* Ex. A (Plaintiff's RFP Nos/ 20, 27, 28).[2] Defendants objected to these requests on September 1, 2023, asserting that "[i]nvestigations into Defendants unrelated to MPT are irrelevant and not even remotely calculated to lead to the discovery of admissible evidence"

---

[1] Financial Sector Conduct Authority, Administrative Penalty Order in Terms of Section 167 of the Financial Sector Regulation Act 9 of 2017 ¶¶ 4.4.2, 4.4.3 (Sept. 8, 2021), https://www.fsca.co.za/Enforcement-Matters/Documents/Penalty%20Order-DMA403.pdf?csf=1&e=6TXqCH.

[2] Defendants Gabriel Bernarde and Aidan Lau were subsequently served with identical RFPs.

because "Defendants' characters are not at issue and evidence related to their characters is not admissible." *See* Ex. B (Perring Responses and Objections to RFP No. 20). After meeting and conferring, MPT clarified that it was only seeking documents relating to past regulatory or litigation matters concerning false or misleading statements made by Defendants. Defendants continued to object to these narrowed requests, reiterating their contention that the requests sought inadmissible character evidence under Federal Rule of Evidence 404(b).

Defendants' arguments are wrong and premature, and they should be compelled to produce documents responsive to MPT's narrowed requests. Evidence of "any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). However, other-act evidence may be admitted for any purpose other than to demonstrate propensity, including "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* This list is illustrative rather than exhaustive, as the Eleventh Circuit has made clear that "Rule 404(b) is a rule of inclusion." *See, e.g.*, *United States* v. *Smith*, 741 F.3d 1211, 1225 (11th Cir. 2013).

Here, MPT does not seek these documents to prove Viceroy's propensity for making false or misleading statements. Instead, the documents are probative of Defendants' state of mind when they made the defamatory statements at issue. *See Restore Life USA, Inc.* v. *Lifenews.com*, 2020 WL 9396589, at *2 (D. Colo. Oct. 20, 2020). *Restore Life* is instructive. There, plaintiffs sued a news agency for publishing an article that allegedly defamed plaintiffs' business. *See Restore Life USA, Inc.* v. *Lifenews.com*, 2020 WL 1627041, at *1–2 (D. Colo. Feb. 13, 2020). Plaintiffs thereafter sought to admit evidence that defendants had published false statements in the past about other organizations and individuals. *Restore Life*, 2020 WL 9396589, at *2. The defendants

3

objected, arguing, as Defendants do here, that these statements were irrelevant and inadmissible character evidence under Rule 404. *Id.* The court disagreed, holding that the defendants' prior defamatory acts were relevant and admissible because they were "probative of whether Defendants acted with actual malice." *Id.* The court further noted that "[e]vidence that Defendants regularly publish statements that are false" was "probative of the fact that the defamatory statement [at issue] wasn't made by mistake." *Id.*

The same is true here. To recover on its defamation claim, MPT may be required to prove actual malice—*i.e.*, that Defendants published an alleged defamatory statement "with actual knowledge of its falsity or [] with reckless disregard for its truth." *Jones* v. *BuzzFeed, Inc.*, 591 F. Supp. 3d 1127, 1153 (N.D. Ala. 2022).[3] Evidence that Defendants have previously been investigated, sued, or fined for spreading false and misleading statements for profit is probative of Defendants' state of mind here, where MPT alleges that Defendants engaged in the same conduct with the same financial motive and the same disregard for the truth. Rule 404(b) explicitly permits such evidence of "intent." It further permits other-act evidence, such as the evidence MPT seeks here, that is relevant to a defendant's "plan," "motive," and "absence of mistake." Defendants' history of making false statements for profit readily satisfies these additional purposes permitted by Rule 404(b).

In any event, Defendants' admissibility arguments are no basis for withholding relevant discovery. "Information within [the] scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Instead, MPT is entitled to "any information sought" as

---

[3] Defendants contend that MPT is a public figure and that MPT will be required to prove actual malice. MPT's position is that it is not a public figure and that it need only establish that Defendants were negligent in publishing the alleged defamatory statements at issue. In its ruling on Defendants' motions to dismiss, the Court held that determining whether the "actual malice" standard applies "is an issue best addressed after discovery and with reference to a Rule 56 record." (Doc. 56, p. 26). Evidence of Defendants' past false or misleading statements would be relevant and admissible to establish Defendants' negligence for all of the reasons discussed above as to actual malice.

long as it "appears reasonably calculated to lead to the discovery of admissible evidence." *Marbury* v. *Warden*, 2022 WL 17175549, at *2 (11th Cir. Nov. 23, 2022) (internal quotation marks omitted). Therefore, Viceroy's Rule 404 argument is "premature" and is not a valid basis for withholding discovery at this time. *See McClinton* v. *Cogency Glob. Inc.*, 2021 WL 2635853, at *3 (N.D. Ala. Feb. 18, 2021) (noting that "the issue before the court is simply whether the evidence is discoverable," and that "[i]f discoverable evidence is sought to be admitted for a purpose that is improper under Rule 404," the defendant "should object on that ground at that time"); *see also Turner* v. *GEICO Indem. Co.*, 2011 WL 11769047, at *1 (S.D. Fla. Sept. 8, 2011) (the fact that "certain responsive documents may not be admissible at trial under Federal Rules of Evidence 404(b)" was "irrelevant to the issue of whether they are discoverable").

