IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MEDICAL PROPERTIES TRUST, INC., <br><br> Plaintiff, <br><br> v. <br><br> VICEROY RESEARCH LLC, *et al.,* <br><br> Defendants. | Case No. 2:23-cv-00408-RDP |

**DEFENDANTS' BRIEFING ON DISCOVERY ISSUES TO BE ADDRESSED AT THE
<u>DECEMBER 7, 2023 STATUS CONFERENCE</u>**

Per the Court's Orders issued on December 1, 2023 (Doc. No. 73) and December 4, 2023 (Doc. No. 74), Defendants hereby submit briefing on (1) Defendants' document requests relating to certain transactions between Plaintiff Medical Properties Trust, Inc. ("MPT") and its tenants, Steward and Prospect; and (2) MPT's document requests regarding unrelated actions involving third parties and Defendants' submission of a whistleblower tip to the SEC regarding Plaintiff.

**I.    Defendants' Document Requests Relating to Certain Transactions Between MPT
    <u>and Its Tenants, Steward and Prospect</u>**

**A.    Background**

This is a defamation action brought by MPT against Defendant Viceroy Research LLC ("Viceroy") and its principals, Fraser Perring, Gabriel Bernarde, and Aidan Lau, in which MPT is attempting to pin the catastrophic demise of its business and share price on a series of reports and tweets published by Defendants. MPT claims that Defendants have made false and defamatory statements about MPT, including (1) that MPT is engaged in "roundtripping" by providing financial support to its tenants so that they can continue to operate and pay rent, and

(2) that MPT is engaged in fraud and deceit and is scamming its investors. *See* Complaint, Doc. 1, at ¶¶ 46-54, 70-73.

Defendants, however, will prove that MPT is in fact engaged in roundtripping and securities fraud. Defendants will further prove that the demise of MPT and its stock price has nothing to do with Defendants' publications, and everything to do with the poor business decisions and greed of MPT's management, including its CEO Edward Aldag.

To put MPT's claims in proper perspective it is critical to understand that MPT's demise began more than a year before Defendants published a single word about MPT and continues today. In December of 2021, MPT's stock peaked at $23.35 per share. When Viceroy issued its first publication on January 26, 2023—over a year later—the stock had already plummeted to $12.58 per share. And that demise continues today, with MPT's stock fluctuating between $4 and $5 dollars per share.

The following chart demonstrates the disastrous decline of MPT's stock:



Importantly, the demise of MPT's stock can be directly tied to key public events and disclosures that predate and/or do not involve Viceroy at all. For example, on February 22, 2022, the Wall Street Journal published an in-depth article about MPT's instability and losses due to

2

the financial distress of its biggest tenants—Steward and Prospect. *See* Brian Speggle, *How a Small Alabama Company Fueled Private Equity's Push Into Hospitals*, Wall Street Journal, Feb. 22, 2022.[1] Importantly, in reporting Steward's $800 million in losses and a series of suspicious transactions between MPT and Steward, the article made statements about roundtripping that are nearly identical to Defendants' statements that MPT complains of here: "MPT has struck a series of deals involving Steward and its chief executive that together resulted in hundreds of millions of dollars flowing from MPT to Steward. Former MPT employees familiar with the company's transactions said they saw the deals with Steward as a way for MPT to provide it with cash as it notched losses, which in turn helped Steward make its rent payments and kept MPT growing." *Id.*

As Steward, Prospect, and other MPT tenants continued to struggle financially, MPT's stock continued to decline. For example, on December 22, 2022—again, prior to any of Defendants' publications—S&P Global Ratings ("S&P") put MPT on a credit watch due to its increased exposure to Steward. *See Medical Properties Trust Ratings Placed on Watch Negative on Increased Exposure to Pressured Tenant Steward Health Care*, S&P Global Ratings, Dec. 22, 2022.[2] The reasons for the downgrade included the facts that (1) MPT extended a $150 million bailout loan to Steward, (2) Steward was having difficulty extending its asset-backed loan ("ABL") facility, which it relied on for working operating capital, and (3) Steward was unable to deliver audited financial statements for 2021. *Id.*

Then, in March of 2023, S&P downgraded MPT to BB status (which is "junk bond" status), because, among other things, (1) Steward's "need for ongoing financial support from

---

[1] Available at https://www.wsj.com/articles/hospitals-private-equity-reit-mpt-steward-11644849598.

