UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **MEDICAL PROPERTIES TRUST, INC.,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 2:23-cv-00408-RDP |
| } | |
| **VICEROY RESEARCH, et al.,** } | |
| } | |
| **Defendants.** } | |

## MEMORANDUM OPINION

This matter is before the court on Medical Properties Trust's Motion for Issuance of a Letter of Request Pursuant to the Hague Convention (Doc. # 80) and numerous other discovery disputes between the parties. After careful review, and for the reasons outlined below, Medical Properties Trust's Motion for Issuance of a Letter of Request Pursuant to the Hague Convention (Doc. # 80) is due to be granted. The other objections to discovery requests are due to be overruled in part and sustained in part.

**I.   Background**

This case arises out of Defendants Viceroy Research ("Viceroy"), Fraser John Perring, Gabriel Bernarde, and Aidan Lau's (collectively "Defendants") alleged efforts to manipulate Plaintiff Medical Properties Trust's ("Plaintiff" or "MPT") stock price in order to profit on Defendants' short position. On March 30, 2023, Plaintiff filed this action alleging defamation and other state law claims. (Doc. # 1).

On November 15, 2023, counsel for Plaintiff informally contacted chambers regarding a discovery dispute between the parties concerning Plaintiff's intent to issue a "Request for International Judicial Assistance Pursuant to the Hague Convention." In response, the court set a

status conference and hearing for December 7, 2023 to discuss the dispute. (Doc. # 71). Prior to the hearing, counsel for both parties informally contacted chambers about other disputes and requested those be discussed at the conference. Both parties submitted briefs regarding their status on these disputes. (Docs. # 75, 76).

At the status conference and hearing on December 7, 2023, the parties stated their positions on the following disputes: (1) MPT's request for the court to issue a "Request for International Judicial Assistance Pursuant to the Hague Convention"; (2) MPT's request for documents relating to any past regulatory or litigation matters concerning false or misleading statements made by Defendants; (3) MPT's request for Viceroy to produce any communications with the Securities and Exchange Commission concerning MPT; and (4) Defendant's request for production of any documents involving transactions between MPT and its two largest tenants, Steward Health Care System LLC ("Steward") and Prospect Medical Holdings, Inc. ("Prospect").

After the conference, the court entered an order instructing Plaintiff to file its draft "Letter of Request for International Judicial Assistance Pursuant to the Hague Convention" and any accompanying memorandum in support. (Doc. # 79). Plaintiff subsequently filed its Motion (Doc. # 80), and Defendants filed a Response in Partial Opposition. (Doc. # 81)

## II.      Legal Standards

### a.      Discovery

"Discovery is governed by the principles of relevance and proportionality[.]" *Gulledge v. DePuy Orthopaedics, Inc.*, 2023 WL 6883670, at *2 (S.D. Ala. Oct. 17, 2023) (citing Fed. R. Civ. P. 26(b)(1)). Rule 26(b)(1) provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the

importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

A district court has broad discretion to compel or deny a discovery request. *United States v. Cuya*, 964 F.3d 969, 970 (11th Cir. 2020). "The Supreme Court has stressed on multiple occasions the need to construe the Rules liberally to allow for robust discovery." *Akridge v. Alfa Mut. Ins. Co.*, 1 F.4th 1271, 1276-77 (11th Cir. 2021) (citing *Hickman v. Taylor*, 329 U.S. 495, 506 (1947); *Schlagenhauf v. Holder*, 379 U.S. 104, 114 (1964)). Nevertheless, "discovery, like all matters of procedure, has ultimate and necessary boundaries," such as when "'it can be shown that the examination is being conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry' or 'when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege.'" *Id.* at 1277 (quoting *Hickman*, 329 U.S. at 507-08).

### b. Issuance of a Letter of Request Pursuant to the Hague Convention

"A letter of request, also known as a letter rogatory, is a 'document issued by one court to a foreign court, requesting that the foreign court (1) take evidence from a specific person within the foreign jurisdiction … and (2) return the testimony … for use in a pending case.'" *Wight v. Bluman*, 2021 WL 8999538, at *1 (S.D. Fla. May 6, 2021). Rule 28(b)(2) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1781(b)(2) authorize federal courts to issue letters of request directly to a foreign tribunal to enable a U.S. litigant to obtain non-party discovery from a foreign entity. *Roche Diagnostics Corp. v. Priority Healthcare Corp.*, 2019 WL 4687016, at *4 (S.D. Ala. Jun. 6, 2019).

