

FILED
2024 Mar-08  PM 05:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MEDICAL PROPERTIES TRUST, INC., | |
| Plaintiff, | |
| v. | Case No. 2:23-cv-00408-RDP |
| VICEROY RESEARCH LLC, *et al.,* | |
| Defendants. | |

**DEFENDANTS' BRIEFING ON DISCOVERY ISSUES TO BE ADDRESSED AT THE
MARCH 13, 2024 STATUS CONFERENCE**

Pursuant to the Court's order dated February 21, 2024 (ECF No. 86), Defendants (collectively "Viceroy") hereby submit their brief in support of Viceroy's requests to: (1) allow Viceroy to share documents produced by Plaintiff Medical Properties Trust, Inc. ("MPT") with regulators and other governmental authorities investigating MPT or its tenants; (2) compel MPT to produce documents responsive to Viceroy's second requests for production of documents; (3) compel MPT to answer Viceroy Interrogatory No. 3; and (4) require MPT to search the files of one additional key custodian.

## RELEVANT BACKGROUND

As Viceroy accurately predicted, MPT and its largest tenants, including Steward, are in shambles. Steward is insolvent and is approximately $50 million in arrears of its rent obligations to MPT on top of an additional $50 million in rent that MPT agreed to defer. Ex. 1, *Medical Properties Trust Provides Update on Steward Health Care,* Medical Properties Trust, Jan. 4, 2024. In Massachusetts, where Steward operates nine hospitals, including hospitals servicing underserved communities, Steward has been unable to pay its employees and vendors, resulting, according to an investigation by the Boston Globe, in at least 14 lawsuits filed by aggrieved vendors and employees seeking tens of millions of dollars in unpaid obligations. *See* Ex. 2, *Steward Health Care's Financial Issues Could Spell Catastrophe for the State*, Boston Globe, January 19, 2024.

Steward's insolvency has had tragic consequences. In October 2023, a mother died as a result of an embolism, which could have been successfully treated with certain medical equipment but for the fact that said equipment had been repossessed for nonpayment. *See* Ex. 3, *Steward's Medical Devices Were Repossessed. Weeks Later, a New Mother Died.* Boston Globe, January 25, 2024. Due to understaffing, several patients have recently collapsed in emergency

room waiting areas, resulting in at least one death, prompting state and federal officials to declare that Steward patients were in "immediate jeopardy," and ordering immediate corrective action. *See* Ex. 4, *Sick Patients Collapsed Waiting for Care in Overwhelmed Steward Hospital's Emergency Department*, Boston Globe, Feb 15, 2024.

Steward, despite commands from the SEC (through MPT) and the Massachusetts governor's office, has been unable to produce audited financial statements for 2022 or 2023, presumably because no auditor will sign off on its financial statements due to irreconcilable irregularities indicative of fraud. *See* Ex. 5, *It Frankly Disgusts Me. Governor Healey Steps Up Criticism of Steward,* Boston Globe, Feb. 26, 2024; Ex. 6, relevant portions of MPT's 2023 Form 10-K, at pp. 38-39 (noting that as "of the date of this annual report… we have not received from Steward its audited financial statements as of and for the year ended December 31, 2022, despite repeated requests by the Company pursuant to the terms of the Company's leases with Steward"). This has prompted Massachusetts governor Maura Healey to declare that Steward "is a house of cards and a charade that has put patients and providers in the stability of our market at risk." *See* Ex. 5.

As a result of Steward's missed rent payments and insolvency, MPT has switched Steward from accrual to cash accounting, resulting in a write down of approximately $459 million is Steward rent, and a recording of over $300 million in impairments in MPT's investments in Steward assets. *See* Ex. 7, *Medical Properties Trust, Inc. Reports Fourth Quarter and Full-Year Results*, Medical Properties Trust, Feb. 21, 2024. This has resulted in MPT reporting a ***staggering*** $556 million dollar loss for 2023. MPT has further been forced to extend Steward even more emergency bridge financing—$60 million in January 2024, and an additional

$37.5 million in February 2024—to provide Steward with sufficient liquidity to pay its vendors, who have all changed their payment terms to cash in advance. *See* Ex. 1. and Ex. 7.

