# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| MEDICAL PROPERTIES TRUST, INC., <br><br> Plaintiff, <br><br> - v. - <br><br> VICEROY RESEARCH LLC; FRASER JOHN PERRING; GABRIEL BERNARDE; and AIDAN LAU, <br><br> Defendants. | Civil Action No. 2:23-cv-00408-RDP |

**PLAINTIFF'S BRIEF CONCERNING DISCOVERY DISPUTES
TO BE ARGUED AT MARCH 13, 2024 DISCOVERY CONFERENCE**

As set forth below, Defendants do not pursue their four latest discovery requests in a good-faith effort to develop their evidence for this case, but rather as part of an ongoing public campaign of defamation, economic interference, and harassment.  Defendants' brief is itself part of that campaign, with the first seven of its ten pages dedicated to a false broadside against MPT and an MPT tenant and no mention of the discovery disputes that ostensibly occasioned the filing.  The brief does not cite a single case or other legal authority.  Defendants' requests should all be denied.

## ARGUMENT

**I.   Defendants' request to compel responses to Interrogatory 3 should be denied.**

Defendants seek to compel responses to their Interrogatory 3, which asks MPT to:

> Identify all individuals with whom you claim that Defendants have entered into a "conspiracy" related to MPT, . . . [and] identify when the alleged conspiracy was formed, how [it] was formed, whether it was written, oral or both, all participants to the conspiracy, the purpose and object of the conspiracy, and all documents supporting your contention that the conspiracy exists.

Ex. 1 at 5.  Interrogatory 3 was served on December 8, 2023, before Defendants or third parties had produced any meaningful discovery.  *Id.* at 1.  Therefore, on January 22, 2024, MPT objected to the Interrogatory as premature.  MPT made clear, however, that it was willing to answer "following the completion of meaningful fact discovery." *Id.* at 5-6; Ex. 2.

At 7:47 PM the same day, and 7:59 AM the next morning, Defendants' counsel emailed to demand an immediate response to Interrogatory 3, highlighting MPT's purported "inability to cite a single piece of evidence supporting a conspiracy claim."  Ex. 2.  Two hours later, and before

1

Plaintiff's counsel had an opportunity to respond, Defendants posted these attorney emails publicly on X.com (formerly Twitter):[1]



Nearly a month later, on February 16, 2024, Defendants wrote the Court to request a discovery conference, representing that MPT had "categorically refused to answer this Interrogatory." Ex. 3 at 1. That representation was false. MPT's repeatedly stated position was instead that the Interrogatory was premature. Far from "categorically" refusing to respond, MPT had already stated that it *would* respond after meaningful discovery was completed. Exs. 1, 7.

That discovery is nowhere near complete. Defendants waited until the end of the document discovery period to produce more than 125,000 documents, and even those remain largely unreviewable because the production is missing critical metadata in violation of the Court's ESI Order. A year or more of Defendants' messages remain to be produced. Third-party discovery

---

[1] This was the third time that Defendants leveraged the discovery process for PR value. On October 10, 2023, Defendants published MPT's R&Os to Defendants' document requests. Ex. 4. Two weeks later, Defendants published a list of purported "discovery issues" attached to an email between counsel. Ex. 5. MPT's counsel then asked that Defendants' counsel refrain from further posting of attorney correspondence on social media as it was impeding the ability of counsel to cooperatively work together during discovery. Defendants' counsel assured MPT's counsel that no further posting would take place. After Defendants ignored that assurance, Defendants' counsel claimed that he "cannot control" his clients, before suggesting that the very correspondence counsel were exchanging on the issue might itself be published. Ex. 6.

2

has likewise been impeded: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇. MPT is also diligently pursuing discovery from third parties overseas. Until this discovery is completed, any answer to Interrogatory 3—which seeks "all documents supporting" MPT's conspiracy claim, and a description of the who, what, when, where, why, and how of the alleged conspiracy—would necessarily be premature and incomplete.

MPT's position is fully consistent with federal rules. Interrogatory 3 is a contention interrogatory subject to Rule 33(a)(2). *See WNE Cap. Holdings Corp.* v. *Rockwell Automation, Inc.*, 2011 WL 13254691, at *13 (S.D. Ala. Aug. 4, 2011) (collecting cases). That rule "expressly authorize[s]" courts to defer an answer because the contention interrogatory's "mixed questions of law and fact" may be "best resolved after much or all of the other discovery has been completed." Fed. R. Civ. P. 33 advisory committee's note to 1970 amendments. Because contention interrogatories propounded early in discovery are "more likely used for harassment than as a useful discovery device," courts routinely defer responses until later in discovery. *Brassell* v. *Turner*, 2006 WL 1806465, at *3 (S.D. Miss. June 29, 2006); *Bonutti Skeletal Innovations LLC* v. *Linvatec Corp.*, 2014 WL 186123, at *4 (M.D. Fla. Jan. 16, 2014). This Court should do the same.