Because admissibility is not a basis for withholding relevant discovery, Defendants should be compelled to produce documents concerning their past false or misleading statements. Defendants do not, and cannot, contend that the requested documents are irrelevant. They are plainly relevant, as they bear directly on Defendants' state of mind in publishing statements about MPT.

**II.     Defendants should be compelled to produce their communications with the SEC**

In its first set of RFPs, MPT also requested that Defendants produce their communications with "any Governmental Authority, investment analyst, or journalist" concerning "MPT, MPT Securities, or any Operator-Tenant." Ex. A (RFP No. 18). Defendants have since confirmed that communications with "Governmental Authorit[ies]," including the SEC, exist and are responsive to MPT's requests. Defendants do not object to producing their communications with regulators other than the SEC, but have expressed concern that certain statutes and regulations—15 U.S.C. § 78u-6 and 17 C.F.R. §§ 240.21F-1, *et seq.*—prohibit them from disclosing their communications with the SEC absent a court order. Viceroy's concern is misplaced.

The plain language of the statute and regulations cited by Defendants only prohibit the *SEC* from disclosing the identity of a claimed whistleblower. 15 U.S.C. § 78u-6(h)(2) provides that "the *Commission* and any officer or employee of the *Commission* shall not disclose any information, including information provided by a whistleblower to the Commission, which could reasonably be expected to reveal the identity of a whistleblower." *Id*. (emphases added). Similarly, 17 C.F.R. § 240.21F-7 provides that "the *Commission* will not disclose information that could reasonably be expected to reveal the identity of a whistleblower" except in narrow circumstances. *Id*. (emphasis added). On their face, nothing in these statutes or rules prevents a private party from disclosing its own communications with the SEC. And in all events, Defendants have cited no statute, rule, or other authority that would prevent them from producing relevant communications with the SEC pursuant to a valid court order. MPT thus seeks an order from the Court compelling Defendants' production of these documents and communications.

**III.    Defendants' requests for post-complaint discovery into certain Prospect and Steward transactions should be denied**

On Monday, December 4, Defendants emailed the Court to request permission to address MPT's objections to producing certain categories of documents relating to transactions with two of MPT's tenants, Prospect and Steward. By way of background, Defendants have served 65 RFPs, seeking documents and communications spanning a nearly eight-year time period, and broadly covering dozens of transactions with tenants, many of which were not the subject of any of the 14 reports issued by Viceroy that form the basis of the claims in this action. *See* Ex. C (Defendants' RFPs); Doc. 1 at Ex. 1 (Viceroy Reports).

As the Court is aware, MPT's core claim relates to specific statements in the Viceroy reports, made at specific times, that assert that MPT was engaged in "round tripping" with specific tenants. (Doc. 1, ¶¶ 51, 54, Ex. 1). Despite the breadth of Defendants' requests, MPT has already

6

agreed to search for documents responsive to the majority of these requests, and has already produced nearly 2,000 core transaction and underwriting documents—spanning approximately 30,000 pages—relating to more than ten transactions with its tenants that were the subject of Viceroy's reports (and even some that were not specifically identified in the reports).  These transaction documents alone are enough to prove the truth or falsity of Defendants' "round tripping" allegations, as they include the relevant agreements and underwriting information for the transactions at issue.

Nevertheless, in subsequent discussions with Defendants, MPT has agreed to go further, and is presently engaged in a wide-ranging review of emails of its senior-most executives, spanning nearly eight years, and involving another 26 specific requests relating to various transactions that Defendants have identified.  This is in addition to extensive email searches for documents that Defendants claim are related to MPT's damages claims.  As an example, MPT has agreed to search communications with *139* representatives from its bondholders.  Defendants, meanwhile, only recently engaged an e-discovery vendor, have objected to running searches over their ESI to assess burden, and have produced only 850 documents to date, which they recently agreed to re-produce because the initial production did not comply with the ESI Protocol entered by the Court.

At issue now are Defendants' requests for documents and communications relating to two specific transactions with Prospect and Steward, both of which were announced after the complaint was filed and after the relevant Viceroy reports were published.  *First*, in Q3 2023, months after MPT filed the complaint, MPT opted to make a minority investment of approximately $140 million

7

in a syndicated credit facility for Steward.[4]  On August 17, 2023, MPT announced that it had sold part of its interest in the loan to a third-party investor.[5]  Defendants' RFP Nos. 50 and 51 seek documents concerning MPT's decisions to invest and sell.  *See* Ex. C.