[2] Available at https://disclosure.spglobal.com/ratings/en/regulatory/article/-/view/type/HTML/id/2932303.

3

Medical Properties Trust and its inability to address its ABL facility in a timely manner have further called into question the credit quality of [MPT's] largest tenant," and (2) financial "[c]hallenges for Prospect resulted in [MPT] recording a large impairment charge and write-off in unbilled rent during the fourth quarter of 2022." *See Medical Properties Trust, Inc. Downgraded to 'BB' on Tenant Pressure and High Concentration; Outlook Stable*, S&P Global Ratings, March 10, 2022.[3]

Then, in August 2023, MPT reported a quarterly net loss of $42 million due, in part, to early lease terminations and rent write-offs related to Steward. *See Medical Properties Trust, Inc. Reports Second Quarter Results*, Medical Properties Trust, Inc., Aug. 8, 2023.[4] Shortly following this report, MPT announced that it was taking the unprecedented action of slashing its per share dividend in half from $0.29 to $0.15. *See Medical Properties Trust Updates Capital Allocation Strategy to Further Enhance Long-Term Value Creation*, Medical Properties Trust, Inc., Aug. 23, 2023.[5]

That same month, the Wall Street Journal published another article about MPT concerning a deal between MPT and Prospect designed to provide a financial lifeline to Prospect, which MPT had represented was completed, when in fact regulators had put it on hold. *See* Jonathan Weil, *Cracks Deepen for America's Biggest Hospital Landlord: Struggling Tenants, a Bailout on Hold*, Wall Street Journal, Aug. 18, 2023.[6] The article opened: "The nation's largest

---

[3] Available at https://disclosure.spglobal.com/ratings/en/regulatory/article/-/view/type/HTML/id/2959148.

[4] Available at https://www.medicalpropertiestrust.com/press-release?page=https://medicalpropertiestrust.gcs-web.com/news-releases/news-release-details/medical-properties-trust-inc-reports-second-quarter-results-0.

[5] Available at https://www.medicalpropertiestrust.com/press-release?page=https://medicalpropertiestrust.gcs-web.com/news-releases/news-release-details/medical-properties-trust-updates-capital-allocation-strategy.

[6] Available at https://www.wsj.com/business/deals/cracks-deepen-for-americas-biggest-hospital-landlord-struggling-tenants-a-bailout-on-hold-21e3294c.

hospital landlord [MPT] said an unusual transaction that provided crucial financial support for one of its biggest tenants was a done deal. It wasn't." *Id.* The transaction—one of the transactions at issue in this brief—was a deal where MPT agreed to take a 49 percent interest in Prospect's managed care business—PHP Holdings—in lieu of $573 million in loans, unpaid rent and interest, and other amounts owed. *Id.* MPT publicly announced that the deal was closed and that it in fact owned a 49 percent interest in PHP Holdings. *Id.* But this was false—the deal had been put on hold by California regulators because the regulators considered it to be a change in control of a managed health care business. *Id.*

As the above and other evidence that Defendants are working diligently to develop show, the plummet in MPT's sock price and the general demise of its business were not caused by Defendants' reports or tweets, but by MPT's overexposure to financially stressed tenants, its uncommercial transactions with its tenants designed to provide them a financial bailout to mask their insolvency, and MPT's false and misleading statements about these transactions. As will be discussed below, the transactions at issue are all relevant to these issues, and MPT should be required to produce documents related to them.