In considering whether to issue a letter of request pursuant to the Hague Convention, "a court should determine both whether the discovery sought falls within the scope of discovery authorized by the Federal Rules of Procedure, as well as whether other considerations of comity warrant the requested discovery." *Calixto v. Watson Bowman Acme Corp.*, 2009 WL 3823390, at *18 (S.D. Fla. 2009). Therefore, as an initial matter, a court should apply the liberal discovery principles set forth in Rule 26 of the Federal Rules of Civil Procedure. *See DHA Corp. v. BRC Operating Co., LLC*, 2015 WL 13388248, at *1 (N.D. Ga. 2015). These considerations include breadth, relevance, the availability of information sought from other sources, and whether "the movant makes a reasonable showing that the evidence sought may be material or lead to the discovery of material evidence." *Roche Diagnostics Corp.*, 2019 WL 4687016, at *4 (quoting *Netherby Ltd. v. Jones Apparel Grp., Inc.*, 2005 WL 1214345, at *1 (S.D. N.Y 2005)).

After considering those initial factors, the court analyzes considerations of comity that attach to Hague Convention discovery requests as identified by the Supreme Court:

> (1) the importance to the … litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state whether the information is located.

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 544 n. 28 (1987).

**III.    Discussion**

The parties have brought the following disputes to the court's attention: (1) Plaintiff's request for the court to issue a "Request for International Judicial Assistance Pursuant to the Hague Convention"; (2) Plaintiff's request for documents relating to any past regulatory or litigation matters concerning false or misleading statements made by Defendants; (3) Plaintiff's request for

4

Viceroy to produce any communications with the Securities and Exchange Commission concerning MPT; and (4) Defendants' request for any documents involving transactions between MPT and its two largest tenants, Steward and Prospect. The court analyzes each disputed category in turn.

### a. Plaintiff's Motion for Issuance of a Letter of Request Pursuant to the Hague Convention

Plaintiff notes that Defendant Perring has disclosed during discovery that he has an agreement with Cheyne Capital Management (UK) LLP ("Cheyne Capital"), a United Kingdom-based company, entitling him and other Defendants to a monthly retainer of $30,000 in exchange for sharing Defendants' research with Cheyne Capital. (Doc. # 80 at 4). According to Perring, the agreement also gives Defendants the right to a share of the profits, if any, that Cheyne Capital makes on short sales of MPT securities. (*Id.* at 5). In light of this purported agreement, Plaintiff contends that documents in the possession of Cheyne Capital will be critical in proving that Defendants acted recklessly or at least negligently in making false statements about MPT, in order to profit from their defamatory statements. (*Id.*). Accordingly, Plaintiff is requesting that the court issue a letter of request pursuant to the Hague Convention so Plaintiff can serve the following two document requests on Cheyne Capital, each seeking non-privileged documents for the period of January 1, 2021 to the present:

**REQUEST NO. 1**

Documents and Communications related to any Defendant, or any Person working on behalf of or in concert with any Defendant. For the avoidance of doubt, this Request encompasses:

    A.    Documents or Communications sent to, or received from, any Defendant;

    B.    Documents and Communications concerning any payments made to, or received from, any Defendant, or any Person working on behalf of or in concert with any Defendant; and

C.  Documents and Communications concerning contracts, memoranda of understanding, letters of intent, confidentiality agreements, non-disclosure agreements, profit-, risk-, loss-, or cost-sharing agreements, or other agreements or draft agreements of any kind, whether written or oral, between You and any Defendant, or any Person working on behalf of or in concert with any Defendant.