This is what the public knows. What they do not know is that Steward's insolvency was not sudden or unexpected. Rather, ████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████

MPT's production is substantially ***incomplete***. But to date the evidence reveals that ████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████████████████
███████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
██████████████████████████████████████████████
████████████████████
            ████████████████████████████████████
██████████████████████████████████████████████████
███████████████████████████████████████
██████████████████████████████████████████████
█████████████████████████████████████████
██████████████████████████████████████████



Importantly, MPT failed to disclose ███████████████████████████████

████████████████████████████████████████████████████ Instead, MPT disclosed the international

joint venture transaction (Manolete) and the Utah hospital purchases as separate and unrelated

transactions in a list with multiple other transactions. *See* Ex. 13, relevant portions of MPT 2020

Form 10-K, at p. 78.

And, more egregiously, MPT's CEO Edward Aldgag repeatedly lied to investors about

████████████████████████████████████. For example, in an earnings call on

April 30, 2020, ████████████████████████████████████████████████

████████████████████ Aldag said: "***Steward***, Prospect Medical, LightPoint, Prime

and Ernest Health… continue to perform very well…. All of them are performing very well. They moved very, very quickly early on to right-size their operations…. So none of these top five US Operators are anybody that we're worried about." Ex. 14, MPT Q1 2020 Earnings Call (4/30/2022) Tr., at p. 16. Aldag failed to qualify this glowing report about Steward with the fact that ███████████████████████████████████████████

████████████████████████████

Aldag repeated these misrepresentations throughout 2020. *See* Ex. 15, MPT Q2 Earnings Call (7/30/2020) Tr., at p. 4 ("Our operators have taken proactive measures to strengthen their balance sheets by raising capital and slashing expenses as volumes declined. In fact, our top five largest US operators which account for nearly 80% of our US investments had combined liquidity of more than $5 billion [as of] June the 30th."); Ex. 16, MPT Q3 2020 Earnings Call (10/29/2020) Tr., at p. 3 ("Our operators are performing beautifully across the world. They have strong liquidity, strong operations and none of them are suffering from any capacity issues or lack of supplies."). Again, in making these statements, not once did Aldag or MPT disclose ██

████████████████████████████████████████████

████████████████████████████

On January 8, 2021, MPT then entered an extraordinary transaction where it loaned RDLT $335 million so that RDLT could redeem the promissory note with Cerberus and consolidate his 90 percent ownership of Steward. Ex. 17, Relevant Portions of MPT's 2021 Form 10-K, at p. 12-13. RDLT then caused Steward to issue a dividend in first quarter of 2021. Based on its 9.9% interest in Steward, MPT received an $11 million capital distribution from Steward. *Id.* at p. 80. Given that RDLT owned the remaining 90.1% interest in Steward and shares equally in economic rights with MPT, RDLT received a dividend of approximately $110 million.

RDLT took this dividend at a time when Steward was financially distressed in direct violation of Steward's obligation to use the distribution solely as working capital. Ex. 10, Term Sheet, at § II(B) and (C). Shortly after taking this distribution, RDLT purchased a 190-foot "super yacht" for $40 million, while Steward was left to flounder. *See* Ex. 22, *As Steward Hospitals Teeter, CEO's $40 million Yacht Is Docked in the Galapagos Islands*, Boston Globe, Feb. 2, 2024.



**<u>DISCOVERY ISSUES</u>**

**A.  Viceroy Should Be Permitted to Share MPT Documents with Governmental Authorities.**

Based on the above, Viceroy believes that MPT has committed securities fraud by failing to disclose ███████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████. Viceroy has been in communication with multiple regulatory agencies and law enforcement agencies, including the SEC, the US DOJ, the Alabama Securities Commission, and several other governmental authorities conducting investigations into MPT and Steward, including Massachusetts Governor Maura Healey's office and Massachusetts Senator Edward J. Markey's office. This Court has broad discretion to enter and modify a protective order. Thus, Viceroy respectfully requests that the Court give leave to Viceroy to share MPT's documents with regulatory agencies, law

enforcement, and any other government body investigating MPT, Steward, or any of MPT's other tenants.