II.   **Defendants' request to modify the protective order should be denied.**

In a further effort to leverage discovery in this litigation for other purposes, Defendants seek to modify the Protective Order so that they may unilaterally disclose confidential discovery produced by MPT to various unidentified "authorities." Ex. 3 at 2. While MPT will of course cooperate with any legitimate requests for information by a government agency, Defendants have informed MPT that they have *not* received any such request from *any* authority. Instead, Defendants purport to feel "duty bound" to disclose confidential information produced in this

3

action to "authorities." *Id.* Defendants' invocation of "duty" is a pretext. MPT has justifiable concerns that Defendants continue to misuse the discovery process to further their defamation campaign, in potential violation of the very Protective Order they now seek to modify.

For example, recently produced documents reveal that ▮▮▮▮▮



Ex. 8 at 2 (emphasis added).  Defendants then served RFPs targeting Steward and Vitals Global. Ex. 9 at 11, 14.  Discovery has also revealed ▮▮▮▮▮ *See* Exs. 10-14.

Meanwhile, Perring's and Viceroy's public attacks on MPT have, if anything, only intensified.  Perring now routinely refers to MPT's CEO, Edward Aldag, as "sh*tbag" or "a piece sh*t" in his public postings, all while threatening MPT with various forms of retribution, including prison.  Ex. 15.  In recent posts, for example, Perring and Viceroy issued ultimata to MPT to drop this case or face consequences, including a purported "malicious prosecution" suit.  Ex. 16.  The posts were accompanied by an image of a ticking time bomb, and another reading simply "GAME OVER."  *Id.*  In others, Perring baselessly claimed that Aldag "is getting arrested soon!" and

4

declared "categorically" that MPT "[is] a Ponzi!"  Ex. 17.  All of these public statements are of course evidence of Defendants' malice and recklessness, as MPT will demonstrate at trial.  But for present purposes, they put the lie to any claim that Defendants' latest discovery efforts are animated by "duty."  Defendants are plainly engaged in an ongoing effort to pressure MPT to abandon its claims by any means other than litigation on the merits in this forum.



. Exs. 18-20.

. Ex. 21.

Setting aside the manifestly pretextual nature of Defendants' request, the narrative they say they want to advance through modification of the Protective Order is fiction. Ex. 3 at 2.  These accusations are false.  The transactions were repeatedly disclosed in contemporaneous securities filings.  Exs. 22-24.  They were not "sham[s]."  First, MPT paid an additional $200 million (for a total investment of $950 million) for the real estate and improvements of two Utah hospitals.  Ex. 22 at 4.  MPT then leased the real estate to Steward, which never missed a rent payment on the properties.  As MPT disclosed, the economics of the transaction were validated in 2023, when Steward sold the hospital operations to one of the largest

5

non-profit healthcare operators in the country, which continues to lease the real estate from MPT, with an option to buy for no less than what MPT paid. Ex. 24. The other $200 million investment for international opportunities was also fully disclosed. Exs. 22-23. When MPT made the investments, it had a market capitalization of roughly *$10 billion*. There is nothing "fraudulent" about a $10 billion company investing $400 million in revenue-generating, publicly disclosed projects. That's business in the ordinary course. But Defendants have no interest in these facts—they just want to further smear MPT.

Against this backdrop, Defendants nowhere near meet their burden of demonstrating "good cause" to modify the Protective Order. *F.T.C.* v. *AbbVie Prods. LLC*, 713 F.3d 54, 66 (11th Cir. 2013). Because "[p]rotective orders serve the vital function of secur[ing] the just, speedy, and inexpensive determination of civil disputes by encouraging full disclosure . . . courts should be wary of retroactive attempts to modify them in ways that undermine the justified reliance" of the parties. *S.E.C.* v. *Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1272-73 (10th Cir. 2010) (citation omitted); *see also United States* v. *Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) ("[L]itigants and the courts assume that the sole purpose of discovery is to assist trial preparation."). Plaintiff is aware of no case modifying a protective order at the unilateral request of a party so that said party can unilaterally disclose discovery to a government agency that has not even asked them for it.[2]

### III. Defendants' request for discovery into events that post-date their defamatory statements should be denied.

Less than two months ago, this Court held that "transactions [that] occurred after Defendants' allegedly defamatory statements were published . . . will have no bearing on either

---

[2] To the contrary, where, as here, the agency has not intervened to seek discovery, or even asked any party to access it, courts routinely deny requests to modify. *See, e.g.*, *Chipman* v. *Sabol & Rice*, 2012 WL 6020031, at *1 (D. Utah Dec. 3, 2012); *Burke* v. *Glanz*, 2013 WL 211096, at *3 (N.D. Okla. Jan. 18, 2013); *compare with Peoples* v. *Aldine Indep. Sch. Dist.*, 2008 WL 2571900, at *3 (S.D. Tex. June 19, 2008) (modifying to comply with grand jury subpoena).