*Second*, Defendants seek documents concerning the recapitalization of MPT's tenant Prospect.  *See* Ex. C (RFP Nos. 53-56).  On April 27, 2023, weeks after the complaint was filed and the relevant Viceroy reports were published, MPT announced that, as part of the recapitalization, it would restructure its investment in Prospect.[6]  This included the retirement of certain debt and other obligations in exchange for an equity interest in Prospect's managed care business, PHP Holdings.[7]

Only on December 4, 2023 did Defendants attempt to articulate the relevance of these announcements, claiming that documents relating to these transactions are discoverable for three reasons:  (1) as evidence of purported "round tripping"; (2) as evidence that MPT was engaged in generalized "fraudulent activity"; and (3) as evidence rebutting MPT's damages claim by purportedly showing that MPT's stock price decline is unrelated to Defendants' short-and-distort campaign.  None of these arguments have merit.  These requests seek irrelevant information and are disproportionate and unduly burdensome in the context of the extensive discovery that MPT has already agreed to provide.

---

[4]  *See* Med. Props. Tr., Inc., Quarterly Report (Form 10-Q) at 29, 38 (Aug. 9, 2023), https://www.sec.gov/Archives/edgar/data/1524607/000095017023040734/mpw-20230630.htm.

[5]  Med. Props. Tr., Inc., Medical Properties Trust Sells $105 Million of Its Interest in Steward's Syndicated Asset-backed Credit Facility (Aug. 17, 2023), https://medicalpropertiestrust.gcs-web.com/node/15501/pdf.

[6]  Med. Props. Tr., Inc., Current Report (Form 8-K) at Ex. 99.1, p. 2 (Apr. 27, 2023), https://www.sec.gov/Archives/edgar/data/1287865/000119312523120216/d444501dex991.htm.

[7]  *Id.*; *see also* Med. Props. Tr., Inc., Quarterly Report (Form 10-Q) at 15, 28 (Aug. 9, 2023), https://www.sec.gov/Archives/edgar/data/1524607/000095017023040734/mpw-20230630.htm.

(1) Defendants agree that neither transaction is mentioned in any of Viceroy's 14 reports—nor could they have been, as neither transaction was even disclosed until long after the reports were published. For that reason, neither transaction forms the basis of any defamatory statement alleged in the complaint. MPT has already agreed to produce documents relating to numerous other Prospect and Steward transactions to the extent those transactions *were* discussed in any of Viceroy's reports. Going beyond that is unwarranted. Defendants cannot simply declare that any transaction MPT does or has done might involve round tripping, even if it was not referenced in the complaint, and even if Defendants never said anything about it before this lawsuit. That would be an invitation to never-ending discovery into unlimited transactions that have nothing to do with the specific defamatory statements made in the reports and alleged in the complaint. And Defendants cannot use these unrelated transactions to prove the so-called "truth" of unrelated statements they made about MPT before they, or the public, were even aware of these transactions.

(2) Defendants' contention that these documents are relevant because they will establish that MPT engaged in purported "fraudulent activity" is similarly misplaced. That contention appears to be premised on the argument that MPT's disclosures concerning these transactions were false or misleading. But again, the relevant disclosures were not made until weeks (if not months) after the Viceroy reports were published, and after the complaint was filed. Accordingly, and unsurprisingly, the complaint does not allege that Defendants made any defamatory statements about these transactions or any related disclosures.

(3) These transactions have nothing to do with damages. Defendants contend that these transactions are somehow relevant to showing that any further decline in MPT's stock price is unrelated to Defendants' false statements. But MPT's internal communications about these

9

transactions are irrelevant to that argument because MPT's stock price could not react to any information that wasn't already public. If Defendants want to argue that these transactions, as opposed to their own public statements, caused MPT's stock price to further decline, they can do so based on the same publicly available information that the market has. And in any event, in response to Defendants' requests, MPT is *already* searching for, and will be producing, documents relating to any decline in its stock price going back to January 1, 2022. Defendants' damages argument is a pretext.

For all of these reasons, discovery into these irrelevant transactions should be denied.

## CONCLUSION

For the forgoing reasons, Plaintiff respectfully request that the Court (1) compel Defendants to produce documents and communications relating to regulatory or litigation matters involving Defendants' past false or misleading statements, as well as documents and communications between Defendants and the SEC regarding MPT; and (2) deny Defendants' requests for discovery into certain transactions involving Prospect and Steward that are not the basis of any alleged defamatory statements and are not discussed in any of Viceroy's reports.

Dated: December 5, 2023

OF COUNSEL:

William Savitt
Sarah K. Eddy
Nathaniel Cullerton
Adabelle U. Ekechukwu
Charles M. Melman
WACHTELL, LIPTON,
ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Tel.: (212) 403-1000

LIGHTFOOT, FRANKLIN & WHITE LLC

*/s/ Wesley B. Gilchrist*
Michael L. Bell
Wesley B. Gilchrist
Meghan S. Cole
The Clark Building
400 20th Street North
Birmingham, AL 35203
Tel.: (205) 581-0700

*Attorneys for Plaintiff*

Corey Worcester
Jomaire A. Crawford
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
Tel.: (212) 849-7000

**CERTIFICATE OF SERVICE**

      I hereby certify that on December 5, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will give notice of such filing to all counsel of record.

                                        */s/ Wesley B. Gilchrist*
                                        Of Counsel