**B.     The Transactions at Issue**

1.     <u>The Steward ABL Facility Transactions</u>

In its Form 10-Q for the quarterly period ending June 30, 2023, MPT—to the surprise of investors—announced that, in addition to all the other loans and financial support MPT had provided to Steward, it contributed $140 million to Steward's syndicated ABL facility. In other words, through a syndicate of lenders, it loaned Steward $140 million to be used as working operating capital so that Steward could stay afloat and pay MPT rent. In an earnings call on August 8, 2023, MPT's Aldag represented that this loan was "not an operating loan to Steward"

5

and is "well first secured by receivables." *See* Transcript of MPW's Earnings Call for the Period Ending June 30, 2023, at p. 2.[7]

But shortly thereafter, MPT sold $105 million of the loan to an asset manager at a discounted price of $100 million, and then announced, for the first time, that (1) the other $40 million of the ABL investment was an *unsecured* loan, and (2) MPT's investment in the ABL facility was, in fact, designed to provide general working capital support to Steward. *See* MPT Investor Update dated 10/26/2023, at p. 5.[8]

Defendants' document requests 50 and 51 seek documents related to the ABL facility transactions. *See* Exhibit 1, Plaintiff's Responses to Defendants' First Request for Production, at Requests 50-51. MPT objects that the requests are irrelevant.

The requests clearly seek relevant and discoverable information. First, the transactions prove that MPT is in fact round-tripping funds to Steward by providing Steward a working capital loan—in addition to all of the other loans and financial support it has provided Steward—forty million of which is on an *unsecured* basis. This substantiates Defendants' statements that MPT is recklessly providing financial support to its distressed tenants to allow them to stay afloat and pay MPT the rent they owe. It also substantiates Defendants' statements that MPT is engaging in deceit and fraud (which statements MPT claims are false and defamatory), as MPT's Aldag flat out lied to investors when he said that the $140 million investment was not for working capital and was fully secured. Therefore, MPT should produce documents responsive to requests 50-51.

---

[7] Available at https://www.fool.com/earnings/call-transcripts/2023/08/08/medical-properties-trust-mpw-q2-2023-earnings-call/.

[8] Available at https://medicalpropertiestrust.gcs-web.com/static-files/9f32b6d4-5210-424c-b110-4f40a787a93d.

2. The Prospect PHP Holdings Transaction

As discussed in the background section above, to bail out Prospect, MPT agreed to receive a 49 percent interest in PHP Holdings in lieu of $543 million in rent and other financial obligations that Prospect owed. MPT told investors, unequivocally, that it had received this equity interest, which was a lie—the transaction was put on hold indefinitely by regulators.

Defendants' document requests 53-56 seek documents related to this transaction and related transactions executed during this restructuring. *See* Exhibit 1, at Request 53-56. MPT objects that the requests are irrelevant.

The requests clearly seek relevant and discoverable information. First, the transactions are relevant to Defendants' statements about roundtripping. Defendants will prove that the valuation of the equity interest in PHP Holdings—like other valuations in this case—are grossly inflated, and that said interest does not provide adequate compensation for the $543 million in financial obligations that MPT forgave. The discovery is further relevant to substantiate Defendants' statements that MPT is engaging in deceit and fraud (which statements MPT claims are false and defamatory), as MPT, once again, lied to investors when it said that it had received the equity interest, when, in fact, the interest had not been received and may never be. Therefore, MPT should produce documents responsive to requests 53-56.

3. MPT's $150 Million Loan to Steward

In the second quarter of 2022, MPT extended a $150 million loan to Steward, as Steward was steeped in financial distress and struggling to extend its ABL facility. As discussed in the background section above, this is one of the factors that S&P cited to when it placed MPT on a credit watch in December 2022. Defendants' document request 25 seeks documents related to this transaction. *See* Exhibit 1, at Request 25. MPT objects that the request is irrelevant.