**REQUEST NO. 2**

Documents and Communications relating to MPT or MPT Securities.  For the avoidance of doubt, this Request encompasses:

A.  Documents and communications concerning any communications, interactions, discussions, or meetings between You and any other Person(s) concerning MPT, including, without limitation, communications between You and Hedgeye Risk Management, LLC, Robert Simone (Hedgeye), Keith McCullough (Hedgeye), Matthew Pascale (formerly of Point 72 Asset Management), Richard Mortell  (Third Coast Real Estate Capital), Edwin Dorsey (Bear Cave), Greg Gillespie (formerly of Tacet Global Limited), Nick Helsby, Romaine Beurr, Jacques Griesel, Brian Spegele (The Wall Street Journal), Jonathan Weil (The Wall Street Journal), Laura Benitez (Bloomberg), Charlie Conchie, Moe Tkacik (The American Prospect), Teri Buhl (Buhl Reports), David Lindsay (The Shift), Aurelia Seidlhofer (Reorg), Claude Risner (Debtwire), or Peter Shalson;

B.  Documents and Communications concerning contracts, memoranda of understanding, letters of intent, confidentiality agreements, non-disclosure agreements, profit-, risk-, loss-, or cost-sharing agreements, or other agreements or draft agreements of any kind, whether written or oral, between You and any other Person, including without limitation the Persons listed in Request No. 2 above, concerning MPT;

C.  All Documents and Communications concerning or relating to any payments or other consideration paid by You to any other Person, whether actual or potential, in exchange for or in connection with the creation or dissemination of Tweets, Reports, statements, or other material concerning MPT;

D.  Documents and Communications related to the value of MPT Securities and any recommendation to purchase, sell, or short-sell MPT Securities;

E.  Documents and Communications related to any Reports or other public statements concerning MPT, including Documents and Communications regarding any decision to create or publish any Report, Tweet, or other public statement concerning MPT, and any records of or related to any meetings concerning the foregoing; and

      F.      Documents and Communications concerning any Transaction in MPT Securities by You or any Person acting on behalf of You, including any short sales of MPT Securities.

(*Id.* at 5-6).

In considering whether to issue a letter of request pursuant to the Hague Convention, a court must determine (1) whether the discovery sought falls within the scope of discovery authorized by the Federal Rules of Procedure, and (2) whether other considerations of comity warrant the requested discovery. *Calixto v. Watson Bowman Acme Corp.*, 2009 WL 3823390, at *18 (S.D. Fla. 2009). The court analyzes each requirement below.

      **i.**      **The discovery sought falls within the scope of discovery authorized by the Federal Rules of Civil Procedure.**

Under Rule 26(b)(1), a party may obtain discovery regarding any nonprivileged matter that is relevant to any party's claims or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). When determining whether discovery is relevant and proportional, a court must analyze, among other things: (1) the importance of the issues at stake in the action; (2) the parties' relative access to the relevant information; (3) the importance of the discovery in resolving the dispute; and (4) whether the burden of the proposed discovery outweighs its likely benefit. *Id.*

Here, Defendants object only to Request No. 1. They argue this request seeks irrelevant information about transactions that have nothing to do with MPT or the facts of this case and, they assert, requiring production will turn this litigation into a series of mini-lawsuits about Defendants' research of other companies and financial arrangements with a hedge fund. (Doc. # 81 at 2). Because Defendants do not dispute they publish information about companies they believe are overvalued and take short positions on those companies, Defendants argue that Plaintiff is chasing discovery on issues that will add no value to any party's claims or defenses. (*Id.* at 2-3).

Plaintiff asserts the documents requested will provide necessary insight into Defendants' knowledge of the falsity or accuracy of their research, as well as evidence of their pattern and practice of publishing false and misleading statements in order to improperly profit. In Plaintiff's view, although this evidence might not directly concern MPT, it is nonetheless relevant and discoverable because it is probative of Defendants' regular practices when publishing research and, thus, their state of mind when publishing statements that concern MPT. (Doc. # 80 at 8). Further, Plaintiff states this evidence can only be obtained from Cheyne Capital because Defendants do not have access to all of the internal communications or documents requested from Cheyne Capital.

Ultimately, a district court has "broad discretion to compel or deny discovery …" *United States v. Cuya*, 964 F.3d 969, 970 (11th Cir. 2020). Here, the court concludes that Plaintiff's requested documents are relevant and proportional to the dispute at issue in this case. Assuming solely for purposes of this dispute that the statements of Defendants were indeed false, it follows that in-depth evidence of any agreements between Defendants and Cheyne Capital to publish research and statements about companies – whether those agreements involve MPT or another company – is directly relevant as it will shed light on whether Defendants had actual malice or motive, or alternatively whether their statements were merely mistaken. So, the information sought will be probative of Defendants' state of mind when publishing the statements at issue about MPT. This is true even in light of Defendants' acknowledgement that they conduct research and publish reports on dozens of companies for profit.