**B.      MPT Should Be Compelled to Produce Discovery Related to MPT's Recent Efforts to Keep Steward Out of Bankruptcy.**

As discussed above, in January 2024, MPT announced that: (1) Steward had missed $50 million in rent payments to MPT (on top of $50 million in rent that had already been deferred); (2) Steward's vendors had changed their payment terms, creating an immediate liquidity crisis for Steward; (3) MPT was forced to extend an emergency $60 million bridge loan to Steward to provide liquidity; and (4) MPT had changed Steward from accrual to cash accounting, precipitating large write downs and impairment charges. *See* Ex. 1. Upon release of this information, Viceroy sent MPT a set of document requests seeking documents relating to these issues. *See* Ex. 18, MPT's Responses to Viceroy's Second Requests for Production of Documents. MPT has categorically refused to produce documents responsive to these requests. *Id.*

These requests seek documents that are highly relevant and proportional to the needs of this case. One of the central issues in this case is whether Viceroy's publications about MPT were true. Viceroy's central thesis in this case is that Steward has been functionally insolvent for years, and that MPT has been forced to provide Steward with liquidity through uncommercial loans and other transactions to enable Steward to pay its rent to MPT and meet its other financial obligations. Less than a year after Viceroy published its report on January 26, 2023, MPT has announced that Steward is functionally insolvent, behind $100 million in rent, and that MPT had to switch it to cash accounting and write off hundreds of millions of rent receivables from Steward. This proves Viceroy was right. The documents related to Steward's insolvency and MPT's efforts to address it will necessarily tie to Steward's financial state as of the time that

Viceroy wrote its publications. Therefore, MPT should be ordered to produce documents responsive to this request.

**C.      The Court Should Compel MPT to Answer Viceroy Interrogatory No. 3**

One of the core allegations and causes of action in MPT's Complaint is that Viceroy entered a "conspiracy" with others to allegedly spread misinformation about MPT. *See* Compl. (ECF No. 1) ¶¶ 77-80, 100-103. Viceroy's Interrogatory No. 3 to MPT asks MPT to identify the bases of its conspiracy claim, including who was involved in the conspiracy, when it was formed, and the facts supporting its formation. *See* Ex. 19, MPT's Answers to Viceroy's First Set of Interrogatories. MPT has categorically refused to answer this interrogatory. *Id.* It is inconceivable that MPT should not be required to answer this interrogatory, which merely seeks to discover the factual bases of one of MPT's key claims. MPT was required to have a good faith factual basis to bring its conspiracy claim, and Viceroy is entitled to know what that factual basis is.

To be clear, no conspiracy exists, and it is Viceroy's belief that MPT is refusing to answer this interrogatory because it has no factual basis to support a conspiracy claim. Viceroy is entitled to know that as well. And if MTP does claim to have evidence of a conspiracy, Viceroy is entitled to know what that evidence is so that it can conduct its own investigation. If MPT learns of additional evidence it believes supports its conspiracy claim through discovery, it can timely supplement its response.

**D.      MPT Should Be Compelled to Search the Files of One Additional Custodian.[1]**

The parties have reached agreement on the search terms and parameters for electronic discovery searches and production. But there is a dispute over two people whose files are to be searched. Plaintiff has agreed to run search terms across eight custodians, but has excluded a key

---

[1] In its email to the Court about this dispute, Viceroy stated that there were four additional custodians. In an effort to compromise and simplify the dispute, Viceroy is now seeking only one additional custodian.

employees from the list: Drew Babin, an MPT senior managing director in charge of investor relations and communications.

The limited production MPT has produced to date reveals that Babin was in constant contact with investors and MPT's CEO during the staggering plummet of MPT's stock from ~$21 per share in December 2021 to ~ $4 a share today. During this time, he made many statements to MPT's CEO and CFO about the cause of this drop (which began one year before Viceroy published anything about MPT). To this end, he made statements that ███████

████████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████

Babin is a key witness in this case, who Viceroy intends to depose. Therefore, it is Viceroy's position that his files must be searched. This one additional custodian will not materially add to MPT's discovery burden. Viceroy is requesting only nine total custodians be searched in this case, all of whom Viceroy can demonstrate are central witnesses in this suit. Given the scope of this litigation and the relatively small number of custodians requested, MPT's claims of burden are unfounded.

Respectfully submitted this 8th day of March, 2024.


/s/ Richard M. Elias                          /s/ J. Ken Thompson
                                              J. KEN THOMPSON (ASB-1422-P67J)
ELIAS LLC
Richard M. Elias (pro hac vice)               J. Ken Thompson
231 S. Bemiston, Suite 800                    Attorney at Law
St. Louis, MO 63105                           P.O. Box 43116
314-391-6824                                  Birmingham, Alabama 35243
relias@eliasllc.com                           205-601-5624
tfriedman@eliasllc.com                        kent@jkenthompsonlaw.com


Attorneys for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed a true and correct copy of the foregoing, using the Court's CM/ECF system, which will automatically send email notification to all counsel of record.

<u>*/s/ Richard M. Elias*</u>
Richard M. Elias