6

the veracity of [those] statements or the calculation of damages." (Doc. 83, p. 17). That is because "[t]he truth of a defamatory imputation of fact must be determined as of the time of the defamatory publication." (*Id.*, p. 15) (quoting Restatement (Second) of Torts § 581A cmt. g (1977)). Accordingly, "requests concerning" transactions that post-date the alleged defamatory statements "are overbroad and irrelevant." (*Id.*, p. 16).

Nevertheless, Defendants seek documents in a second set of RFPs (Ex. 26) focused entirely on statements in a press release from January 4, *2024*—more than nine months after any defamatory statements alleged in the Complaint—concerning events that post-date the defamatory statements by several months. Ex. 25 at 1 (announcing "Steward delayed paying a portion of its *September and October* [2023] rent to MPT"). Under the Court's prior ruling, the information Defendants seek is irrelevant, and their request should be denied. (Doc. 83, pp. 15-17).

In any event, Defendants' relentless focus on Steward's "financial state" (Doc. 87, p 8), and in particular on ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (*see id.*, pp. 3-6), misses the mark. This case is about Defendants' false claims that MPT engaged in "round-tripping" and backroom deals in Malta—not about Steward's financial condition. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ That is because MPT has already agreed to produce voluminous documents concerning these transactions. And to the extent Steward's financial condition is relevant to Defendants' endeavor, MPT has already produced ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

## IV. Defendants' request for four additional custodians should be denied.

This is surely the rare case in which a corporate party has agreed to produce documents from *all* of its C-suite executives, while its opponent demands additional collection from lower-

7

level employees instead. MPT has agreed to collect documents from eight of its senior-most executives, representing its entire senior leadership team, including its Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Chief Accounting Officer, Treasurer and Head of Capital Markets, and multiple Senior Vice Presidents with oversight of the transactions at issue.[3] MPT's search of these custodians' documents spans nearly *eight* years, and has generated a review of more than *1.3 million* pages of documents.

Defendants nevertheless sought to compel broad searches for four non-executive employees: Tim Berryman (Managing Director of Investor Relations), Drew Babin (Senior Managing Director of Communications), Matthew Hamner, and Anderson Aldag. Ex. 3. Hamner and Aldag are both under 30 and have no direct reports. But they are otherwise notable in one respect: Hamner is the son of Steven Hamner, MPT's CFO; while Aldag is the son of Edward Aldag, MPT's CEO. Defendants' demand to expand the custodian universe should be rejected.

"A responding party is generally entitled to select the custodians most likely to possess responsive information." *Firefighters' Ret. Sys.* v. *Citco Grp. Ltd.*, 2018 WL 276941, at *4 (M.D. La. Jan. 3, 2018). That is because they are "in the best position to know and identify those individuals within [the] organization likely to have information relevant to the case." *Servicios Funerarios GG, S.A. de C.V.* v. *Advent Int'l Corp.*, 2023 WL 7332836, at *2 (D. Mass. Nov. 7, 2023). That is well illustrated here, as MPT's agreed-to custodians have yielded over 150,000 pages of responsive ESI to date, with more to come.

---

[3] MPT's agreed custodians are: Edward Aldag, Jr. (Chairman, President, and CEO); Steven Hamner (EVP, CFO); Kevin Hanna (SVP, Controller, Chief Accounting Officer); Emmett McLean (former EVP, Chief Operating Officer); Larry Portal (SVP Operations, Senior Advisor to the CEO); Rosa Hooper (SVP Operations); Luke Savage (VP, Head of Global Acquisitions); and Charles Lambert (VP, Treasurer, Managing Director of Capital Markets).