7

The request clearly seeks relevant and discoverable information. This transaction proves that MPT is in fact round-tripping funds to Steward by providing a substantial loan to assist Steward at a time when Steward was struggling financially and unable to extend an ABL facility to provide it with working operating capital. This substantiates Defendants' statements that MPT is recklessly providing financial support to its distressed tenants to allow them to stay afloat and pay MPT the rent they owe.

II. **MPT's Document Requests Regarding Unrelated Actions Involving Third Parties and Defendants' Submission of a Whistleblower Tip to the SEC Regarding MPT**

A. **Unrelated Actions**

MPT seeks documents regarding unrelated regulatory actions and litigation involving Defendants and third parties. This discovery is not reasonably calculated to lead to the discovery of admissible evidence, and the effort to search for and produce this irrelevant material would constitute an undue burden on Defendants.

There are two unrelated actions at issue. The first involves a regulatory investigation by a South African agency about alleged misrepresentations that Viceroy made about a South African bank called Capitec. The South African agency found that Viceroy made *negligent* misrepresentations in reports that it wrote about the company. There was no finding of malice or intent. The decision was later overturned for lack of jurisdiction.

MPT argues that this action is relevant to proving actual malice in this case. It is, however, hard to fathom how an unrelated regulatory decision, which is a nullity for lack of jurisdiction and which did not render a decision on intent or malice, has any bearing on actual malice in this case. The decision and its findings are already publicly available, and Defendants should not be burdened with producing this irrelevant material.

8

The second category of unrelated actions involves a series of lawsuits involving Defendants and MiMedx Group. Like MPT, MiMedx sued Defendants for defamation after they published a series of reports accusing MiMedx and its CEO of engaging in securities fraud by inflating the company's earnings. After the suit was filed, MiMedx's CEO was indicted for the very securities fraud Defendants accused him of, and MiMedx voluntarily dismissed the suit. Defendants then sued MiMedx for wrongful prosecution, and, after vigorously prosecuting the case, settled the suit confidentially with the company shortly before trial. This discovery does not support MPT's claims of actual malice. To the contrary, it proves that Defendants are rigorous and correct in their research and publications. Allowing discovery into these collateral and resolved actions is a distraction that detracts from the substantial discovery efforts that need to be undertaken related to the lawsuit that is actually pending.

B. <u>Whistleblower Tip to the SEC</u>

Defendants have made a whistleblower submission to the SEC under its whistleblower program and MPT seeks documents related to this submission. We do not object to this request, but given that it involves a confidential submission, we believe that it needs to be produced under cover of this Court's order. Defendants do, however, note that the SEC may have objections to this production, and leave it to the Court's discretion as to how these potential concerns should be addressed, if at all.

**<u>Required Certification</u>**

The undersigned hereby certify that we have affirmatively and diligently sought to submit to the Court only those documents, factual allegations, and arguments that are material to the issues to be resolved, that careful consideration has been given to the contents of all submissions to ensure that the submissions do not include vague language or an overly broad citation of evidence or misstatements of the law, and that all submissions are non-frivolous in nature.

Respectfully submitted this 5th day of December, 2023.

<u>/s/ Richard M. Elias</u>

ELIAS LLC
Richard M. Elias (pro hac vice)
231 S. Bemiston, Suite 800
St. Louis, MO 63105
314-391-6824
relias@eliasllc.com
tfriedman@eliasllc.com

<u>*/s/ J. Ken Thompson*</u>
J. KEN THOMPSON (ASB-1422-P67J)
Attorney for Defendant, Viceroy Research, LLC

J. Ken Thompson
Attorney at Law
P.O. Box 43116
Birmingham, Alabama 35243
205-601-5624
kent@jkenthompsonlaw.com

## **CERTIFICATE OF SERVICE**

  I hereby certify that I electronically filed a true and correct copy of the foregoing, using the Court's CM/ECF system, which will automatically send email notification to all counsel of record.

              */s/ Richard M. Elias*
                Richard M. Elias