Further, the information requested is proportional to the needs of the case, as it only requests correspondence within the past three years. And, numerous courts within this Circuit have granted discovery requests seeking information from a non-party under the Hague Convention that

8

include temporal limitations (as Plaintiff does here). *See Roche Diagnostics*, 2019 WL 4687016, at *9; *In re Zantac (Ranitidine) Prod. Liab. Litig.*, 2021 WL 5105028, at *2-3 (S.D. Fla. Oct. 27, 2021). Plaintiff asserts that this information is only available from Cheyne Capital because (1) Defendants do not have access to the internal communications requested and (2) Defendants have not produced any communications with Cheyne Capital. (Doc. # 80 at 8-9). Therefore, the court readily determines that the discovery requested under Request No. 1 is relevant and proportional to the needs of the case under Rule 26(b)(1).

### ii. The comity analysis weighs in favor of granting Plaintiff's letter of request.

The issuance and enforcement of a letter of request by the United States to a foreign court "rest[s] entirely upon the comity of courts toward each other, and customarily embody a promise of reciprocity." *Roche Diagnostics Corp.*, 2019 WL 4687016, at *5 (quoting 22 C.F.R. § 92.54). "The Supreme Court has reasoned that the court is 'responsib[le] … to base its [comity] analysis … on five factors' when considering a discovery request abroad." *Cole v. Carnival Corp.*, 2023 WL 5846832, at *2 (S.D. Fla. Sept. 11, 2023) (quoting *Societe Nationale Industrielle Aerospatiale*, 482 U.S. at 544). Those five factors are: (1) the importance to the litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance would undermine important interest of the United States, or compliance would undermine importance interests of the state where the information is located. *Id.*

Here, the court finds that the comity analysis weighs in favor of granting Plaintiff's Motion for the issuance of a letter of request pursuant to the Hague Convention. (Doc. # 80). As to the first two prongs, and as discussed above, the requested documents from Cheyne Capital are directly

material to Plaintiff's assertion that Defendants acted with actual malice, absence of mistake, or motive. The requests are also limited in temporal scope to the last three years.

The court next turns to the third and fourth prongs. It does not appear that the information originated in the United States. However, Plaintiff alleges that the evidence sought can only be obtained from Cheyne Capital because Defendants either do not have access to certain internal communications requested or have failed to produce the requested communications with Cheyne Capital. Defendants do not refute this allegation.

Finally, with respect to the balance of interest among nations, the parties do not point to (and this court is not independently aware of) any evidence suggesting that the interests of the United Kingdom would so outweigh those of the United States to bar the issuance of the letter of request in this action. Nonetheless, as other courts in this district have previously pointed out, just as an American court enforcing letters of request issued in a foreign court may limit enforcement of the requested discovery where appropriate, the United Kingdom is free to do so here as well. *See Wight v. Bluman*, 2021 WL 8999538, at *3 (S.D. Fla. May 6, 2021); *Roche Diagnostics*, 2019 WL 4687016, at *7. As a result, the final factor of the analysis also weighs in favor of Plaintiff.

Therefore, the court finds that the discovery sought in Plaintiff's Letter of Request falls within the scope of discovery authorized by the Federal Rules of Procedure and the comity considerations warrant the requested discovery. Accordingly, Plaintiff's Motion for the Issuance of a Letter of Request Pursuant to the Hague Convention (Doc. # 80) is due to be granted.