Where a requesting party "is second-guessing the responding party's representation that it conducted a reasonable inquiry . . . the burden appropriately lies with the requesting party to show that the . . . search was inadequate," *Enslin* v. *Coca-Cola Co.*, 2016 WL 7042206, at *3 (E.D. Pa. June 8, 2016), or that the additional custodian "likely includes information relevant to the claims or defenses." *Orchestrate HR, Inc.* v. *Blue Cross & Blue Shield of Kan., Inc.*, 2022 WL 834066, at *5 (D. Kan. Mar. 21, 2022). Custodians with duplicative or cumulative ESI do not justify the burden or expense of additional discovery. *See, e.g.*, *Jabil, Inc.* v. *Essentium, Inc.*, 2021 WL 2895524, at *3 (M.D. Fla. Mar. 4, 2021); *Brown* v. *W. Corp.*, 2013 WL 4456556, at *8 (D. Neb. Aug. 16, 2013); *see also* Fed. R. Civ. P. 26(b)(2)(C)(i) (discovery is improper if it "is unreasonably cumulative or duplicative, or can be obtained from some other source").

Defendants have not satisfied their burden here. ***First***, given Defendants' ongoing efforts to develop discovery in further support of their regulatory, public relations, and defamation campaigns, their request for additional custodians does not appear designed to legitimately develop evidence for use in this proceeding. That alone is reason to deny it. *Cf. Oppenheimer Fund, Inc.* v. *Sanders*, 437 U.S. 340, 352 n.17 (1978) ("[W]hen the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied."). Defendants' insistence that Mr. Aldag's and Mr. Hamner's children (both junior employees) be custodians underscores that harassment is the true motive here—a point that Defendants have belatedly recognized. In their brief of a few hours ago, Defendants pulled an about-face and withdrew their request for three of the four custodians they originally requested from the Court—Berryman, Anderson Aldag, and Matthew Hamner. Defendants claim they did this to "compromise and simplify the dispute." (Doc. 87, p. 9 n.1). If that were true, Defendants would

9

have made this effort *before* requesting these custodians from the Court, and before MPT expended time and resources briefing the issue.

*Second*, the only stated basis for adding the remaining custodian, Babin, is that he discussed "the cause of [MPT's stock] drop." Ex. 3 at 1. But those emails are irrelevant. As this Court has recognized, "MPT's stock price could not react to any information that was not publicly known to investors"—so even if Babin was involved in non-public communications regarding the stock price, they "have no bearing on either the veracity of [the] alleged defamatory statements or the calculation of damages." (Doc. 83, pp. 16-17).

Regarding liability, Defendants advance *no* argument that Babin is likely to possess relevant ESI. As a communications employee, Babin did not negotiate the transactions at issue; he was involved in marshalling press releases and responses to media and investor inquiries. The ultimate decision regarding engagement with investors and the media, however, lay with the senior executives, all of whom *are* custodians; all of whom regularly interfaced with the investing public on MPT's earnings calls (which Babin did not); and all of whom are included on the very same communications with Babin that Defendants point to. Babin did not even work at MPT before June 2020, when many of the transactions that Defendants are most interested in occurred.

*Third*, Babin is not likely to yield *uniquely* responsive ESI. As demonstrated in MPT's already voluminous productions, MPT's senior-most executives were hands-on, taking an active role in the day-to-day management of the business. Defendants identify no production gaps that must be filled with Babin's ESI. In fact, all of the emails that supposedly demonstrate the need for additional ESI *include* MPT's executive team.

## CONCLUSION

For the foregoing reasons, Defendants' discovery demands should be denied.

Dated: March 8, 2024

OF COUNSEL:

William Savitt
Sarah K. Eddy
Nathaniel Cullerton
Adabelle U. Ekechukwu
Charles M. Melman
WACHTELL, LIPTON,
ROSEN & KATZ
51 West 52nd Street
New York, NY  10019
Tel.:  (212) 403-1000

Corey Worcester
Jomaire A. Crawford
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
Tel.: (212) 849-7000

LIGHTFOOT, FRANKLIN & WHITE LLC

*/s/ Wesley B. Gilchrist*
Michael L. Bell
Wesley B. Gilchrist
Meghan S. Cole
The Clark Building
400 20th Street North
Birmingham, AL  35203
Tel.:  (205) 581-0700

*Attorneys for Plaintiff*

11

**<u>Certification Pursuant to Section C of the Initial Order</u>**

Counsel hereby certifies that he has affirmatively and diligently sought to submit to the Court only those documents, factual allegations, and arguments that are material to the issues to be resolved in the Motion, that careful consideration has been given to the contents of this submission to ensure that it does not include vague language or an overly broad citation of evidence or misstatements of the law, and that this submission is non-frivolous in nature.

<pre>                              /s/ Wesley B. Gilchrist
                              Of Counsel</pre>

## **CERTIFICATE OF SERVICE**

  I hereby certify that on March 8, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will give notice of such filing to all counsel of record.

              */s/ Wesley B. Gilchrist*
              Of Counsel