    **b.**    **Plaintiff's request for documents relating to any past regulatory or litigation matters concerning false or misleading statements made by Defendants.**

The second discovery dispute involves Plaintiff's request for any documents relating to past regulatory or litigation matters concerning Viceroy making false or misleading statements. In particular, Plaintiff is interested in discovering information about a 2021 controversy where the

Financial Sector Conduct Authority ("FSCA"), a South African regulator, fined Viceroy's members for spreading false and misleading claims about a South African bank on behalf of a hedge fund that was trying to drive down the bank's stock price. (Doc. # 75 at 2). In its report, the FSCA found that Viceroy "made a concerted effort" to publish "false, misleading and deceptive [statements] regarding material facts" pursuant to a retainer and profit-sharing agreement with the hedge fund, similar to what Plaintiff alleges occurred in the current suit. (*Id.*). In addition, Plaintiff seeks information about a series of lawsuits involving Defendants and MiMedx Group, another business who sued Defendants for defamation after the former published a series of reports accusing MiMedx and its CEO of engaging in securities fraud by inflating the company's earnings. (Doc. # 76 at 9).

Defendants oppose this request, arguing that it seeks to discover inadmissible character evidence under Federal Rule of Evidence 404(b). (Doc. # 75 at 3). Further, because the FSCA decision resulted in a finding that Viceroy only made *negligent* misrepresentations in their report and was later overturned on jurisdictional grounds, Defendants believe it has no impact on the actual malice burden that Plaintiff must shoulder in this case. (Doc. # 76. at 8). In addition, Defendants note that after the suit was filed in the MiMedx case, the MiMedx CEO was indicted for the very securities fraud that Defendants accused him of and the fraud case against Defendants was dismissed. (*Id.* at 9). Therefore, Defendants assert that the discovery of this information is not relevant and that the effort to produce this unrelated material would constitute an undue burden on Defendants. (*Id.*).

Defendants' assertion that Plaintiff's request seeks inadmissible character evidence under Rule 404(b)(1) misses the mark. To be sure, under Rule 404(b)(1), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular

11

occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). But, under Rule 404(b)(2), that same evidence may be admissible for another purpose, such as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Therefore, evidence of Viceroy's previous regulatory or litigation matters regarding false statements about other businesses could be introduced to prove state of mind, intent, or absence of mistake in publishing statements about Plaintiff. *See Restore Life USA, Inc. v. Lifenews.com*, 2020 WL 9396589, at *2 (D. Colo. Oct. 20, 2020).

Further, even if the information sought is ultimately determined to be inadmissible, Defendants' argument is nonetheless unavailing because "[i]nformation within [the] scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1); *see also Lorenzano v. Systems, Inc.*, 2018 WL 3827635, at n.3 (M.D. Fla. 2018). Instead, it must only be relevant to any party's claim and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Relevance in the context of discovery "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The court concludes that Defendants' prior litigation concerning the same exact issues alleged here undoubtedly bears on this dispute.

Therefore, because the Federal Rules of Civil Procedure strongly favor full discovery whenever possible, *Farnsworth v. Proctor & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985), Defendants' objection to Plaintiff's request for any documents relating to any past regulatory or litigation matters concerning Viceroy making false or misleading statements is due to be overruled.

      **c.**      **Plaintiff's request for any communications between Defendants and the Securities and Exchange Commission concerning MPT.**

Plaintiff also requests that Defendants produce their communications with "any Governmental Authority, investment analysis, or journalist" concerning "MPT, MPT Securities, or any Operator-Tenant." (Doc. # 75 at 5). In response, although Defendants confirm that they made a confidential whistleblower submission to the Securities and Exchange Commission (the "SEC") and do not object to any request to turn this information over, they contend that certain statutes and regulations prohibit them from disclosing their communications with the SEC absent a court order. (Doc. # 76 at 9).

Although there are indeed several statutes and regulations that pertain to confidentiality of whistleblower submissions, the court has not discerned any legal limit that directly forbids a private party from disclosing its own communications with the SEC; instead, these statutes and regulations only prohibit the SEC from disclosing the identity or information which could reasonably be expected to reveal the identity of a claimed whistleblower. *See* 15 U.S.C. § 78u-6(h)(2)[1]; 17 C.F.R. § 240.21F-7(a).[2]

Therefore, to the extent Defendants object to producing these communications on the basis that they cannot do so, that objection is due to be overruled. Nevertheless, as an additional protection for Defendants, the court will issue an order compelling Defendants to produce their

---

[1] "Except as provided in subparagraphs (B) and (C), the *Commission and any officer or employee of the Commission* shall not disclose any information, including information provided by a whistleblower to the Commission, which could reasonably be expected to reveal the identity of a whistleblower…" 15 U.S.C. § 78u-6(h)(2)(A) (emphasis added).

[2] "Pursuant to Section 21F(h)(2) of the Exchange Act (15 U.S.C. 78u-6(h)(2)) and § 240.21F-2(c), *the Commission* will not disclose information that could reasonably be expected to reveal the identity of a whistleblower provided that the whistleblower has submitted information utilizing the processes specified in § 240.21F-9(a)…" 17 C.F.R. § 240.21F-7(a) (emphasis added).

13

communications with the SEC pursuant to an appropriate protective order, which should ease Defendants' concern.

> **d.     Defendants' request for any documents involving transactions between MPT and Steward and Prospect.**

Finally, the court analyzes Defendants' document requests relating to certain transactions between MPT and two of its tenants, Steward and Prospect.

As discussed above, this case centers around MPT's allegations that Defendants made false and defamatory statements about MPT. Among the allegedly defamatory statements are Defendants' published statements that: (1) MPT engaged in roundtripping by providing financial support to its tenants and (2) that MPT engaged in fraud and deceit and is scamming its investors. (Doc. # 76 at 1-2). MPT alleges that these defamatory statements caused its stock price to plummet. To rebut Plaintiff's defamation claim, Defendants intend to prove that MPT is in fact engaged in roundtripping and securities fraud. (*Id.* at 2). Further, they intend to present evidence that the drop in MPT's stock price was not due to Defendants' publications, but instead due to "MPT's overexposure to financially stressed tenants, its uncommercial transactions with its tenants designed to provide them a financial bailout to mask their insolvency, and MPT's false and misleading statements about these transactions." (*Id.* at 5).

To establish these matters, Defendants are requesting documents involving transactions between MPT and two of its largest tenants, Steward and Prospect. Defendants' briefing suggests that the following transactions are at issue here: (1) MPT's $140 million loan to Steward's syndicated ABL facility, purportedly made "so that Steward could stay afloat and pay MPT rent" (Doc. # 76 at 5); (2) MPT's agreement to "bail out" Prospect and receive a 49% interest in PHP Holdings in lieu of $543 million in rent and other financial obligations that Prospect owed (*Id.* at 7); and (3) MPT's $150 million loan to Steward (*Id.*). Defendants contend that evidence of these

14

transactions will substantiate their reports that Plaintiff engaged in fraud and roundtripping and are also relevant to proving that MPT's drop in stock price was its own fault.

In response, Plaintiff asserts that Defendants' requests for documents related to Steward's ABL facility and MPT's agreement to "bail out" Prospect seek irrelevant information because (1) neither of the transactions are mentioned in any of Viceroy's reports or the basis of any defamatory statement alleged in the complaint, and (2) Plaintiff already agreed to produce documents relating to numerous other Steward and Prospect transactions that *were* discussed in Viceroy's reports. (Doc. # 75 at 9). Further, Plaintiff notes that both of these transactions occurred after Defendants published the defamatory statements, and argue that they cannot be used to prove the "truth" of Defendants' statements. (*Id.*). Finally, Plaintiff contends that these transactions are irrelevant to the damages calculation, because MPT's stock price could not react to any information that was not made public. (*Id.* at 10).

Plaintiff is correct that, to the extent that transactions or events occurred after the alleged defamatory statements were published, the requested documents cannot be used to prove Defendants' reasons for making prior statements. "The truth of a defamatory imputation of fact must be determined as of the time of the defamatory publication. Facts alleged to exist by the defamer may subsequently occur, but his foresight or luck in anticipating them will not protect him from liability for stating their pre-existence." Restatement (Second) of Torts § 581A(g) (1977). Because of this, numerous district courts have denied discovery requests in defamation cases as overbroad and non-proportional when they seek information about matters occurring after the defamatory statements were made. *See Benevis, LLC v. Mauze & Bagby, PLLC*, 2015 WL 12763537, at *7 (S.D. Tex. 2015) (holding that requested documents were only relevant to the extent they originated before the defendants' alleged defamatory advertising campaign ended

because "[a]fter-the-fact events cannot convert a factually false statement into a true one"); *Blankenship v. Fox News Network, LLC*, 2020 WL 9718873, at *21 (S.D. W. Va. 2020) (finding discovery requests overbroad because they were not limited to the broadcast dates on which the defamatory statements were made).

Because one of the transactions about which Defendants are requesting documents – the $150 million loan to Steward – took place in 2022, months before Viceroy published its first report, the court agrees with Defendants that information related to this transaction is directly relevant to proving the truth of Viceroy's alleged defamatory publication. But, because MPT's $140 million loan to Steward and MPT's agreement to "bail out" Prospect occurred after the alleged defamatory statements were published, any document requests concerning these transactions are overbroad and irrelevant to proving the veracity of those statements.

Likewise, the court agrees with Plaintiff that the discovery requested from these two transactions would not be relevant to the calculation of damages. To be sure, Plaintiff's complaint alleges that "[s]ince Viceroy began its attacks, MPT's stock price is down over 35 percent…". (Doc. # 1 at ¶ 8). In an effort to say they are not responsible for this plunge, Defendants have cited to evidence that MPT's stock price was already actively falling before Viceroy ever issued a publication about MPT[3] and point to multiple publications from other journalistic sources – released both before and after their report was published – that discuss MPT's transactions with Steward and Prospect in a negative light. (Doc. # 76 at 3-5). However, Defendants have failed to show how the private details of these transactions at issue now could be relevant to this showing, as MPT's stock price could not react to any information that was not publicly known to investors.

---

[3] "In December of 2021, MPT's stock peaked at $23.35 per share. When Viceroy issued its first publication on January 26, 2023 – over a year later – the stock had already plummeted to $12.58 per share. And that demise continues today, with MPT's stock fluctuating between $4 and $5 per share." (Doc. # 76 at 2).

"The Supreme Court has stressed on multiple occasions the need to construe the Rules liberally to allow for robust discovery." *Akridge*, 1 F.4th at 1276-77 (citing *Hickman*, 329 U.S. at 506) (advising that "the discovery provisions are to be applied as broadly and liberally as possible"). "Nevertheless, 'discovery, like all matters of procedure, has ultimate and necessary boundaries,'" such as when "it can be shown that the examination is being conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry" or "when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege." *Id.* at 1277 (citing *Hickman*, 329 U.S. at 507-08).

Relevance in the Rule 26(b)(1) context encompasses "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Id.* at 1276 (quoting *Oppenheimer*, 437 U.S. at 351). Here, the court concludes that Defendants' requests for documents concerning (1) MPT's $140 million loan to Steward's syndicated ABL facility and (2) MPT's agreement to "bail out" Prospect and receive a 49% interest in PHP Holdings in lieu of $543 million in rent and other financial obligations that Prospect owed are irrelevant to this matter. Those transactions occurred after Defendants' allegedly defamatory statements were published; therefore, information about those events will have no bearing on either the veracity of Defendants alleged defamatory statements or the calculation of damages.

Further, the court concludes that the requested discovery on these two transactions is non-proportional to the case. The factors relevant to proportionality are "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery [needed to resolve the issues], and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Without question, the issues at stake in this litigation are very important. But, as

previously discussed, the discovery requested seeks transactions that occurred well after the complaint was filed in this action, and thus have will have no impact on resolving this matter. As a result, the burden of producing the documents would far outweigh their benefit in the case.

Therefore, to the extent Plaintiff objects to producing documents relating to MPT's $150 million loan to Steward that occurred before Defendants published the alleged defamatory statements, that objection is due to be overruled. However, Plaintiff's objections to producing (1) documents related to MPT's $140 million loan to Steward's syndicated ABL facility and (2) MPT's agreement to "bail out" Prospect and receive a 49% interest in PHP Holdings in lieu of $543 million in rent and other financial obligations that Prospect owed are due to be sustained, as these transactions occurred after the publication at issue in this matter and have no bearing on the veracity of Defendants' statements or the calculation of damages.

**IV.    Conclusion**

For the reasons discussed above, (1) Plaintiff's Motion for Issuance of a Letter of Request Pursuant to the Hague Convention (Doc. # 80) is due to be granted, all of Defendants' objections to producing discovery are due to be overruled, and (2) Plaintiff's objection to producing discovery is due to be overruled in part and sustained in part. An order consistent with this memorandum opinion will be entered.

**DONE** and **ORDERED** this January 12, 2024.

_____
R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE